GEORGE M. GARVEY (State Bar No. 089543)
JACOB S. KREILKAMP (State Bar No. 248210)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
George.Garvey@mto.com

Attorneys for Defendants UBS AG and
UBS Financial Services Inc.

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| CARL L. JIMENA,<br><br>        Plaintiff,<br><br>   vs.<br><br>UBS AG BANK, INC., SWITZERLAND HEADQUARTERS; UBS AG BANK, INC., MANHATTAN, NEW YORK BRANCH; UBS FINANCIAL SERVICES, INC., BAKERSFIELD, CALIFORNIA BRANCH; AND UBS FINANCIAL SERVICES, INC., WEEHAWKEN, NEW JERSEY BRANCH; CLIVE STANDISH,<br><br>        Defendants. | CASE NO. 07-CV-00367-OWW-TAG<br><br>**UBS AG AND UBS FINANCIAL SERVICES INC.'S OPPOSITION TO MOTION TO REMAND; DECLARATIONS OF JAY ERICSSON AND TAMBRA KING**<br><br>**Date: April 30, 2007**<br>**Time: 10:00 a.m.**<br>**Courtroom: The Honorable Oliver W. Wanger, Courtroom 3, United States Courthouse, 2500 Tulare Street, Fresno CA 93721** |

2732403.3

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................2

II.   FACTUAL BACKGROUND...............................................................3

III.  ARGUMENT..........................................................................................4

    A.    Removal was Timely as to UBS FS .............................................4

    B.    Removal Was Timely as to UBS AG............................................7

    C.    The "Last Served" Rule Provides An Alternative Ground For
          Holding That The Removal Was Timely ...............................8

    D.    The UBS Defendants Are Not California Corporations ...................9

IV.   CONCLUSION.................................................................................. 10

# I.   **INTRODUCTION**

This case was properly removed.  Defendants UBS AG and UBS Financial Services Inc. ("UBS FS") (collectively, the "UBS Defendants") were not served in the original state court action -- if they were properly served at all -- until February 5, 2007 or later.   The Notice of Removal was filed on March 6, 2007, within the 30-day deadline.  Plaintiff's motion to remand (styled as a "Motion to Declare Notice of Removal Void") asserts that both UBS Defendants were served four days earlier, on February 1, 2007, when plaintiff apparently caused copies of the summons and complaint to be delivered to the branch manager of a Bakersfield branch of UBS FS.  As we show below, California law and the case law interpreting it make clear that service on a branch office manager of a corporation with hundreds of offices is not sufficient to effect service on that corporation. Plaintiff himself appeared to realize this, as he attempted to serve the UBS Defendants through alternative and more legitimate means, namely by delivering a copy to UBS FS' duly designated agent for service of process in California, and by attempting service on UBS AG through the mailing procedure specified in Calif. Code Civ. Proc. § 415.40.

As detailed below, both UBS FS and UBS AG timely removed to this Court within 30 days of plaintiff's first service on those parties in compliance with California's relevant statute.  In the alternative, even if it were assumed that removal was timely as to only one of the two defendants, the "last served" rule followed by courts in the Ninth Circuit (including this district) provides an alternative ground upon which to remove this case.  Finally, plaintiff's contention that diversity jurisdiction does not exist is without merit.  The Court should deny plaintiff's motion to remand and allow this meritless case to proceed to a speedy conclusion in this Court.

2732403.3

OPPOSITION TO MOTION TO REMAND

## II.   FACTUAL BACKGROUND

Defendant UBS AG is incorporated and has its principal place of business in Switzerland. Complaint ¶ 1. Defendant UBS FS is a corporation that is wholly owned by an entity that is itself wholly owned by UBS AG, and is incorporated in Delaware with its principal place of business at its headquarters in New Jersey. Declaration of Tambra King ¶ 3 (submitted concurrently herewith) ("King Decl.").[1] UBS FS has approximately 550 branch offices throughout the United States. *Id.* ¶ 4. UBS FS's Bakersfield office is one such branch office. Plaintiff has not alleged that the UBS FS Bakersfield office had any relationship whatsoever to him or to the events giving rise to this lawsuit.

On January 31, 2007, plaintiff caused copies of the summons and complaint to be mailed by certified mail, pursuant to California Code of Procedure § 415.40, to the New York office of UBS AG, addressed to "Pres./Gen. Mgr./Legal Dept." Plaintiff's Motion, Exhibit A, Annex 3. Under that statute, service is deemed complete ten days after mailing, *i.e.,* on February 10. *See* CCP § 415.40.

On February 1, 2007, plaintiff apparently caused "two copies: one for the branch. . .; one for UBS AG Bank Inc., Zurich, Switzerland Headquarters" to be delivered to Jay Ericsson, a branch manager in UBS FS's Bakersfield branch. Plaintiff's Motion, Exhibit A, Annex 1.[2]

On February 5, 2007, UBS FS's designated agent for service of process in California, Corporation Service Company, received copies of the summons and complaint via certified mail. Plaintiff's Motion, Exhibit C, Annex 1.

---

[1] In its Notice of Removal, counsel for UBS FS stated in error that its principal place of business was in New York. In fact, UBS FS's headquarters are across the river in Weehawken, New Jersey.

[2] The third defendant in this lawsuit, individual defendant Clive Standish, a United Kingdom citizen and Swiss resident, has not been served, and no attorney has made an appearance for him. Plaintiff appears to contend that he served Mr. Standish by sending an email to the Yahoo email address used by the impersonators who defrauded plaintiff by pretending to be Mr. Standish. California does *not* provide for service by email, and even if it did, such service could not have been effective as to the real Mr. Standish, a stranger to the Yahoo email address used by plaintiff.

1   On March 6, 2007, within 30 days after the delivery to Corporation
2   Service Company, the UBS Defendants filed and served their notice of removal of
3   the action to this Court.

4

5   **III.   ARGUMENT**
6       **A.   Removal was Timely as to UBS FS**
7           Plaintiff argues that UBS FS was served on February 1, 2007, when a
8   summons and complaint were delivered to a branch manager in the Bakersfield
9   branch of UBS FS.  This contention conflicts with the California Code of Civil
10  Procedure and case law interpreting it.
11          California Code of Procedure § 416.10 addresses service upon
12  corporations, and sets forth four proper means of serving a corporation.  None of
13  those methods would permit service by delivery to a branch office manager such as
14  Mr. Ericsson.  Three of those methods are undisputedly inapplicable to the delivery
15  to Mr. Ericsson.  Section 416.10(a) provides for service "[t]o the person designated
16  as agent for service of process" in California by the company.  That agent is
17  Corporation Service Company (which was served on February 5 at the earliest), not
18  Mr. Ericsson.  King Decl. ¶ 6; Declaration of Jay Ericsson ¶ 4 (submitted
19  concurrently herewith) ("Ericsson Decl.").  Section 416.10(c) applies to service on
20  the cashier of a bank; Mr. Ericsson is not a cashier and UBS FS is a securities firm,
21  not a bank.  Section 416.10(d) permits service by several specific methods set forth
22  in the California Corporations Code, none of which plaintiff attempted to follow
23  here.
24          That leaves section 416.10(b), which provides for service "[t]o the
25  president, chief executive officer, or other head of the corporation, a vice president,
26  a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or
27  chief financial officer, a general manager, or a person authorized by the corporation
28  to receive service of process."  Jay Ericsson, the branch manager of UBS FS's

2732403.3

4

1   Bakersfield branch, is not the president or other head of UBS FS, a vice president, a

2   secretary or assistant secretary, a treasurer or assistant treasurer, or some other

3   person authorized by the corporation to receive service of process, Ericsson Decl. ¶

4   4. He is not a corporate officer of UBS FS. King Decl. ¶ 5. And the case law

5   interpreting § 416.10 establishes that Mr. Ericsson, who manages the Bakersfield

6   branch, also does not qualify as a "general manager" of UBS FS.

7        In *Bakersfield Hacienda Inc. v. Superior Court*, 199 Cal. App. 2d 798,

8   (1962), the California Court of Appeal considered whether attempted service on the

9   general manager of a motel run by the defendant corporation satisfied California's

10   rule permitting service on the general manager of a corporation. The court

11   concluded otherwise, explaining that "the general manager of a motel is not the

12   general manager of the corporation." *Bakersfield Hacienda*, 199 Cal. App. 2d at

13   803. "The term 'general manager of a corporation,'" the court further explained,

14   "indicates one who has general direction and control of the business of the

15   corporation *as distinguished from one who has the management only of a particular*

16   *branch of the business*; he may do everything which the corporation could do in the

17   transaction of its business." *Bakersfield Hacienda*, 199 Cal. App. 2d at 804

18   (emphasis added).

19        As the attached Declaration of Mr. Ericsson makes clear, he manages

20   only the UBS FS Bakersfield office, not the corporation as a whole. Ericsson Decl.

21   ¶¶ 3-4. By no stretch of the imagination does he have "general direction and

22   control of the business" of UBS FS, a nationwide corporation with its headquarters

23   in New Jersey and roughly 550 offices nationwide. *Id.* ¶ 4; King Decl. ¶ 4. Exactly

24   in harmony with the language of *Bakersfield Hacienda*, Ericsson is "one who has

25   the management only of a particular branch" of UBS FS. *Bakersfield Hacienda*,

26   199 Cal. App. 2d at 804.

27        *Bakersfield Hacienda* has been followed by both state and federal

28   courts interpreting this provision of California law. *See General Motors Corp. v.*

1   *Superior Court,* 15 Cal. App. 3d 81, 86 (1971); *Wenzoski v. Citicorp,* 480 F. Supp

2   1056, 1059 (N.D. Cal. 1979).

3          The facts of *General Motors* are even more closely analogous with

4   those here, and thus further illustrate how plaintiff's attempted February 1 service

5   was improper. In *General Motors,* plaintiff sought to serve a customer relations

6   manager of one of General Motors' business units, Pontiac. In rejecting this

7   attempted service, the court followed *Bakersfield Hacienda's* definition of "general

8   manager," and further noted that the defendant "has properly designated an agent

9   whose identity was easily ascertainable to accept service of process and has not

10  sought to avoid its accountability in the State of California. In this action it seeks

11  only to require plaintiffs to comply with the statutory scheme to the same extent it

12  has itself complied . . . . Plaintiffs here offered no evidence of [the manager's]

13  'character and rank' within the corporation or of his duties and responsibilities."

14  *General Motors,* 15 Cal. App. 3d at 85-86.[3]

15         So too here. UBS FS has appointed a designated agent for service of

16  process in California, King Decl. ¶ 6, and relies on that agent for information

17  regarding pending lawsuits. It is easy to serve UBS FS in this manner, and, indeed,

18  plaintiff obviously was aware of the existence of this agent. When plaintiff

19  attempted to serve UBS FS's duly-designated agent on February 5, 2007, this

20  apprised the responsible UBS FS officials of the existence of this suit, allowing

21  them to retain counsel and calendar a response date. UBS FS followed its

22  customary practice and calculated its deadlines for removal on the basis of that

23  attempted service. It is simply not practicable for a large corporation to be expected

24  to poll the personnel of all of its branch offices throughout the country to determine

25

26  _____

    [3] *General Motors* also persuasively distinguished the few cases that rely on a more
    individualized examination of the facts. In those cases, "the corporations involved
27  had not designated an agent for acceptance of service of process and had in effect
    attempted to maintain a rather low silhouette within the state" in the hope of
    evading the jurisdiction of the state's courts. *General Motors,* 15 Cal. App. 3d at
28  85. As in *General Motors,* these factors are not present here.

1   whether any of them may have received a complaint sooner that its designated

2   agent did.  For good reason -- especially compelling where, as here, the events at

3   issue have nothing to do with a branch office -- California law does not start the

4   clock running with the delivery of a complaint to a branch manager.[4]

6   **B.**   **Removal Was Timely as to UBS AG**

7             Plaintiff also asserts (i) that UBS AG was served on February 1,

8   2007, when plaintiff caused the summons and complaint to be served on the UBS

9   FS branch manager, and (ii) that UBS AG was served on February 2, 2007, when

10  its New York office received by certified mail a copy of the summons and

11  complaint.

12            As to the first contention, UBS Defendants have demonstrated above

13  that the Bakersfield delivery did not effect service even as to UBS FS itself.  But

14  even if service on UBS FS were assumed to have been made on February 1, it is

15  well-settled that "service on a subsidiary does not constitute service on a parent

16  corporation" absent unique circumstances that do not exist here.  *Graval v. P.T.*

17  *Bakrie & Bros.*, 986 F. Supp. 1326, 1330 (C.D. Cal. 1996).

18            As to plaintiff's second contention, his own Proof of Service attests

19  that his service upon UBS AG by certified mail was effected pursuant to California

20  Code of Procedure § 415.40.  Plaintiff's Motion, Exhibit C, Annex 2.  But when

21  service is effected pursuant to this section, it is "deemed complete on the 10th day

22  after such mailing."  CCP § 415.40.  The tenth day after the January 31, 2007

24  [4] Plaintiff relies upon *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306
25  (1950).  This case – and the reasoning within it upon which plaintiff relies –
    concerns the separate question, not at issue here, of whether a state's service of
26  process statute comports with due process.  No party before this Court is
    challenging the constitutionality of California's statutes for service of process.
27  Plaintiff's delivery of papers to the Bakersfield branch did not constitute service on
    the UBS Defendants because it does not comply with California's statutes for
28  service of process.  In any event, as detailed above, plaintiff's service on the branch
    office did *not* satisfy *Mullane's* strictures.

1  mailing was February 10, 2007.  UBS AG's removal on March 6 was therefore well

2  within the 30-day deadline.

3  **C.   The "Last Served" Rule Provides An Alternative Ground For Holding That The Removal Was Timely**

4          Even if one were to assume (contrary to California law) that UBS FS

5  had been served on February 1, 2007, and therefore had missed its deadline to

6  remove, the Court should still hold that UBS AG properly removed within the

7  statutory deadline.  Federal courts are split as to whether the removal clock for all

8  defendants is triggered by the first service on any defendant (the "first served" rule),

9  or whether the clock runs for later-served defendants from when they are served

10  (the "last served" or "later served" rule).  *Compare Brown v. Demco, Inc.*, 792 F.2d

11  478, 481-82 (5th Cir.1986) (adopting "first served" rule); *McAnally Enter., Inc. v.*

12  *McAnally*, 107 F. Supp. 2d 1223, 1226-28 (C.D. Cal. 2000) (collecting cases for

13  both the "first served" and "last served" rules and adopting the first served rule),

14  *with Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 (6th Cir.1999)

15  (applying "last-served" rule); *Ford v. New United Motors Mfg., Inc.*, 857 F. Supp.

16  707, 709 (N.D. Cal. 1994) (same).  The Ninth Circuit recognized the split in *United*

17  *Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756 (9th Cir. 2002), but declined to

18  reach the issue because in that case the first defendant was not properly served

19  (which happens to be exactly the circumstances present here).  However, federal

20  district courts within the Ninth Circuit, including this district, have adopted the

21  "last-served" rule in recent years because of the unfairness to the later-served

22  defendant inherent in the "first served" rule, and the potential for gamesmanship

23  that this rule creates.  *See Smith v. Mail Boxes, Etc.*, 191 F. Supp. 2d 1155, 1160-61

24  (E.D. Cal. 2002) (adopting "last served"); *Bonner v. Fuji Photo Film*, 461 F. Supp.

25  2d 1112, 1117-1119 (N.D. Cal. 2006) (same); *Hawaii v. Abbott Labs., Inc.*, 469 F.

26  Supp. 2d 842, 854-55 (D. Hawai'i 2006) (noting that the last-served rule has been

27  followed by Ninth Circuit district courts since *Murphy Bros., Inc. v. Michetti Pipe*

28

1  *Stringing, Inc.*, 526 U.S. 344 (1999)); *Coleman v. Assurant, Inc.*, 463 F. Supp. 2d

2  1164, 1168 (D. Nev. 2006) ("[T]he Court holds that it will be best to join the

3  current movement in this Circuit, and the nation, to follow the later-served

4  defendant rule.").

5      Should this Court determine that UBS FS was properly served on

6  February 1, 2007, it should still hold that UBS AG's clock did not begin to run until

7  February 10, 2007, and therefore that its notice of removal was timely.  This would

8  have the effect of allowing removal of the entire case, as UBS FS consented to that

9  timely removal.  "[A] first-served defendant can consent to a later-served

10  defendant's removal petition, despite having already failed in its own efforts to

11  remove. [Holding otherwise] would . . . nullify our holding that later-served

12  defendants are entitled to 30 days to remove the case to district court." *Brierly*, 184

13  F.3d at 533 n.3; *see also Fitzgerald v. Bestway Svcs., Inc.*, 284 F. Supp. 2d 1311,

14  (N.D. Ala. 2003) (same).

15

16      **D.**    **The UBS Defendants Are Not California Corporations**

17      Plaintiff asserts that removal by UBS Defendants was improper

18  because he speculates that UBS Defendants are incorporated in California,

19  defeating diversity.  Plaintiff's Motion at 3.  This assertion is simply incorrect, and

20  is not supported by any evidence.  Plaintiff himself alleges that UBS AG is

21  incorporated and has its principal place of business in Switzerland.  Plaintiff's

22  Complaint ¶ 1.  And as stated in UBS Defendants' Notice of Removal, and as

23  supported by the attached Declaration of its corporate secretary, UBS FS is

24  incorporated in Delaware, and has its principal place of business outside of

25  California.  King Decl. ¶ 3.  The UBS Defendants have also refuted Plaintiff's

26  speculation that UBS FS' Bakersfield branch office is a separate corporation; the

27  uncontroverted evidence establishes that it is simply one of the many locations at

28  which the Delaware/New Jersey corporation UBS FS does business.  *Id.*

1    Plaintiffs' argument that under a "nexus of control test," UBS FS and

2  UBS AG are under common control and "therefore there is no diversity," is not

3  only legally incorrect; it is a non sequitur.  Neither UBS AG nor UBS FS has its

4  principal place of business or place of incorporation in California.  Even if

5  (contrary to the law) each corporation were to be deemed a citizen of the other's

6  home state, such a theory could not support a conclusion that either of them is a

7  California citizen.  Complete diversity therefore exists for this lawsuit.

8

9  **IV.   CONCLUSION**

10    Plaintiff's attempted service on UBS Defendants on February 1, 2007

11  was not effective as to either defendant.  Although significant questions remain as

12  to whether UBS Defendants were properly served even after this point, in the

13  interests of a speedy resolution of this meritless suit, UBS Defendants accepted

14  service as of February 5, 2007, and removed to this Court within the 30-day

15  window, on March 6, 2007.  UBS Defendants therefore properly removed, and the

16  Motion to Remand should be denied.

17

18  DATED: April 16, 2007              MUNGER, TOLLES & OLSON LLP
                                       GEORGE M. GARVEY
19                                     JACOB S. KREILKAMP

20

21                                     By:  /s/ Jacob S. Kreilkamp
                                                JACOB S. KREILKAMP
22

23                                     Attorneys for Defendant
                                       UBS Financial Services Inc.
24

25

26

27

28

2732403.3

10

OPPOSITION TO MOTION TO REMAND

# DECLARATION OF JAY B. ERICSSON

I, JAY B. ERICSSON, declare as follows:

1.    I make this declaration of my personal knowledge.  If called as a witness, I could and would testify competently to the facts stated herein.

2.    Since July 2006, I have been employed by UBS Financial Services Inc. ("UBS FS"), a securities brokerage firm formerly known as PaineWebber Incorporated.  UBS FS' headquarters offices are located in Weehawken, New Jersey.

3.    I am the branch manager of UBS FS' Bakersfield office.  The Bakersfield office consists of five licensed stockbrokers and a support staff.  The Bakersfield office is what is known in the securities business as a "satellite" office: a smaller office that reports to a larger branch office, in our case, the UBS FS Fresno branch office.  I report to the manager of the Fresno office, Robert Gunning.

4.    My responsibilities and authority at UBS FS are limited to the management (under the supervision of the Fresno office) of the Bakersfield satellite branch office.  I have no management responsibilities or authority with respect to any other office, or any other aspect of the business of UBS FS.  I am not the president or other head of UBS FS, a vice-president, secretary or assistant secretary, a treasurer or assistant treasurer, or a general manager, of UBS FS.  UBS FS has not authorized me to receive service of process on behalf of the corporation.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

2725243.1

11

1       5.    I am not employed in any capacity by UBS AG, and have never

2 been authorized to act as its agent for any purpose, including service of process.

3       I declare under penalty of perjury that the foregoing is true and correct.

4 Executed at Bakersfield, California, on April 13, 2007.

5

6

7                JAY B. ERICSSON

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2725243.1

12

## DECLARATION OF TAMBRA KING

I, TAMBRA KING, declare as follows:

1.  I make this declaration of my personal knowledge, except as expressly stated otherwise.  If called as a witness, I could and would testify competently to the facts stated herein.

2.  I am a Director and the corporate Secretary of UBS Financial Services Inc. ("UBS FS").

3.  UBS FS is a corporation formed under the laws of the State of Delaware, with its principal place of business in Weehawken, New Jersey.

4.  UBS FS currently maintains approximately 550 branch office locations.  Its branch offices are simply locations at which UBS FS, the Delaware corporation, does business.  They are not separate corporations.  There was and  is no corporation named "UBS Financial Services Inc., Bakersfield, California Branch."

5.  In the regular course of UBS FS' business, it maintains a record of the persons appointed as its corporate officers.  UBS FS' record of its corporate officers is updated on a regular basis by someone with knowledge of the appointment to reflect the newly appointed officer's status as a corporate officer. The absence of a record of a person's appointment as a corporate officer is a trustworthy indication that that person was not appointed a corporate officer.  UBS FS' records of its corporate officers show that Jay Ericsson is not, and was not in February 2007, a corporate officer of UBS FS.

6.  In the regular course of UBS FS' business, it maintains records of the persons or entities appointed by it as agent for service of process, and of the geographic areas within which the agent is authorized to accept service of process. At or near the time of the appointment of such an agent, an entry is made in the records, by a person with knowledge of the appointment, identifying the agent.

2732379.1

1  UBS FS' records show that its agent for service of process in the State of California

2  is (and was in February 2007) Corporation Service Company, doing business in

3  California as CSC-Lawyers Incorporating Service.  UBS FS has not authorized Jay

4  Ericsson to accept service of process on its behalf.

5          I declare under penalty of perjury that the foregoing is true and correct.

6  Executed at New York, New York on April 13, 2007.

7

8

9                    _Tambra S King_____
                      TAMBRA KING

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2732379.1

14