IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL L. JIMENA, <br><br> Plaintiff, <br><br> vs. <br><br> UBS AG BANK, INC., et al., <br><br> Defendants. | No. CV-F-07-367 OWW/GSA <br><br> MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO SET ASIDE ORDER DISMISSING WITH LEAVE TO AMEND UBS FS AND TO ENTER DEFAULT AGAINST UBS FS (Doc. 68) |

Before the Court is Plaintiff's October 30, 2007 "Motion to Set Aside Order Dismissing With Leave to Amend UBS FS and To Enter Default Against UBS FS" (Doc. 68).

   A.  <u>BACKGROUND</u>.

In the Memorandum Decision and Order filed on June 6, 2007 (hereafter referred to as the June 6, 2007 Order), the Court addressed Defendant UBS Financial Services, Inc. (UBS FS)'s motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure (Doc. 18):

1

**A.   Background Facts**

Plaintiff has apparently been defrauded in a variant on the 'Nigerian advance fee scam' by individuals who sent him forged emails that falsely purported to come from an officer of UBS AG in Zurich, Switzerland.  According to Plaintiff, he was contacted by an individual who had set up an email account under the name clive_standish@yahoo.com.  This individual claimed to be Clive Standish, the Chief Financial Officer of UBS AG.  This impersonator apparently offered to transfer $19 million to Plaintiff's bank account. Plaintiff was convinced to wire $51,000 via Washington Mutual Bank, Bank of New York, and UBS AG to an account of a fourth bank, HSBC, allegedly to satisfy a non existent 'Anti Drug/Terrorist Clearance' fee required for transfers from Nigeria.  Plaintiff never received the 19 million that he expected.  He has sued UBS AG and Clive Standish, Chief Financial Officer of UBS AG.  Plaintiff brings a cause of action against all named defendants, including UBS FS, for

   1. Fraud

   2. California Commercial Code § 11302, and § 11103, UCC § 4A-302(a)(1), 301(b), § 4A-103(a)(1)

   3.   Intentional Tort

   4.   Interest on Damages.

**B.   UBS Financial Services**

Defendant UBS AG is incorporated and has its principal place of business in Switzerland. (Doc. 1, Notice of Removal, Ex. 1 Complaint ¶ 1, filed March 6, 2007.)  Defendant UBS Financial Services ('UBS FS') is a corporation that is wholly owned by an entity that is itself wholly owned by UBS AG.  UBS FS is incorporated in Delaware with its principal place of business at its headquarters in New Jersey.  (Doc. 11, Declaration of Tambra King ('King Declaration'), ¶ 3, Filed April 16, 2007.)

UBS AG Bank Inc. owns, operates, and controls

> all named branches and is the parent company of 1. UBS AG Bank, Manhattan Branch 2. UBS FS Inc., Weehawken Branch and 3. UBS FS Inc., Bakersfield Branch. (Doc. 1-2, Notice of Removal, Exhibit A, Complaint, p. 5, filed May 6, 2007.)
>
> UBS FS, Inc. has approximately 550 branch offices throughout the United States. (*Id.* at ¶ 4.) UBS FS, Inc. Bakersfield office is one such branch office. *Id.* Plaintiff joins UBS FS, Inc. Bakersfield as a defendant to establish that the parent corporation UBS AG, Inc. is doing business in the Eastern District of California. Plaintiff further alleges that UBS AG, Inc. is liable for the acts of Clive Standish 'even though he was acting for his own purpose.'
>
> ....

In footnotes 1-5, the Court ruled that California Commercial Code §§ 11302 and 11303 have no application to Plaintiff's action and that the Uniform Commercial Code sections do create a private right of action.

With regard to the claim for fraud against UBS FS, the June 8, 2007 Memorandum Decision, ruled:

> Plaintiff does not allege what specific conduct UBS FS engaged in that resulted in defrauding Plaintiff. Throughout his complaint Plaintiff makes general allegations that Defendants 'falsely represent[ed] to Plaintiff by many promises that Defendants [would] electronically wire transfer the 19 million dollars at Washington Mutual Bank, California ... within 24 hours after confirmed payment of $51,000 which was in fact false based on the fact that after payment of the $51,000 on June 14, 2006, defendant failed to electronically wire transfer the 19 million ...' (Doc. 1-2, Notice of Removal, Exhibit A, Complaint, p. 18 ....)
>
> In his complaint Plaintiff specifically

```
 1              alleges that UBS AG and Clive Standish
                engaged in an email exchange with Plaintiff
 2              where they allegedly made misrepresentations
                promising Plaintiff $19 million after
 3              Plaintiff wired $51,000.  (Id., p.24.)
                However, no where in his complaint does
 4              Plaintiff specifically allege that UBS FS
                sent any of the emails or otherwise had
 5              anything to do with Plaintiff in this
                dispute.  In his complaint, Plaintiff joins
 6              UBS FS, Bakersfield as defendant for 'doing
                business in behalf of or together with its
 7              parent corporation UBS AG.'  However,
                Plaintiff cannot allege claims against UBS FS
 8              merely by asserting that they were at the
                time of the accused conduct corporate,
 9              affiliates, and subsidiaries of UBS AG.  see
                TPS Utilicom Servs. v. AT&T Corp., 223
10              F.Supp.2d 1089, 1103 (C.D.Cal.2002).
```

**With regard to the claim for intentional infliction of emotional distress, the June 8, 2007 Memorandum Decision ruled:**

```
13              In his complaint, Plaintiff alleges that
                'Clive Standish, UBS AG Bank Head Office, and
14              all the rest of the above captioned-named
                defendants were the legal (proximate) cause
15              of damages ...'  (Doc. 1-2, ... Complaint, p.
                36 ....)  Plaintiff claims that he has
16              suffered 'sleepless nights, headaches,
                causing his blood pressure to rise, loss of
17              appetite, mental anguish, mental or emotional
                distress, humiliation, and other
18              psychological damage, whenever he thinks of
                this fraudulent case ...'  (Id.)  While
19              Plaintiff does alleged [sic] that the 'above
                captioned-named' Defendants were the cause of
20              his damages, Plaintiff does not allege any
                specific conduct on the part of UBS FS that
21              caused such damages.  Further, even if it
                were inferred from the complaint that
22              Plaintiff is arguing UBS FS somehow engaged
                in material misrepresentations towards
23              Plaintiff, he has failed to show how such
                conduct is so extreme or outrageous that it
24              exceeds all bounds of conduct usually
                tolerated in a civilized community.
                Plaintiff has failed to state a claim against
25              UBS FS or intentional infliction of emotional
26              distress or any other intentional tort he
```

alleges.

>  Defendants' motion to dismiss UBS FS from the complaint is GRANTED WITH LEAVE TO AMEND.

On June 14, 2007, Defendants lodged a proposed Order dismissing UBS FS and ordering Plaintiff to file an amended complaint within 15 days (Doc. 19). On June 15, 2007, Plaintiff filed a Notice of Appeal to the Ninth Circuit, purporting to appeal the June 8, 2007 Memorandum Decision (Doc. 27). On September 24, 2007, Plaintiff's appeal was dismissed by the Ninth Circuit for lack of appellate jurisdiction. (Docs. 61-62). On October 31, 2007, Plaintiff filed the "Motion to Set Aside Order Dismissing With Leave to Amend UBS FS and To Enter Default Against UBS FS", noticing the motion for hearing on December 3, 2007 (Doc. 68).

By Order filed on November 9, 2007, Plaintiff was ordered to appear on January 7, 2008 and show cause why this action should not be dismissed for Plaintiff's failure to file an amended complaint as required by the June 8, 2007 Memorandum Decision (Doc. 70). Plaintiff filed a written response to this OSC (Doc. 82). In pertinent part, Plaintiff asserted:

> Defendants in this case contended that UBS FS has no wrong doing. The Court found UBS FS has no wrong doing. Plaintiff agrees with the Court that UBS FS committed no wrong doing. Plaintiff admits UBS FS committed no wrong doing. Plaintiff by agreeing and admitting that UBS FS committed no wrong doing means there are no facts of wrong doing by UBS FS that could be alleged in the complaint by way of amendment. The facts of any wrong doing by UBS FS are none-existent [sic] in this case. It is therefore impossible to amend the complaint against UBS FS when there are no facts of wrong doing to

5

>     allege in the complaint against UBS FS by way
>     of amendment.

At the OSC hearing on January 7, 2008, Plaintiff specifically represented to the Court that he did not intend to amend the Complaint but then referred to his "Motion to Set Aside Order Dismissing With Leave to Amend UBS FS and To Enter Default Against UBS FS". Because Plaintiff's positions appeared contradictory and because Defendants had not yet responded to the "Motion to Set Aside Order Dismissing With Leave to Amend UBS FS and To Enter Default Against UBS FS", the Court set a briefing schedule and deferred ruling on the Order to Show Cause.

    B.  <u>MERITS OF MOTION</u>.

Plaintiff's "Motion to Set Aside Order Dismissing With Leave to Amend UBS FS and To Enter Default Against UBS FS" "prays that the order filed on June 8, 207 [sic] (Doc. 18) dismissing UBS FS with leave to amend, from this case be set aside and instead, or order issue entering default upon UBS FS."

Plaintiff is seeking reconsideration of the June 8, 2007 Order dismissing UBS FS with leave to amend.

Because the June 8, 2007 Order is an interlocutory order, *see WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir.1997), discretion exists to reconsider. *Kern-Tulare Water Dist. v. City of Bakersfield*, 634 F.Supp. 656, 665 (E.D.Cal.1986), *aff'd in part and rev'd in part on other grounds*, 828 F.2d 514 (9th Cir.1987), *cert. denied*, 486 U.S. 1015 (1988). "[T]his Court's opinions are not intended as mere first drafts, subject to

6

1 revision and reconsideration at a litigant's pleasure." *Quaker
2 Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288
3 (N.D.Ill.1988).  "Courts have distilled various grounds for
4 reconsideration of prior rulings into three major grounds for
5 justifying reconsideration: (1) an intervening change in
6 controlling law; (2) the availability of new evidence or an
7 expanded factual record; and (3) need to correct a clear error or
8 to prevent manifest injustice."  *Kern-Tulare Water Dist., id.*.
9 Pursuant to Rule 78-230(k)(3), Local Rules of Practice, the party
10 seeking reconsideration has the duty to indicate "what new or
11 different facts or circumstances are claimed to exist which did
12 not exist or were not shown upon such prior motion, or what other
13 grounds exist for the motion,' and "why facts or circumstances
14 were not shown at the time of the prior motion."

15     Plaintiff argues that UBS FS is liable for the fraud
16 committed by its parent corporation, UBS AG, under the doctrine
17 of piercing the corporate veil.  Plaintiff places primary
18 reliance on *FMC Financial Corporation v. Murphee*, 632 F.2d 413
19 (5th Cir.1980).

20     In *Murphee*, the Fifth Circuit reversed a directed verdict on
21 piercing the corporate veil.  Applying Illinois law, the Fifth
22 Circuit ruled that there was sufficient evidence relevant to
23 application of the piercing the corporate veil doctrine to make a
24 subsidiary liable for the acts of the parent corporation, for the
25 issue to have been presented to the jury.

26     Plaintiff's reliance on *Murphee* is misplaced.  The law of

the forum state is applied in determining whether a corporation is an alter ego. *S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir.2003).

As explained in *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1115-1116 (C.D.Cal.2003):

> 'The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests. In certain circumstances the court will disregard the corporate entity and will hold the individual shareholders liable for the actions of the corporation.' *Mesler v. Bragg Management Co.*, 39 Cal.3d 290, 300 ... (1985). The purpose of the doctrine is to bypass the corporate entity for the purpose of avoiding injustice. Its 'essence ... is that justice be done[,] ... [and t]hus the corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require.' *Id*. at 301 ... See also *Roman Catholic Archbishop of San Francisco v. Superior Court*, 15 Cal.App.3d 405, 411 ... (1971)('The terminology "alter ego" or "piercing the corporate veil" refers to situations where there has been an abuse of corporate privilege, because of which the equitable owner of a corporation will be held liable for the actions of the corporation,' citing *Minton v. Cavaney*, 56 Cal.2d 576, 579 ... (1961).
>
> Before the doctrine may be invoked, two elements must be alleged: 'First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone.' *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 526 ... (2000); *Mesler, supra*, 39 Cal.3d at 300 ... ('There is no litmus test to determine when the

|   |   |
|---|---|
| 1 | corporate veil will be pierced; rather the result will depend on the circumstances of each particular case. There are nevertheless, two general requirements: "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an equitable result will follow,"' quoting *Automotriz Del Golfo De California S.A. De C.V. v. Resnick*, 47 Cal.2d 792, 796 ... (1957). See also *AT & T V. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir.1996). |

'[O]nly a difference in wording is used in stating the ... concept where the entity sought to be held liable is another corporation instead of an individual.' *Las Palmas Associates v. Las Palmas Center Associates*, 235 Cal.App.3d 1220, 1249 ... (1991). Like other shareholders, a parent company is presumed to have an existence separate from its subsidiaries. Accordingly, the mere fact that it owns the stock of the subsidiary will not suffice to prove that the two entities are alter egos of one another; rather, the evidence must show that the wholly-owned subsidiary is merely a conduit for, or is financially dependent on, the parent corporation. *Institute of Veterinary Pathology, Inc. v. California Health Laboratories, Inc.*, 116 Cal.App.3d 111, 119 ... (1981)('"With increasing frequency, courts have demonstrated a readiness to disregard the corporate entity when a wholly owned subsidiary is merely a conduit for, or is financially dependent on, a parent corporation. In the interests of justice and to prevent fraud, the courts will ignore the existence of a corporate entity used to cut off either causes of action against or defenses by another corporate entity,"' quoting 1A Ballantine & Sterling, CALIFORNIA CORPORATION LAWS, § 296.02, PP.14-32.1-14-33 (4TH ed.1980)).

Conclusory allegations of 'alter ego status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of

> the elements of alter ego liability, as well as facts supporting each. *In re Currency Conversion Fee Antitrust Litigation*, 265 F.Supp.2d 385, 426 (S.D.N.Y.2003)('These purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard'); *Wady v. Provident Life and Accident Co. of America*, 216 F.Supp.2d 1060, 1067 (C.D.Cal.2002)('More pertinent for purposes of the current discussion, none [of the allegations] contains any reference to UnumProvident being the alter ego of Provident. None alleges that UnumProvident treats the assets of Provident as its own, that it commingles funds with Provident, that it controls the finances of Provident, that it shares officers or directors with Provident, that Provident is undercapitalized, or that the separateness of the subsidiary has ceased. Without such allegations, the issue is not adequately raised, and UnumProvident was not put on notice that this was a theory against which it should be prepared to defend'); *Kingdom 5-KR-41, Ltd. v. Star Cruises PLC,* ... 2002 WL 432390, * 12 (S.D.N.Y., Mar. 20, 2002)('[I]n order to overcome the presumption of separateness afforded to related corporations, [plaintiff] is required to plead more specific facts supporting its claims, not mere conclusory allegations'); *Hokama v. E.F. Hutton & Co., Inc.*, 566 F.Supp. 636, 647 (C.D.Cal.1983)('Defendants further argue that plaintiffs cannot circumvent the requirements for secondary liability by blandly asserting that Madgett, Consolidated, and Frane are "alter egos" of other defendants accused of committing primary violations. This point is well-taken ... If plaintiffs wish to pursue such a theory of liability, they must allege the elements of the doctrine. Conclusory allegations of alter ego status such as those made in the present complaint are not sufficient').

Plaintiff asserts that the Court "found" in the June 6, 2007 Order that "UBS AG Bank Inc. owns, operates, and controls all

10

named branches and is the parent company of 1. UBS AG Bank, Manhattan Branch 2. UBS FS Inc., Weehawken Brach and 3. UBS FS Inc., Bakersfield Branch.  (Doc. 1-2, Notice of Removal, Exhibit A, Complaint, p. 5, filed May 6, 2007)."  Plaintiff contends that this "finding" satisfies the control element stated in *Murphee*. Plaintiff then refers to allegations in the Amended Complaint detailing alleged fraudulent actions or representations by UBS AG.  In his reply brief, Plaintiff asserts:

> Annex 3, amended complaint (also Exh. 3) in the second to the last paragraph, advertises that 'UBS Financial Services, Inc., a registered dealer/broker offering securities, trading, brokerage and related services and products' [different fact] proves, admits, means that UBS FS is being used by UBS AG 'as a marketing conduit'.  Attempts to shield itself from liability based on its subsidiary activities, is futile because piercing the corporate veil is appropriate and the alter ego is satisfied.

Plaintiff cites *United States v. Toyota Motor Corp.*, 561 F.Supp. 354, 359 (C.D.Cal.1983) as authority for imposition of alter ego liability on UBS FS for the actions of UBS AG based on this assertion.  *Toyota Motor Corp.* does not involve the issue of alter ego liability but, rather, *in personam* jurisdiction.

Plaintiff further refers in his reply brief to the allegations in the Amended Complaint that:

> Defendant UBS Financial Services <u>Inc</u>. with address at 10000 Stockdale Highway, 1 Riverwalk, Suite 270, Bakersfield, California, is a <u>branch</u> of UBS AG Bank <u>Inc</u> headquartered at Zurich, Switzerland as explained (Annex 2) by its internet advertisement .... When the latter website is mouse clicked, the linkage to UBS AG Bank

11

appears showing that UBS AG Bank of Switzerland is the parent company of UBS Financial Services, Bakersfield Branch (Annex 3).

Plaintiff argues that:

The portrayal, advertisement by UBS AG that UBS FS is directly linked to UBS AG not to UBS FS in Weehawken, New Jersey, not to UBS Americas, Inc. proves that UBS AG is the parent corporation and UBS FS is a branch of UBS AG.  UBS AG and UBS FS are both estopped to show by its documentation that parent corporation of UBS FS Bakersfield is UBS FS Weehawken, N.J. and UBS Americas, Inc. is completely out of the picture.  This shows unity of interest and ownership between UBS AG and UBS FS as far as UBS FS and UBS AG have portrayed themselves to the public.

The allegation in the complaint that UBS AG 'owns, operates, controls all above-named branches' (amended complaint, p. 5, line 7-8) and the allegation that 'liability of the head office of UBS AG Bank Inc. is a liability of all its branches being part of the same corporation' (p. 6, line 13-14, amended complaint) [different fact] [sic] which include UBS FS are allegations that UBS AG operates and controls UBS FS as a branch and therefor [sic] is an allegation of unity of ownership and interest between them as evidenced by Exh. 1, advertisement and portrayal by UBS AG that UBS FS is a branch, when the word 'Locations' is mouse clicked it gives a list of states in the US with 'Branch Locations' of UBS AG and when California is mouse clicked it gives a list of cities with 'Branch Locations' of UBS AG leading to UBS FS Bakersfiled [sic] branch.  The advertisement does not say 'Subsidiary Locations' and nothing is stated that UBS FS is a branch of UBS Americas Inc. nor is there anything stated that UBS FS Bakersfield, California is a branch of UBS FS head office in Weehawken, New Jersey.  Also evidenced by Exh. 2, when the website address of Bakersfield Branch is mouse clicked it leads to UBS AG of Switzerland.  Further evidenced by Exh. 3 that UBS FS is 'offering

> securities, trading, brokerage and related products and services' showing that UBS FS is a 'marketing conduit' of UBS AG satisfying the alter ego doctrine ... The advertisement of UBS AG that UBS FS is a branch puts both entities in estoppel to show that UBS FS is a subsidiary.

Plaintiff's assertions are obscure.  Plaintiff seriously misunderstands the procedural posture of this action and the function and effect of Rule 12 pleading motions.  At the hearing on January 7, 2007, Plaintiff specifically represented to the Court that he did not intend to amend the Complaint.  Plaintiff's motion for reconsideration cannot be granted in the absence of amendment because no facts are alleged in the Complaint from which the required elements to pierce the corporate veil to make *UBS FS* liable for the actions or omissions of *UBS AG*.  If Plaintiff intends to precede against UBS FS on the theory that it is the alter ego of UBS AG, Plaintiff must file an amended complaint alleging the elements for alter ego liability required by California law and facts to support that claim.  For example, in *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal.App.2d 825, 838-840 (1962), the Court of Appeal listed the variety of factors pertinent to the imposition of alter ego liability:

> Commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses ...; the treatment by an individual of the assets of the corporation as his own ...; the failure to obtain authority to issue stock or to subscribe to or issue the same ...; the holding out of an individual that he is personally liable for the debts of the corporation ...; the failure

>     to maintain minutes or adequate corporate
>     records, and the confusion of the records of
>     separate entities ...; the identical
>     equitable ownership in the two entities; the
>     identification of the equitable owners
>     thereof with the domination and control of
>     the two entities; identification of the
>     directors and officers of the two entities in
>     the responsible supervision and management;
>     sole ownership of all of the stock in a
>     corporation by one individual or the members
>     of a family ...; the use of the same office
>     or business location; the employment of the
>     same employees and/or attorney ...; the use
>     of a corporation as a mere shell,
>     instrumentality or conduit for a single
>     venture or the business of an individual or
>     another corporation ...; the concealment and
>     misrepresentation of the identity of the
>     responsible ownership, management and
>     financial interest, or concealment of
>     personal business activities ...; the
>     disregard of legal formalities and the
>     failure to maintain arms-length relationships
>     among related entities ...; the use of the
>     corporate entity to procure labor, services
>     or merchandise for another person or entity
>     ...; the diversion of assets from a
>     corporation by or to a stockholder or other
>     person or entity, to the detriment of
>     creditors, or the manipulation of assets and
>     liabilities between entities so as to
>     concentrate the assets in one and the
>     liabilities in another ...; the contracting
>     with another with intent to avoid performance
>     by use of a corporate entity as a shield
>     against personal liability, or the use of a
>     corporation as a subterfuge of illegal
>     transactions ...; and the formation and use
>     of a corporation to transfer to it the
>     existing liability of another person or
>     entity.

Plaintiff's reliance on the ownership connections between UBS AG and UBS FS is simply not sufficient to allege a claim against UBS FS based on alter ego; Plaintiff must allege facts from which it may be inferred that there is such unity of interest and

ownership that the separate personalities of UBS FS and UBS AG no longer exist and that, if the acts are treated as those of UBS AG alone, an equitable result will follow.  Unless Plaintiff files a Second Amended Complaint to adequately allege the liability of UBS FS for the actions or representations of UBS AG as an alter ego, UBS FS is no longer a party to this action.

Plaintiff further seeks reconsideration of the June 6, 2007 Order on the ground that UBS FS is liable for the actions or inactions of UBS AG on the basis of agency.

Plaintiff's contention is without merit.  Plaintiff has conceded that UBS FS engaged in no wrongdoing.  The cases upon which Plaintiff relies in asserting that UBS FS may be liable as an agent all involved whether personal jurisdiction existed.  *See S & R Davis Intern., Inc. v. The Republic of Yemen*, 218 F.3d 1292, 1298 (11th Cir.2000); *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir.1994), *cert. denied*, 514 U.S. 1004 (1995); *Gallagher v. Mazda Motor of America, Inc.*, 781 F.Supp. 1079, 1084 (E.D.Pa.1992).

Plaintiff seeks reconsideration of the June 6, 2007 Order on the ground that "the presence of UBS FS is necessary to establish and maintain the original jurisdiction of the Court."  Plaintiff, citing *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (1952), argues:

> [UBS Financial Services, Bakersfield Branch] has been doing financial services in Bakersfield, California as further shown by

```
            its appearance in the Southern Pacific Bell
            Company's directory telephone listing for a
            long time.  UBS Financial Service,
            Bakersfield Branch, California has been doing
            business with the people of Bakersfield on a
            permanent, continuous, systematic basis
            subjecting it and its parent company UBS AG
            Bank to the general jurisdiction of this
            Court.
```

     Plaintiff misunderstands the difference between subject matter jurisdiction and personal jurisdiction.  As explained in *Insurance Corp. v. Compagnie des Bauxites*, 456 U.S. 694, 701-703 (1982):

> The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties ... The concepts of subject-matter and personal jurisdiction, however, serve different purposes, and these different purposes affect the legal character of the two requirements ....
>
> Federal courts are courts of limited jurisdiction.  The character of the controversies over which federal authority may extend are delineated in Art. III, § 2, cl. 1.  Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction.  Again, this reflects the constitutional source of federal judicial power: Apart from this Court, that power only exists 'in such inferior Courts as the Congress may from time to time ordain and establish.'  Art. III, § 1.
>
> ...
>
> ... The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause.  The personal jurisdiction requirement recognizes and protects an individual liberty interest.  It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty.  Thus, the test

> for personal jurisdiction requires that 'the maintenance of the suit ... not offend "traditional notions of fair play and substantial justice."' *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ....

This Court has subject matter jurisdiction over this action because of the complete diversity of citizenship of the parties; this subject matter jurisdiction is conferred by statute.  There is no issue in this action of personal jurisdiction; it has not been raised by any of the Defendants.  "Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived."  *Id.* at 703.  Plaintiff's premise that UBS Financial Services, Bakersfield Branch, is necessary to establish the original jurisdiction of this Court is mistaken.

Plaintiff's motion seeks to impose a default against UBS FS based on Plaintiff's contentions that the Answer of UBS FS raises sham and frivolous defenses.  This issue has been rejected in other rulings in this action and will not be addressed again.  Plaintiff's reply brief asserts that the June 6, 2007 Order should be set aside because the parties mischaracterized Docket No. 33.  This issue also has been rejected by another ruling in this action and will not be addressed again.  Plaintiff is again admonished that his misunderstanding of the law and stubborn refusal to accept the analysis of the law provided, coupled with his insistence on converting pleading moitons to dispositive motions by arguing the underlying merits of his claims, is unduly, unnecessarily, and vexatiously multiplying the

**proceedings.  There is no justification for the overly prolix and erroneous arguments and "legal" contentions repeatedly raised by Plaintiff after he has been advised by the Court of the applicable law.  The Court is not required to do more, Plaintiff's *pro se* status notwithstanding.  Continued failure to follow the Court's orders may result in sanctions, including terminating sanctions.**

   For the reasons stated:

   1.   Plaintiff's "Motion to Set Aside Order Dismissing With Leave to Amend UBS FS and To Enter Default Against UBS FS" is **DENIED.**

   IT IS SO ORDERED.

**Dated:   July 14, 2008**              /s/ Oliver W. Wanger
                                   UNITED STATES DISTRICT JUDGE