**FILED**

1  CARL L. JIMENA
2  14774 Desert View Ave.
3  North Edwards, California 93523
4  Tel. 661-406-1616
5
6  Plaintiff, In Propia Persona

NOV 08 2007

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

7
8                    UNITED STATES DISTRICT COURT
9          EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION
10              2500 Tulare St., Room 1501, Fresno, CA 93721
11
12  CARL L. JIMENA
13          Plaintiff,

14  vs.

15
16
17  UBS AG (BANK, INC., ZURICH,
18  SWITZERLAND HEADQUARTERS);
19  et. al.,
20          Defendants.            ;
21
22
23
24  x----------------------------------------------x
25

|  |  |
|---|---|
| Civil Case No. 07CV367 | |
| Place: COURT ROOM 10 | |
| Hearing Date: Nov. 5, 2007 | |
| Time:  10:00 a.m. | |
| PLAINTIFF'S REQUEST FOR RULING ON OFFER OF EVIDENCE | |

26      Plaintiff hereby requests for a ruling on the admission of his evidence in
27  support of his motion for entry of default and default judgment by the court against
28  UBS AG set for hearing on November 16, 2007 in the morning.   Attached to the
29  OFFER OF EVIDENCE is ANNEX "A", PLAINTIFF'S AFFIDAVIT
30  AUTENTICATING HIS EXHIBITS.  Plaintiff is unable to attend the hearing in
31  person due to the long distance from North Edwards. Plaaintiff requests to attend the
32  hearing set on November 16, 2006 of this case by telephone and request the Deputy
33  Clerk to call the plaintiff at the time and date for hearing.

34      Dated: 11 — 12- , 2007.

35                                  CARL L. JIMENA
36                                  Plaintiff, In Propia Persona

PLAINTIFF'S AUATHENTICATION OF EXHIBITS FOR OFFER OF EVIDENCE
1

1   CARL L. JIMENA
2   14774 Desert View Ave.
3   North Edwards, California 93523
4   Tel. 661-406-1616
5
6   Plaintiff, In Propia Persona
7
8
9                    UNITED STATES DISTRICT COURT
10      EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION
11           2500 Tulare St., Room 1501, Fresno, CA 93721
12
13  CARL L. JIMENA
14          Plaintiff,                  Civil Case No. 07CV367

15  vs.                                 Place:   Court Room 10
16
17                                      Date:    Nov. 16, 2007
18  UBS AG (BANK, INC., ZURICH,         Time:    10:00 a.m.
19  SWITZERLAND HEADQUARTERS);
20  et. al.,                            OFFER OF EVIDENCE WITH
21          Defendants.         ;       ANNEX "A" AFFIDAVIT
22                                      OF AUTHENTICATION
23
24  x-------------------------------------------------x
25
26      Plaintiff hereby makes an offer of evidence as follows:

27      (Plaintiff beg leave to use big numbers as guide post at the end of which is the

28  evidence offered, requested to be admitted. Note: Please note that Exh. 59.1A refers

29  to the first thumbnail of Exh. 59 and the print of Exh. 59.1A in its normal size is now

30  Exh. 59.1C; Exh. 59.1B refers to the second thumbnail of Exh. 59 and the print of

31  Exh. 59.1B in its normal size is now marked as Exh. 59.1D.  The change is to

32  distinguish the thumbnail from its printed normal size)

33      **1**. Exh. 11 and 59. The latter documents are authenticated in paragraph 3 of

34  Annex A to this offer of evidence which is the Affidavit Authenticating Plaintiff's

35  Exhibits.

1      Exh. 11, and its reprint Exh. 59, to show more complete characteristics in color,

2  particularly the thumbnails of Exh. 11, is an email letter from Standard Trust Bank

3  dated April 28, 2006 with a copy of the attachment Exh. 15 and 16 reprinted to show

4  more characteristics and for a better   reading as respectively Exh. 59.1C and Exh.

5  59.1C.

6      Exh. 11 and Exh. 59 counted as one,  bears a letterhead showing the name of

7  the company Standard Trust Bank and its address at Plot 1313, 4th Avenue, Festac

8  Town, Lagos, Nigeria  Based on the authority of the treatise, American Jurisprudence,

9  this Exh. 11 and 59 qualifies as self-authenticating under Rule 902(7), Federal Rules

10  of Evidence, hereinafter abbreviated as FRE,  as a sign or label purporting to have

11  been affixed in the course of business and indicating ownership, control or origin.

12  The treatise, 103 Am,. Jur., Trials, 123 §13, p. 157 states:

13      "Under Rule 902 an email that bears the name of the company from which it
14      was sent may serve to satisfy the criteria for self-authentication.[7] (The latter
15      footnote 7 says: "Rule 902[7], **Trade inscriptions and the like.** Inscriptions,
16      signs, tags or labels purporting to have been affixed in the course of business
17      and indicating ownership, control, or origin.. "

18

19      At the closing of Exh. 11 and 59 is the signature of the branch manager and the

20  name of the company, Standard Trust Bank PLC,  to which she is affiliated or

21  employed. These determines it is authentic. To quote 103 Am. Jur. Trials 123, §13, p.

22  156:

23      "For example, courts have looked at the electronic signature at the end of an

24  email message identifying the name and business affiliation of the sender to determine

25  that an e-mail was authentic.[3] "   The latter footnote 3 cites the case of Sea-land

26  Service, Inc. v. Lozen Intern., LLC, 285 F.3d 808, 819, (see for complete ruling

27  quoted, infra.).

28      Plaintiff offers in evidence, Exh. 11, its text enlargement Exh. 11a,  and Exh.

29  11 reprint Exh. 59 to show the two thumbnails of Exh. 59, and Exh. 59.1C and Exh.

1   59.1D as attachment of Exh. 59.  These are regarded as originals under Rule 1001(3)
2   [computer printouts are original] These are nonheaersay, relevant to the wire or fund
3   transfer and Exh. 16 and Exh. 59.1D proves the acceptance the payment order Exh. 15
4   and Exh. 59.1C and part of plaintiff's data compilation in any form under Rule 803(6).
5       Plaintiff request that Exh. 11, Exh. 11a, Exh. 59, Exh. 59.1A, Exh. 59.1B, Exh.
6   59.1C, Exh. 59.1D be all admitted in evidence. .

7   **2.** Exh. 16 and its reprint to show more characteristics in color for better
8   reading, Exh. 59.1D, acceptance of the payment order - Exh. 15 and its reprint Exh.
9   59.1C for the same purpose as Exh. 59.1D.  Exh. 16 and Exh. 59.1D are authenticated
10  in paragraph 3 of Annex A (Plaintiffs authentication of exhibits) to this offer of
11  evidence.

12      At the joint scheduling conference held on June 19, 2007, plaintiff demanded a
13  copy of Exh. 16, since it originated from UBS AG, together with Exh. 15, the payment
14  order subject of acceptance, and in return will give him a copy of plaintiff's exhibits
15  by way of initial disclosure.  Atty. Jacob Kreilkamp refused.  The exchange was a one
16  way traffic.  Plaintiff therefore is compelled to use his own copy Exh. 15 and 16.

17      Exh. 16 and Exh. 59.1D, counted as one document, is a commercial paper
18  which is self-authenticating under Rule 902(9), FRE , which provides: "**Commercial
19  paper and related documents**. Commercial paper, signatures thereon, and documents
20  relating thereto, to the extent provided by general commercial law." The applicable
21  general commercial law mentioned in the latter rule is §1307, California Uniform
22  Commercial Code. under which Exh. 16 and Exh. 59.1D is a "document authorized or
23  required by the contract [between Standard Trust Bank and the plaintiff for wire or
24  fund transfer] to be issued by a third party [here UBS AG as intermediary under
25  California UCC] and "is admissible in evidence of the facts stated in the document by
26  the third party in any action arising under the contract." Exh. 16 and Exh. 59.1D are
27  relevant to the wire transfer, nonhearsay, regarded as originals under Rule 1001(3)

1   [computer printouts are originals]. declaration against interest of UBS AG, and
2   admission of an adverse party, namely UBS AG, part of data compilation under Rule
3   803(6), FRE, and admissible in evidence under Rule 902, (9), FRE,   in relation to
4   §1307 California Uniform Commercial Code.

5       Plaintiff offers in evidence Exh. 16 and Exh. 59.1D and request that it be
6   admitted.

7       **3**. Exh. 15 and its reprint to show the thumbnails, its characteristics and for
8   better reading, Exh. 59.1C.  Exh. 15 and Exh. 59.1C are authenticated in paragraph 3
9   of Annex A to this offer of evidence. Exh. 15 and Exh. 59.1C, counted as one,  is the
10  payment order under California Uniform Commercial Code. It is a commercial paper
11  with signatures therein appearing at the bottom showing its approval which is self-
12  authenticating under Rule 902[9], FRE, quoted supra. in the same manner as Exh. 16
13  and Exh. 59.1D. They are relevant to the wire transfer. Exh. 15 is an attachment of
14  Exh. 11 and 59. received from Mrs. Chika Umeh of Standard Trust Bank, the Branch
15  Manager referred to in Exh. 11 and 59. The source of Exh. 15 and 59.1C being
16  Standard Trust Bank its authenticity is beyond question.  Exh. 15 and 59.1C (together
17  with Exh. 16 and 59.1D)  was authenticated in paragraph 3 of Annex A to this Offer
18  of Evidence. Exh. 15 and Exh. 59.1C are relevant, nonhearsay, regarded as originals
19  under Rule 1001(3) FRE [computer printouts are originals] and declaration of interest
20  on  Standard Trust Bank PLC and part of data compilation in any form under Rule
21  803(6) FRE.

22      Plaintiff offers in evidence Exh. 15 and Exh. 59.1C and request that it be
23  admitted.

24      **4**. Exh. 25-58, Exh. 6,7,8, 12, 13, 19, 20. (Some are reprints showing in color
25  more characteristics as appearing in the In Box of Yahoo)  All of the latter exhibits,
26  emails of Clive Standish,  are authenticated in paragraph 2 of Annex A to this Offer of
27  Evidence. They are all relevant to the wire transfer.

1   All emails of Clive Standish bearing the letterhead as follows:

2   CUSTOMER SERVICES DEPARTMENT
3   UBS, ZURICH
4   GESSNERALLE 3
5   CH- 8001 ZURICH
6   WEBSITE: www.ubs.com
7   EMAIL: customerservices@privateclientsubs.cjb.net
8   clive_standish@yahoo.com
9   Tel: 41 1 2341111
10  Fax: 41 1 3553864
11
12  The immediately preceding letterhead of Clive Standish qualifies under Rule

13  902[7], FRE as self-authenticating being a "sign" or "label"" purporting to have been

14  affixed in the course of business and indicating ownership, control or origin." To

15  quote 103 Am. Jur. Trials 123, §13, p. 157:

16      "Under Rule 902 an email that bears the name of the company from which it

17      was sent may serve to satisfy the criteria for self-authentication.[7]"(supra)

18  The electronic signature at the end of Clive Standish identify his name and

19  business affiliation as sender which determines they are authentic. To quote 103 Am.

20  Jur. Trials 123, §13, p. 156:

21      "For example, courts have looked at the electronic signature at the end of an e-
22      mail message, identifying the name and business affiliation of the sender to
23      determine that an e-mail was authentic.[3]" (Footnote 3 cites the case of Sea-
24      land Service, Inc. v. Lozen Intern., LLC, 285 F.3d 808, 819.[9th Cir, 2002])
25
26  Referring to the original text of the above Sea-land Service Inc., v. Lozen

27  Intern. LLC, supra, the 9th Circuit Court, U.S. Court of Appeals held:

28      "Exhibit 4 is an admission by a party opponent. The original e-mail, an
29      internal company memorandum, closes with an electronic 'signature' attesting
30      that the message was authored by 'Mike Jacques, 'Sea-Land's Reefer Services
31      Coordinator' at the time the e-mail was written. Jacques is listed as one of Sea-
32      Land's employees in Exhibit 9, a letter from Sea-Land to Lozen that the district
33      court *did* admit into evidence.. The original e-mail also appears to concern a
34      matter within the scope of Jacques' employment." (at page 821)
35

1    To the same effect is the ruling of the Court in U.S. v. Safavian, 435 F. Supp.

2  36, 39 (D.D.C. 2004) in which the Court held after analyzing the emails on record:

3       'The statements attributed directly to Mr. Safavian come in as admissions by a
4       party opponent under Rule of 801(d)(2)(A) of the Federal Rules of Evidence."
5
6    The same rule was reiterated in the case of In Re Homestore Com, Inc.,

7  Securities Litigation, 347 F. Supp. 2d 769, 781 where the Court ruled: (note, the

8  emails had no foundation but the Court admitted them for the reason what those

9  emails were produced during discovery. Similarly in this case against UBS AG,

10  plaintiff's Exh. 1-75 were produced by plaintiff as initial disclosure which is already a

11  part of the discovery process, To play safe however, plaintiff will invoke this as his

12  last reason for admission of Exh. 1-75). .

13       "Second, emails written by a party are admissions of a party opponent and
14       admissible as non-hearsay under Fed. R. Evid. 801(d)(2). These emails were
15       written by Wolff; Plaintiffs offer his own statements against him;"
16
17    All emails of Clive Standish are also admissible on the ground that they are

18  declaration against interest under Rule 804(b)(3), FRE, since he is in Zurich,

19  Switzerland and on the authority of 103 Am. Jur. Trials 123, §11, p. 155 citing that

20  rule and stating "A statement against interest is a statement that was at the time of its

21  making, so far contrary to the declarant's pecuniary or proprietary interest or so far

22  tended to render invalid a claim by the by the declarant against another that a

23  reasonable person in the declarant's position would not have made the statement

24  unless believing it to be true."

25    Plaintiff offer in evidence all emails of Clive Standish, Exh. 25 to Exh, 58,

26  Exh. 6, 7, 8, 12, 13, 19, 20, all being admissions of an adverse party and a vicarious

27  admissions binding on UBS AG under Rule 801(d)(2)(A, C; D), Fed. R. of Evid. and

28  are declaration against interest under Rule 804(b)(3), FRE and are data compilation in

29  any form under Rule 803(6) FRE.   They are all regarded as originals under Rule

30  1001(3) FRE [computer printouts are originals. Plaintiff request they all be admitted.

1    **5**. Exh. 59 to Exh. 64. Standard Trust Bank's email to plaintiff.

2    All emails of Standard Trust Bank PLC are authenticated in paragraph 3 of
3    Annex A to this Offer of Evidence.

4    The analysis of Standard Trust Bank's email in paragraph 1 above regarding
5    Exh. 11 and 59 applies to all of Standard Trust Bank's email, Exh. 59 to 64. That
6    analysis is reproduced below.

7    All emails of Standard Trust Bank bears a letterhead showing the name of the
8    company Standard Trust Bank and its address at Plot 1313, 4th Avenue, Festac Town,
9    Lagos, Nigeria  Based on the authority of the treatise, American Jurisprudence, this
10   Exh. 11 and 59 qualifies as self-authenticating under Rule 902(7), Federal Rules of
11   Evidence, hereinafter abbreviated as FRE,  as a "sign" or "label" purporting to have
12   been affixed in the course of business and indicating ownership, control or origin.
13   The treatise, 103 Am,. Jur., Trials, 123 §13, p. 157 states:

14       "Under Rule 902 an email that bears the name of the company from which it
15       was sent may serve to satisfy the criteria for self-authentication.[7] (The latter
16       footnote 7 says: "Rule 902[7], **Trade inscriptions and the like.** Inscriptions,
17       signs, tags or labels purporting to have been affixed in the course of business
18       and indicating ownership, control, or origin.. "
19

20   At the closing of Exh. 11 and 59 is the signature of the branch manager and the
21   name of the company, Standard Trust Bank PLC,  to which she is affiliated or
22   employed. These determines it is authentic. To quote 103 Am. Jur. Trials 123, §13, p.
23   156:

24   "For example, courts have looked at the electronic signature at the end of an
25   email message identifying the name and business affiliation of the sender to determine
26   that an e-mail was authentic.[3] " The latter footnote 3 cites the case of Sea-land
27   Service, Inc. v. Lozen Intern., LLC, 285 F.3d 808, 819, 821 (see for complete ruling
28   quoted on page 821 of the latter case, see supra.).

1   All emails of Standard Trust Bank are nonhearsay, regarded as originals under

2   Rule 1001(3) FRE [computer printouts are originals] relevant to the wire or fund

3   transfer transaction and they are all declaration against the interest of Standard Bank

4   Trust, PLC since the payment Exh. 15, 59, 59.1A of the 19 million dollars is against

5   the interest of Standard Trust Bank and are data compilation in any form under Rule

6   803(6) FRE.

7   Plaintiff offers in evidence Exh. 59 to Exh. 64.  Standard Trust Bank's email to

8   plaintiff and requests that they be admitted in evidence.

9   **6.**  Exh. 65, 66, 74. All of these three emails are authenticated in paragraph 4

10  of Annex A hereof, plaintiff's  authentication of exhibits. Atty. Smith Coker email

11  Exh. 65, 66, 74 are authenticated with his printed signature "Barr. Smith Coker" at the

12  end of the email showing his professional affiliate as a Barrister in Nigeria or a

13  member of the Nigerian Bar Association. showing they are authentic. (Sea-Land

14  Service Inc. v. Lozen Int., LLC, 285 F. 3d 808, 819, 9th Cir., 2002)

15  Exh. 66 bears the name of Atty. Smith Coker as the lawyer who drafted the

16  document and at the top is the letterhead of the Nigerian Bar Association showing that

17  he is a member of that Bar Association, thus indicating it was authentic.  In Exh. 65,

18  Atty. Smith Coker authenticated the signature of Mrs. Faith Muhammed as follows:

19  "On the signing of the Deed of Agreement, it was signed by Mrs. Faith
20  Muhammed in my presence as I supervised the signing process.  What you see
21  in the Deed of Agreement is his basic and regular signature.  Are you
22  envisaging any problem with the agreement?  Or why are you asking?  Brief
23  and definite answers will be appreciated."

24

25  It is further authenticated by the fact that Exh. 66 was accepted by Standard

26  Trust Bank for wire transfer and Clive Standish recognized plaintiff as the beneficiary

27  in all his email. Exh. 65, 74, 66 are nonhearsay, regarded as originals under Rule

28  1001(3)  FRE [computer printouts are originals], relevant to the wire transaction, and

1 are correspondence, parft of compilation of data under Rule 803(6), FRE [data
2 compilation in any form].

3      Plaintiff offers in evidence Exh. 65, 74, and Exh. 66 (copy of the contract sent
4 by email to plaintiff by Atty. Smith Coker) Atty. Smith Coker email to the plaintiff
5 and requests that they be admitted in evidence. . All are relevant to the wire transfer
6 transaction.

7      **7.** Exh. 9 and Exh. 10. The latter two emails are authenticated in paragraph 5
8 of Annex A to this offer of evidence. In Exh. 9, the closing has the printed signature
9 of Arun Kendall identifying his business affiliation and position with APGML and
10 contains the complete name of the organization "Asia/Pacific Group on Money
11 Laundering (APG)" , address, phone number, fax number and mobile phone number..
12 The letterhead is at the bottom instead of at the top.

13      The letterhead located at the bottom is hereby reproduced as follows:

14      "Asia/Pacific Group on Money Laundering (APG)
15      110 Goulburn Street
16      Sydney NSW 2000
17      Locked Bag A3000, Sydney South NSW 1232
18      Phone +61 (2) 9286 4393 or )61 (2) 9286 4388 (Direct)
19      Fax +61 (2) 9286 4393
20      Mobile -61 (0) 434 608015
21      www. apgml.org
22
23      The immediately preceding letterhead of Arun Kendall qualifies under Rule

24 902[7], FRE as self-authenticating being a "sign" or "label"" purporting to have been

25 affixed in the course of business and indicating ownership, control or origin." To

26 quote 103 Am. Jur. Trials 123, §13, p. 157:

27      "Under Rule 902 an email that bears the name of the company from which it
28      was sent may serve to satisfy the criteria for self-authentication.[7] (supra)
29

1        The electronic signature at the end of Exh. 9 identify his name, Arun Kendall,

2  and his business affiliation, and position as Executive officer of APGML, as sender

3  determines they are authentic. To quote 103 Am. Jur. Trials 123, §13, p. 156:

4        "For example, courts have looked at the electronic signature at the end of an e-
5        mail message, identifying the name and business affiliation of the sender to
6        determine that an e-mail was authentic.[3]" (Footnote 3 cites the case of Sea-
7        land Service, Inc. v. Lozen Intern., LLC, 285 F.3d 808, 819.[9th Cir, 2002])
8        complete ruling at page 821 is quoted, supra)

9        For convenience, the complete ruling of the 9th Circuit Court U.S. Court of

10  Appeals in the latter case is again quoted: (Please note that the *Sealand* etc. case

11  concerns admissions by adverse party and Arun Kendall is not an adverse party but it

12  illustrates how Courts determine authenticity of an email.)

13        "Exhibit 4 is an admission by a party opponent. The original e-mail, an
14        internal company memorandum, closes with an electronic 'signature' attesting
15        that the message was authored by 'Mike Jacques. 'Sea-Land's Reefer Services
16        Coordinator' at the time the e-mail was written. Jacques is listed as one of Sea-
17        Land's employees in Exhibit 9, a letter from Sea-Land to Lozen that the district
18        court *did* admit into evidence.. The original e-mail also appears to concern a
19        matter within the scope of Jacques' employment." (at page 821, Sea-Land
20        Service Inc. case, supra)
21

22        Exhibit 10 bears the name and printed signature at its closing of Arun Kendall

23  and indicates it came from him when it states at the top:   From "APGML"

24  <mail@apgml.org> It discusses the same subject "Nigeria" which is the same subject

25  of Exh. 9 regarding Anti-Drug/Terrorist Clearance Certificate. and the contents

26  informs plaintiff there is no fee for Anti-Drug/Terrorist Clearance Certificate and

27  there is no Financial Action Task Force (FATF) operating in Hongkong at that time.

28  Exh. 10, in correlation with Exh. 9, identifies the company from which it came from

29  and hence qualifies as self-authenticating considering they are closely interrelated. To

30  quote 103 Am. Jur. Trials 123, §13, p. 157:

31        "Under Rule 902 an email that bears the name of the company from which it
32        was sent may serve to satisfy the criteria for self-authentication."(supra)

1    Exh. 9 and 10 are correspondence, computer printouts deemed orginals under

2    Rule 1001(3) FRE, part of a plaintiff's data compilation in any form under Rule

3    803(6) FRE, relevant showing the fee for anti-drug/terrorist clearance certificate is

4    non-existent.

5    Plaintiff offers in evidence Exh. 9 and Exh. 10, emails of Arun Kendall,

6    Executive Officer of APGML to plaintiff, and pray that both be admitted in evidence.

7    **8.** Exh. 68, 70, 71. The latter three documents are authenticated in paragraph

8    6 of Annex A to this offer of evidence.

9    Exh. 68 is the outline of the program implementation of Mrs. Faith

10   Muhammed's religious projects showing how the funds in this case is to be disbursed

11   undr Exh. 66 which is very relevant to the fund transfer transaction. It is nonhearsay

12   document being authenticated by plaintiff himself.

13   Exh. 70 the estimated seller's settlement dated September 29, 2006 stating

14   funds due at closing of the sale of his property, is nonhearsay correspondence relevant

15   to prove lost profits.

16   Exh. 71 the offer to purchase plaintiff's property after the buyers defaulted is

17   nonhearsay correspondence relevant to prove lost profits

18   Plaintiff offer in evidence Exh. 68, 70, 71 and pray that they be admitted in

19   evidnec.

20   **9.** Exh. 69. This is a grant deed executed by plaintiff and notarized by a

21   notary public on September 6, 2006. This is relevant to prove lost profits.

22   Plaintiff offers in evidence Exh. 69 and pray that the same be admitted in

23   evidence.

24   **10.** Exh. 72. This is authenticated in paragraph 7 of Annex A to this offer of

25   evidence.   Exh. 72 is Direct deposit to plaintiff's account with Washington Mutual

26   Bank of the net price of $17,197.88 paid by Chicago Title Co. in behalf of the buyers.

1   This is a bank record and qualifies as a commercial paper under 902(9) which is self-
2   authenticating. This is a computer printout deemed original under Rule 1001(3) FRE
3   [computer printouts is an original] This is nonhearsay document relevant to prove
4   lost profits.

5       Plaintiff offers in evidence Exh. 72 and pray that the same be admitted.

6       **11.** Exh. 73. This is authenticated in paragraph 8 of Annex A to this offer of
7   evidence. Exh. 73 is plaintiff's letter dated July 3, 2007 to Atty. Jacob S. Kreilkamp,
8   defendants counsel. Plaintiff offers in evidence Exh. 73 and request that it be
9   admitted.

10      **12.** Exh. 75. Joint Scheduling Report. This is a copy of a court record. in
11  this case. This is addressed to the Presiding Judge. Plaintiff invites judicial notice to
12  this document. Plaintiff offers it in evidence and request that the same be admitted.

13      **13.** Exh. 1 to Exh. 4. The latter four exhibits are authenticated in paragraph
14  10 of Annex A hereof to this offer of evidence. Exh. 1 with title at the top "UBS"
15  gives information about UBS. It is self-authenticating under Rule 902(6)
16  "Newspapers and periodicals. Printed materials purporting to be newspapers or
17  periodicals." On the left margin of Exh. 1 is "News" and "UBS News Alert." Exh. 1,
18  contains tabulations, list [of Branches] s, directories [location of branches] qualifying
19  it as admissible under Rule 803(17) Market Reports, Commercial Publications stating
20  "tabulations, lists, directories or other publications, generally used and relied upon by
21  the public or by persons in particular occupation"

22      Exh. 2, location and address of UBS FS, Bakersfield Branch was taken by
23  mouse clicking "Locations" at the left margin. It qualifies as a commercial paper
24  under Rule 902(9) It qualifies also a printed material purporting to be newspapers or
25  periodicals because it goes with "News" and "UBS News Alert". Exh. 1, "locations"
26  updates information as to who are the current managers of UBS branches. For

1  example in Exh. 2 the Branch Manager is Alan Larsen. It has now changed to Jay

2  Ericsson. Exh. 2 is likewise admissible under Rule 803(17) being part of and related

3  to Exh.1, a commercial publication.

4      Exh. 3 At the time Exh. 2 was printed as shown on the date at the bottom 10-5-

5  6, mouse clicking the internet address in Exh. 2 would cause Exh. 3 to come out as the

6  link. showing that UBS AG is the parent corporation. Exh. 3 qualifies as self-

7  authenticating under Rule 902(6), Newspapers and periodicals) On the left side of

8  Exh. 3 is "Press Room" which shows it also purports to be a newspaper. Exh. 3 is

9  likewise admissible as commercial publication under Rule 803(17) since it is also part

10 of and related to Exh. 1 by linkage.

11     Exh. 4, shows the organizational structure of UBS AG showing the position of

12 Clive Standish as fourth ranking officer from the President. It also qualifies as

13 Newspapers or periodicals under Rule 902(6), hence, is self-authenticating. It is

14 admissible also under Rule 803(17) as commercial publications.

15     Exh. 1-4 qualifies as communication by UBS AG to the public and constitutes

16 an admission of adverse party under Rule 801(d)(2)(A), FRE. They are deemed

17 originals being computer printouts under Rule 1001(3), FRE. They are relevant to the

18 allegations common to all causes of actions in the amended complaint.

19     Plaintiff offers in evidence Exh. 1-4 as commercial publications under Rule

20 803(17) and pray that they be admitted in evidence.

21  **14.** Exhibit 5 - Fed Imad wire transfer from California thru Washington
22      Mutual Bank of California to UBS AG BANK, Zurich,
23      Switzerland, thru correspondent bank, Bank of New York (Annex 5,
24      Amended Complaint)
25

26     This is authenticated in paragraph 11 of Annex A hereof to this offer of

27 evidence. Exh. 5 is a wire transfer confirmation from Washington Mutual Bank, thru

28 Bank of New York to UBS AG. This is self-authenticating being a wire transfer

29 confirmation in the federal line and is a commercial paper under Rule 902(9).and is

1   admissible under Rule 803(6).  This is also a print out from the computer record of the

2   Washington Mutual Bank on plaintiff's account and was printed in the presence of the

3   plaintiff. This is relevant to the payment of $51,000 for the nonexisting fee of anti-

4   drug/terrorist clearance certificate.

5      Plaintiff offers in evidence Exh. 5 and requests that it be admitted

6      **15.**   Exhibit 14 - Tracer dated  July 3, 2006, UBS AG Bank transferred to
7            the beneficiary Frontier Const. Eng. Ltd. only 200 Hongkong dollars
8            This is UBS AG Bank continuation of  the wire transfer of the Bank
9            of New York by crediting the beneficiary Frontier Cons. Eng. Ltd.
10          with "HKD200" (Annex 14, Amended Complaint)
11
12     This is authenticated in paragraph 12 of Annex A hereof to this offer of

13   evidence. Exh. 14 is a bank record and is a computer printout by the teller from their

14   computer.  It bears the name of the teller Juliana Gray who printed it.  It is a

15   correspondence between Washington Mutual Bank and the Bank of New York. This is

16   self-authenticating under Rule 902(9), commercial paper.  It is admissible as a

17   computer print out from the Washington Mutual Bank's computer.  It is also

18   admissible under Rule 803(6).  Exhibit 14 is nonhearsay relevant correspondence to

19   the payment of $51,000 for non-existing fee of anti-drug/terrorist clearance certificate.

20      Plaintiff pray that Exh. 14 be admitted

21      **16.**  Exhibit 17 - Plaintiff's July 14, 2006,  demand to pay on  defendant
22            UBS AG Bank. (Annex 17, Amended Complaint)
23
24   Exh. 17 is authenticated in paragraph 13 of Annex A hereof to this offer of evidence.
25   It is authenticated byh plaintiff himself.  It is relevant nonhearsay correspondence

26   and part of plaintiff's data compilation under rule 803(6) FRE.

27      Plaintiff offer Exh. 17 in evidence and pray that it be admitted in evidence.

28      **17.**  Exhibit 18 - Transaction number FTS0606148328500  dated June 14,
29            2006, wire transfer of the Bank of New York, correspondent bank,
30          which did not follow Clive  Standish wire transfer instruction of

1          giving "Further credit to xxx Bene: Frontier Const. Eng. Ltd.",
2          supposed to be the pseudonym for Financial Action Task Force, (Annex
3          18, Amended Complaint)

4
5    This is authenticated in paragraph 14 of Annex A hereof to this offer of evidence.

6          Exh. 18 is the wire transfer from Washington Mutual Bank's correspondence

7    bank, the Bank of New York, to UBS AG in Zurich Switzerland, This is self-

8    authenticating bank record or commercial paper under Rule 902(9) It is admissible as

9    nonhearsay computer printout of a bank record as correspondence between Bank of

10   New York and Washington Mutual Bank. It is a computer printout from the computer

11   of Washington Mutual Bank being regarded as an original under Rule 1001(3), FRE.

12   It is also admissible under Rule 803(6) part of plaintiff's data compilation. It is

13   relevant to the payment of the non-existing fee of anti-drug/terrorist clearance

14   certificate.

15         Plaintiff pray that Exhibit 18 be admitted.

16   **17.** Exh. 22, 23, 24

17         Exh. 22, 23, 24 are authenticated in paragraph 15 of Annex A to this offer of

18   evidence.

19         Exhibit 22 dated Nov. 28, 2006, California Secretary of State corporate status

20   record of UBS FS, Bakersfield, California, a subsidiary of UBS AG naming

21   Corporation Service Company as registered agent for service of process with a PO

22   Box address at Sacramento, California. Exh. 22 was personally taken by plaintiff from

23   the office of Secretary of State downtown Los Angeles, California. Exh. 22 bears the

24   stamp of the Secretary of State which may be the equivalent of a seal and is therefore

25   self-authenticating.

26         Exhibit 23  is a list of UBS AG's businesses in California taken from the

27   website of the California Secretary of State available for the genefral public.

1    Exhibit 24  is a Corporate Information on UBS Financial Service taken from

2  the website of the Secretary of State available for the general public.

3    Exhibit 22 to 24 are public records admissible under Rule 803(8)  They are part

4  of plaintiff's data compilation under Rule 803(6)  They are nonhearsay and relevant to

5  prove the allegations common to all causes of action in the amended complaint,

6  particularly relevant information on the defendants.   Being computer printouts, they

7  are regarded as originals under Rule 1001(3)  They are also part of plaintiff's data

8  compilation under Rule 803(6) FRE.

9    Plaiantiff offers in evidence Exh. 22 to 24 and request the same to be admitted.

10    **18.**  Exh. 67. This is authenticated in paragraph 16 of Annex A hereof to this

11  offer of evidence.  This is a demand to pay $76,000 and to transfer the 19 million

12  dollars to plaintiff's account with Washington Mutual Bank.  It is relevant nonhearsay

13  correspondence.  It is also part of plaintiff's data compilation under Rule 803(6), FRE.

14    Plaintiff offers Exh. 67 in evidence and pray that it be admitted.

15    **19.**  Exh. 1-75.  In the case of In re Homestead Com., Inc. Securities

16  Litigation 347 F. Supp. 2d. 769, 781, the Court held:

17  "The Court addresses the issue of authentication first.  Although none of these
18  documents have affidavits from the actual autors laying the foundation that the
19  emails are what they purport to be, Orr, 285 F.3d at 777, these documents are
20  deemed authentic because Plaintiff identified the documents as being produced
21  by parties in discovery, ....."
22
23    Similarly in this case, plaintiff's Exhibit 1 to Exh. 75 were produced during

24  initial disclosure which is already a part of discovery proceedings. Exh. 1-75 are

25

26

27

28

1   therefore deemed authentic for purposes of default judgment.   They are all part of

2   plaintiff's data compilation in preparation for trial in this case. under Rule 803(6).

3   FRE. (paragraph 20, Annex A)

4        Plaintiff offers in evidence Exh. 1 to 75 and pray that they be admitted.

5        Dated: _____ *11 – 12 –*, 2007.

6

7                                        CARL L. JIMENA

8                                        Plaintiff, In Propia Persona

9

10

11
12

1    CARL L. JIMENA
2    14774 Desert View Ave.
3    North Edwards, California 93523
4    Tel. 661-406-1616
5
6    Plaintiff, In Propia Persona
7
8                                                    annex "A"
9              UNITED STATES DISTRICT COURT
10     EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION
11          2500 Tulare St., Room 1501, Fresno, CA 93721
12
13   CARL L. JIMENA
14            Plaintiff,              Civil Case No. 07CV367
15   vs.                             Place:    Court Room 10
16
17                                   Date:    Nov. 16, 2007
18   UBS AG (BANK, INC., ZURICH,     Time:    10:00 a.m.
19   SWITZERLAND HEADQUARTERS);
20   et. al.,                        PLAINTIFF'S AFFIDAVIT
21            Defendants.       ;    AUTENTICATING HIS
22                                   EXHIBITS, ANNEX "A" TO
23                                   OFFER OF EVIDENCE
24
25   x----------------------------------------------x
26
27        I, Carl L. Jimena, after being duly sworn in accordance with law depose and

28   say:

29        1. I am a retired U.S. Senior Citizen. I engage in business activity on my own.

30   Sometime prior to April , 2006 up to the present time, it was my practice as a regularly

31   conducted business activity to make a data compilation of acts and events on the

32   fund/wire transfer transaction involving Standard Trust Bank and UBS AG Bank. I

33   keep a record in the course of my regular business activity on this fund transfer. The

34   data compilation consist of documents identified and marked as Exhibits 1 to 75 in the

35   above entitled case, which icludes emails from Clive Standish in behalf of UBS AG

1    Bank, (identified and marked as Exh. 25 to 58, Exh. 6,7,8, 12, 13, 19,20) Standard
2    Trust Bank, (Exh. 59 to 64, Exh. 11, 11a, 15,16, 59.1A, 59.1B, 59.1C, 59.1D) Atty.
3    Smith Coker, (Exh. 65, 66, 74) Arun Kendall of APGML (Asia Pacific Group on
4    Money Laundering) (Exh. 9 and 10).. With the exception of some documents
5    manually obtained or in some other way, I keep and compile these emails in electronic
6    storage at my email address mindoro123@yahoo.com. I had this email address for
7    over three years now and I am the custodian of these email records. All my emails are
8    automatically recorded at or near the time of the transaction, that is from the date and
9    time the email is sent to me and received by me at my In Box of my email address
10   with Yahoo, Inc.. The date of each email appears at the top of the letter/message. I
11   have personal knowledge of these emails since I read them immediately after I receive
12   them. Since the wire transfer transaction is important to me I take care that records of
13   email are not deleted from the time they were sent to me up to the present time.
14   Yahoo, Inc. has a very reliable electronic storage and equipment, where all my emails
15   are received, and Yahoo Inc. has a good reputation around the world for
16   trustworthiness and reliability of their equipment. My email address with Yahoo is
17   password protected. I copied all my emails with Yahoo particularly with the wire
18   transfer transaction to my notebook computer using Kinko's Copy Store internet
19   connection. My notebook computer is password protected. From my notebook
20   computer I printed the emails. Most of the emails were printed before filing this case.
21   I prepared them as evidence in this case.

22      2. Exh. 25 to 58, Exh. 6,7,8, 12, 13, 19,20.

23      Referring to the email of Clive Standish, identified and marked as Exh. 25 to
24   58, Exh. 6,7,8, 12, 13, 19,20, I authenticate them as follows: The electronic signature
25   in print "Clive Standish" is his signature. Below his signature is his business
26   affiliation "UBS, ZURICH'. The same exhibits of Clive Standish email as identified

1    and marked were sent to me, received by me and automatically recorded in one split

2    second in my email address "mindoro123@yahoo.com" on the date appearing on top

3    of the email letter/message.  Exhibits 25 to 31 was received by me from Clive

4    Standish email address "customerservices@privateclientsubs.cjb.net" and Exhibits 32

5    to   58   was   received   by   me   from   Clive   Standish   email   address

6    "clive_standish@yahoo.com" The letterhead appearing in all emails of Clive Standish

7    at the beginning of his letter which reads:

8        "CUSTOMER SERVICES DEPARTMENT
9        UBS, ZURICH
10       GESSNERALLE 3
11       CH- 8001 ZURICH
12       WEBSITE: www.ubs.com
13       EMAIL: customerservices@privateclientsubs.cjb.net
14       clive_standish@yahoo.com
15       Tel: 41 1 2341111
16       Fax: 41 1 3553864"
17

18   belongs to Clive Standish.  The above physical address, telephone number, fax

19   number, website address, email address were all used by Clive Standish and belongs

20   to his office.  The same email exhibits pertaining to Cl;ive Standish as identified and

21   marked contains "Attn:  Carl L. Jimena" which is me as beneficiary to the payment

22   order Exh. 15 and 59.1C and in Exh. 16 and 59.1D.  All of the same exhibit pertaining

23   to Clive Standish has a "subject" "RE:Swift Message dated 28/04/06 under

24   FMMRA3008083500 kindly refers" which refers to the same FMMRA number

25   appearing at the first line below the "Acknowledgment" in Exh. 16 and 59.1D.

26   All of the same exhibits contain a subject below the salutation, namely: "Re: Transfer

27   of USD19, 000,000.00 from Standard Trust Bank Plc"" which refers to the payment

28   order Exh. 15 and 59.1C.

29       3. Exh. 59 to 64, Exh. 11, 11a, 15,16, 59.1A, 59.1B, 59.1C, 59.1D.  These are

30   Standard Trust Bank PLC emails to me.  In all these exhibits, the signature appearing

1  at the closing of the letter below her typewritten name is Mrs. Chika Umeh's

2  signature.   Below her name appears "Branch Manager".   This is her position at

3  Standard Trust Bank PLC, Lagos Nigeria Branch, her employer. The name Standard

4  Trust Bank PLC below her signature is her business affiliation and employer.   The

5  same exhibits pertaining to Standard Trust Bank were sent to me, from its email

6  address "admin@ubaonline.info" and addressed to me at my email address

7  "mindoro123@yahoo.com " and was likewise received by me on my same email

8  address, All emails of Standard Trust Bank to me has "Attn: Carl L. Jimena" which

9  refers to me as a recognized beneficiary. The letterhead appearing as:

10  "STANDARD TRUST BANK PLC
11  PLOT 1312 4H AVENUE FESTAC TOWN
12  LAGOS, NIGERIA".

13

14  is a true name and address of Standard Trust Bank. The phrase "REF.: STANDARD

15  TRUST BANK PLC/C.JIMENA06" appearing before the email message in all of

16  Standard Trust Banks email identified and marked above is the reference name to their

17  company's file concerning me and recognizing me as beneficiary to Mr. Jubril

18  Muhammed's account. The phrase "RE: TRANSFER OF USD19,000,000.00 FROM

19  THE ACCOUNT OF OUR DECEASED CLIENT MR. JUBRIL MUHAMMED"

20  before the beginning of the email message is the subject matter of the email message

21  again recognizing me as beneficiary to Mr. Jubril Muhamamed's account with them.

22      Exh. 59 has two attachments which appearing as thumbnails, Exh. 59.1A and

23  59.1B. When I mouse click both of them the document in its original size appears. I

24  printed them first in black ink and the result is the same as Annexes 15 and 16 to the

25  amended complaint.  When I printed them in red ink readability was better and almost

26  every letter can be read with a magnifying glass. I can read most important parts

27  without a magnifying glass. I printed in red Exh. 59.1A in red at its original size and I

28  marked the original size Exh. 59.1C, the payment order. I printed in red Exh. 59.1B in

1  its original size and I marked it Exh. 59.1D. There is now a distinction between the
2  thumbnails Exh. 59.1A and 59.1B from the original size as printed Exh. 59.1C and
3  59.1D.

4       I copied Exh. 59.1C and 59.1D to my personal computer from my In Box of my
5  email address "mindoro123@yahoo.com. From my personal computer I printed Exh.
6  59.1C and 59.1D. Hence the latter documents are accurate prints in its original size
7  from my email address mindoro123@yahoo.com. There could be no change because
8  my email address at Yahoo and my personal computer are both Windows password
9  protected so that I am the only one with access to them..

10      4. Exh. 65, 66. 74, Atty. Smith Coker's email.

11      Exh. 65 and 74 were emails from Atty. Smith Coker from his email address
12  ""barr_smith1980@yahoo.com" to my email address "mindoro123@yahoo.com" and
13  were received by me respectively on May 1, 2006 with regards to Exh. 65 and on
14  April 21, 2006 with respect to Exh. 74. The electronic printed signature "Barr. Smith
15  Coker appearing at the closing of the letter belongs to him. The abbreviated word
16  "Barr." is his affiliation with the Nigerian Bar Association as a practicing attorney in
17  Nigeria. The important subject matter of his email concerns the wire transfer
18  transaction from Standard Trust Bank, thru UBS AG, to Washington Mutual Bank and
19  authentication of the signature of Mrs. Faith Muhammed in Exh. 66. He labeled his
20  "subject" "URGENT UPDATE" in Exh. 65 which is an update of information and to
21  have me respond quickly.

22      Exh. 66. I received this document as an attachment to Atty. Smith Coker email
23  Exh. 74. The signature appearing in Exh. 66 over my typewritten name is my signature
24  and the signature of Mrs. Faith Muhammed over her typewritten name is her
25  signature. I verified this from Atty. Smith Coker and he attested the authenticity of
26  Mrs. Muhammed's signature in his email identified as Exh. 65. It is agreed that Exh.

1   66 is signed on April 2, 2006.  Exh. 66 shows that I am the beneficiary to the account
2   of Mr. Jubril Muhammed, husband of Mrs. Faith Muhammed with an obligation on
3   my part to donate funds for religious and charitable purposes.  Exh. 66 was accepted
4   by Standard Trust Bank:PLC as authentic and recognized me in their records as
5   beneficiary as shown in Exh. 15 and 59.1C. UBS AG likewise recognized me, thru
6   Clive Standish, as beneficiary as shown by Exh. 16 and 59.1D and in all emails of
7   Clive Standish to me, Exh. 25 to 58 and in all Emails of Standard Trust Bank PLC,
8   Exh. 59 to 64 and by Atty. Smith Coker in Exh. 65 and 74.

9       5.  Exh. 9 and 10.  Email of Mr. Arun Kendall of APGML (Asia Pacific Group
10  on Money Laundering.

11      Both emails, Exh. 9 and 10 were sent to me by Arun Kendall from his email
12  address "mail@apgml.org." to my email address "mindoro123@yahoo.com"
13  respectively received by me on July 11, 2006 with regards to Exh. 9 and on July 21
14  with regards to Exh. 10.  At the closing of both Exh. 9 and 10 appears the name in
15  print "Arun Kendall".  This is his electronic printed signature.  In Exh. 9 below Arun
16  Kendall's name appears "Executive Officer, Asia/Pacific Group on Money
17  Laundering (APG).  This is the position he holds with his organization APGML or
18  APG.  The latter is his business affiliation. At the bottom of his email appears his
19  letterhead as follows:

20      "Asia/Pacific Group on Money Laundering (APG)
21      110 Goulburn Street
22      Sydney NSW 2000
23      Locked Bag A3000, Sydney South NSW 1232
24      Phone +61 (2) 9286 4393 or )61 (2) 9286 4388 (Direct)
25      Fax +61 (2) 9286 4393
26      Mobile -61 (0) 434 608015
27      www. apgml.org"
28

1   This letterhead shows the name of his organization, address, phone number, fax
2   number, websidte address of APGML. Both emails Exh. 9 and 10 refers to the same
3   subject "Nigeria".. The  contents has reference to the Anti-Drug/Terrorist Clearance
4   Certificate.   Exh. 10  says  no  fee   is  charged  for  Anti-Drug/Terrorist  Clearance
5   Certificate.  FATF  does  not  use  pseudonym,  and  there  is  no  FATF  operating  in
6   Hongkong.

7   Exh. 9 has a tail which is my question to Arun Kendall to be answered and he
8   did answer it in Exh. 9.

9   6. Exh. 68, 70, 71.

10   Exh. 68 is a program I prepared as initial outline and as a basis on how the
11   funds of Mrs. Faith Muhammed will be disbursed. I prepared a rough draft about May
12   2006 and the outline as it appears now about June 2006 after Clive Standish made
13   some promises to transfer the 19 million dollars after I pay the $51,000 balance for
14   Anti-Drug/Terrorist Clearance Certificate. The electronic printed name below the
15   program is my electronic signature.

16   Exh. 70 is a statement prepared by Chicago Title Company, the escrow
17   company that handled the sale of my property located at Harbor St., North Shore,
18   California, Lot No. 723-074-003. Exh. 70 shows the deduction from the sales price of
19   $20,000 at the closing date September 29, 2006. The signature on the left bottom side
20   is my signature signifying approval of the deductions and accepting the net sales price.
21   At the closing date the buyers defaulted.

22   Exh. 71.  This is a card that I received about a few days after  the time the
23   buyers defaulted in paying the sales price at closing.  This is an offer of Gary Baker
24   for $30,000 subordinated. as shown  by Exh. 71. which is also dated September 29,
25   2006. This was a good offer that I could have accepted but I was pressed for payment
26   of the $6,300 I owe to Bank of America.  The original amount was $6,000, the amount

1   I added to my $45,000 which I paid to Clive Standish inn payment of the Anti-

2   Drug/Terrorist Clearance fee. The interest is going up fast so I decided to give an

3   extension of time to the buyers until they were finally able to pay the $20,000 within a

4   short time. I lost $10,000 in this transaction. I received Exh. 71 which is an offer

5   under this circumstances I just stated above. I affirm the authenticity of Exh. 71. It is

6   a card truly coming from Mr. Gary Baker by mail. It shows his address, company

7   affiliation, Hillside Developers, his fax number, cell phone number, email address,

8   requesting me to contact him immediately and the stamp of the post office on the card

9   on September 29, 2006.

10   7. Exh. 72. This is a printout from the computer of Washington Mutual Bank

11   located at the close to the corner of Truxton St. and Chester St., Bakersfield

12   California, made in my presence by the teller showing Chicago Title Company's direct

13   deposit of $17,197.88 to my account as payment for the property located at Harbor St.,

14   North Shore, California. The amount deposited is what was stated and what I signed

15   in Exhibit 70.

16   8. Exh. 73. The signature appearing at the bottom of Exh. 73 above my

17   typewritten name is my signature. This Exh. 73 is a letter dated July 3, 2007, which I

18   mailed on the same date to Atty. Jacob S. Kreilkamp, counsel for defendants

19   accompanied by the transmittal of Exh. 22 to 72 and also demanding for 2nd time a

20   copy of Exh. 16 and 15 as part of the initial disclosure demanded for the first time

21   during my conference with him on the Joint Scheduling Conference held on July 19,

22   2007.

23   9. Exh. 75. This is a Joint Scheduling Report dated July 3, 2007 signed by

24   Atty. Jacob S. Kreilkamp, counsel for defendants, with plaintiff's objections attached.

25   This is a court record addressed to the Presiding Judge, I invites judicial notice to this

26   Exh. 75. This document shows the contention of the defendants that Standard Trust

1   Bank PLC never wired $19,000,000 to UBS AG, that the latter bank never received it

2   and that plaintiff was dealing with an impostor.

3   **10.** Exh. 1 to 4.

4   Exh. 1.  I printed this Exh. 1 from the website of UBS AG, www.ubs.com

5   using the printer at Kern County Public Library, which is connected to the computer

6   that I was using on December 21, 2007.  Exh. 1 is a true and accurate copy of UBS in

7   a few figures.   This exhibit shows how solvent UBS AG, is and where to find

8   information about UBS AG which are all listed on the left margin. It also shows that

9   UBS AG in Switzerland is the center of operation and nerve control center.

10   Exh. 2. I printed this Exh. 2 from the website of UBS AG, www.ubs.com using

11   the printer at Kern County Public Library which is connected to the computer I was

12   using on December 5, 2007.  Exh. 2 is the linkage to Exh. 3 at the time I printed both

13   on December 5, 2006. When I mouse click the internet address of Exh. 3, the

14   Bakersfield Branch, it gives Exh. 2, telling me that the parent corporation of UBS

15   Financial Services, Bakersfield Branch is UBS AG and it gave me the clue that the

16   UBS FS branch at Bakersfield is a subsidiary of UBS AG.  Exh. 2, shows the map

17   location of UBS FS, Bakersfield, California branch, telephone number, name of the

18   Manager on December 5, 2006, date it was printed showing at the right bottom side

19   and from what file it was printed shown on the left bottom side.

20   Exh. 3  I printed this Exh. 3 from the website of UBS AG, www.ubs.com using

21   the printer at Kern County Public Library which is connected to the computer I was

22   using on December 5, 2007.  Exh. 3 gives information to the public that it is a leading

23   financial services and has banking services.  It also shows that UBS AG is the head

24   office of the UBS financial services.

25   Exh. 4. I printed this Exh. 3 from the website of UBS AG, www.ubs.com using

26   the printer at Kern County Public Library which is connected to the computer I was

1   using on December 5, 2007. Exh. 4 shows the position of Clive Standish as third in
2   rank from the President of the company UBS AG as Chief Financial Officer.

3        11. Exh. 5. This is a computer printout in my presence while waiting at the
4   counter, from the computer record of Washington Mutual Bank located at "K" Street,
5   Lancaster, California. Exh. 5 is a true and accurate print from the computer of
6   Washington Mutual Bank. Exh. 5 shows that it is a confirmation for an International
7   Wire transfer in US dollars. It shows that UBS AG is the beneficiary bank and the
8   beneficiary at the latter bank is Frontier Cons. Eng. Ltd. It shows payment from my
9   account of $51,000 to UBS AG thru the Bank of New York.

10       12. Exh. 14. This is a computer printout from the bank record of Washington
11  Mutual Bank while I waited at the counter. It is a correspondence from GM National
12  Funds transfer as shown on the top, to Julie R. Gray of Washington Mutual Bank on
13  the subject of '(UPDATE) TRACE REQUEST" with date and time of July 3, 2006,
14  9:20 am. It states that HSBC credited beneficiary 200 Hongkong dollars.

15       13. Exh. 17. This is a letter of demand made and signed by me on July 14,
16  2006 sent to UBS AG, thru Clive Standish by email to his address
17  clive_standish@yahoo.com. I demanded to pay back to me the $76,000 paid for Anti-
18  Drug/Terrorist Clearance Certificate and demanded to transfer to my account at
19  Washington Mutual Bank the 19 million U.S. dollars. The electronic signature
20  appearing at the bottom is my signature.

21       14. Exh. 18. This is a computer printout from the bank record of Washington
22  Mutual Bank which was given to me in person a few days after they received it on
23  August 25, 2006 from the Bank of New York. The Bank of New York said "we
24  confirm credit in MT103 wire to UBS AG, Switzerland for USD50,995.00
25  DD060614 UNDER FTS 0606148328500 ANNABELLE MORALES, 315 765 4432"

1        15. Exh. 22, 23, 24.

2        Exh. 22. This is a computer printout from the California Secretary of State,

3 corner Broadway and 4th Street, Downtown Los, Angeles on November 28, 2006. I

4 was waiting at the counter when it was printed. It was stamped by the Clerk "Secretary

5 of State, 2006 Nov. 28" Exh. 22 shows the address of the agent for service of process,

6 the address of the head office and the Chief Executive Officer at its office 800 Harbor

7 Blvd., Weehawken, New Jersey.

8        Exh. 23. I printed Exh. 23, a list of UBS AG'S business in California, from the

9 website of the California Secretary of State, California Business Portal. pulling out by

10 entering 'UBS' on the business search for corporations. I used the Kern County

11 Public Library's printer connected to the computer I was using to view Exh 23. It is a

12 true and accurate copy of the list of businesses in California of UBS AG from the

13 website of the California Secretary of State.

14        Exh. 24. I printed this Exh. 24 from the website of the California Secretary of

15 State using the printer at Kern County Public Library which is connected to the

16 computer I was using about Feb. 2, 2007.I printed Exh. 24, showing the address of the

17 agent for service of process for UBS Financial Services, Inc., I verified for sure if the

18 agent for service of process of UBS Financial Services, Inc. is still the same as of

19 November 28, 2006. Exh. 24 is a true and accurate copy from the above website I

20 stated.

21        16. Exh. 67. This is a letter of demand I made and signed with my electronic

22 printed signature on July 10, 2006 sent to UBS AG, thru Clive Standish to his email

23 address clive_standish@yahoo.com. I demanded UBS AG to pay back $76,000 paid

24 for Anti-Drug/Terrorist Clearance Certificate and to transfer immediately the 19

25 million dollars to my account at Washington Mutual Bank in California. The

26 electronic printed signature at the end is my signature.

1     20. Exh. 1 to 75.  Exhibit 1 to 75 are all parts of a data compilation in any form

2  compiled by plaintiff in preparation for trial of this case.   Plaintiff as shown above

3  have complied with the requisites of Rule 803(6) FRE regarding data compilaton in

4  anjy form.

5        Dated: _____ 12_____, 2007.          _Carl L. Jimen_

6                                             CARL L. JIMENA

7                                             Plaintiff, In Propia Persona

8        SUBSCRIBED AND SWORN to before me this 12th day of Nov 2007 at

9  the City of California Cty , California.

10

11                                        NOTARY PUBLIC

12        KEVIN JOHN COFFEY
          Commission # 1588325
13        Notary Public - California
          Kern County
14        My Comm. Expires Jun 18, 2009

1  CARL L. JIMENA
2  14774 Desert View Ave.
3  North Edwards, California 93523
4  Tel. 661-406-1616
5
6  Plaintiff, In Propia Persona
7

FILED

NOV 3 2007

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

8
9              UNITED STATES DISTRICT COURT
10      EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION
11          2500 Tulare St., Room 1501, Fresno, CA 93721
12
13  CARL L. JIMENA
14          Plaintiff,                    |  Civil Case No. 07CV367
                                          |
15  vs.                                   |  Place: Court Room 3
16                                        |
17                                        |  Hearing Date: Upon receipt
18  UBS AG (BANK, INC., ZURICH,           |  Time:
19  SWITZERLAND HEADQUARTERS);            |
20  et. al.,                              |  CERTIFICATE OF SERVICE
21          Defendants.            ;      |  BY MAIL
22  x-----------------------------------------x
23
24          I, Carl L. Jimena declare:
25          I am not less than 18 years of age and a party to the within case. My business
26  address is 14774 Desert View Ave., North Edwards, California. I served the 1)
27  Plaintiff's Request for Ruling on Offer of Evidence, 2) Offer of Evidence with Annex
28  A, Affidavit of Authentication, 3) Plaintiff's Affidavit Autenticating his Exhibits,
29  Annex A to offer of Evidence, by first class United States mail, postage pre-paid at
30  California City on  //-/2-, 2007 and addressed to the
31  defendant UBS AG's attorney as follows:
32          Atty. Jacob S. Kreilkamp, Munger Tolles & Olson
33          355 South Grand Avenue, 35th Floor
34          Los Angeles, California 90071-1560
35          I declare under penalty that the foregoing is true and correct.
36  Dated:  //-/2, 2007
37
38                                          Carl L. Jimena
39                                          Plaintiff, Pro Se

1