1  CARL L. JIMENA
2  14774 Desert View Ave.
3  North Edwards, California 93523
4  Tel. 661-406-1616

LODGED

JUN 15 2009

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

6  In Propia Persona, Counsel in his own behalf

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION
2500 Tulare St., Fresno, CA 93721

13  CARL L. JIMENA
14          Plaintiff,                          Civil Case No. 07CV367

15                                              Third Amended Complaint for
16  vs.                                         Fraud,  Sum of Money, Tort and
17                                              Damages

19  UBS AG  (ZURICH,                            Trial by Jury Demanded
20  SWITZERLAND HEADQUARTERS);
21  UBS AG (BANK, INC., MANHATTAN,
22  NEW YORK BRANCH);
23  UBS FINANCIAL SERVICES, INC.,
24  BAKERSFIELD, CALIFORNIA
25  BRANCH; AND UBS FINANCIAL
26  SERVICES, INC., WEEHAWKEN, NEW
27  JERSEY HEADQUARTERS;
28  CLIVE STANDISH,
29          Defendants.
30  x---------------------------------------------x

32          A LLEGATIONS COMMON TO ALL CAUSES OF ACTION

34          COMES NOW Plaintiff, in propia persona, and  before this Honorable

35  Court respectfully alleges:

36          1.  Parties.  Plaintiff is a U.S. Senior Citizen, 74 years old, a resident of

37  14774 Desert View Avenue, North Edwards, California.  Defendant UBS AG

1    (continued) A LLEGATIONS COMMON TO ALL CAUSES OF ACTION

2    [with addition of (Zurich, Switzerland Headquarters) is merely descriptive of this
3    defendant to indicate its address as distinguished from its branch in Manhattan,
4    New York doing banking business in the latter city. "Inc." is added since it's
5    parent Headquarters   is incorporated in Switzerland. In this complaint all
6    references to UBS AG (BANK INC.) stands for UBS AG as its counsel disclosed
7    that its true name is simply UBS AG] with address at Bahnhofstrasse 45, Zurich,
8    Switzerland CH-8001 and Gesneralle 3, CH 8001, Zurich, Switzerland , owns,
9    operates, controls all above-named branches, offices, agents, alter ego,
10   representative, substitute for presence of UBS AG, incorporated department and is
11   the parent company (a) of UBS AG (Bank, Inc.), Manhattan Branch/agent/alter
12   ego/representative/substitute for the presence of UBS AG, with address at 101
13   Park Avenue, Manhattan, New York 10178, (b) of defendant UBS Financial
14   Services Inc., Weehawken Branch/agent/registered broker/representative/alter
15   ego/incorporated department of/substitute for the presence of UBS AG, with
16   address at 1200 Harbor Boulevard, Weehawken, New Jersey 70786 (c) of UBS
17   Financial Services, Inc., Bakersfield Branch/local agent/registered broker/alter
18   ego/representative/substitute for the presence of /incorporated department of UBS
19   AG, with address at 10000 Stockdale Highway, 1 Riverwalk, Suite 270,
20   Bakersfield, California 93311.

21        Defendant Clive Standish is a resident and citizen of Zurich, Switzerland ,
22   was occupying the position of Chief Financial Officer, with former office address,
23   of UBS AG (Bank Inc.) at Bahnhofstrasse 45, Zurch, Switzerland, CH-8001 and
24   Gessneralle 3.CH8001, Zurich, Switzerland. During the entire period of the fund
25   transfer transaction in this case, plaintiff was dealing with Clive Standish acting
26   for himself and in behalf of UBS AG and as the Chief Financial Officer/
27   representative employee/manager/, agent of UBS AG of Zurich, Switzerland. At

2

1    (continued)  A LLEGATIONS COMMON TO ALL CAUSES OF ACTION

2

3    present, plaintiff has no exact information as to the current address of Clive

4    Standish after his separation from defendant UBS AG the date of separation also

5    unknown to plaintiff.

6    Defendant UBS AG Bank Inc. is incorporated in Switzerland. The

7    abbreviation "AG" in the name of defendant UBS AG Bank Inc. means

8    *aktiengesellschaft,*  a type of public-traded company in Switzerland and other

9    German-speaking countries.  (Source, Wilkepedia)  The abbreviation "AG"  is

10   notice to the whole world that UBS AG (Bank Inc.) is incorporated in Switzerland.

11   UBS AG( Bank Inc.) has its center of operation and nerve control center at

12   Bahnhofstrasse 45,  Zurich, Switzerland as shown by its website in the internet

13   attached as Exhibit 1 and Gessneralle 3, CH 8001, Zurich, Switzerland.  The latter

14   exhibit shows that the executive staff, board of directors  are located in the same

15   address where control comes from to all its Branches, agents, registered brokers,

16   alter ego, incorporated departments, representatives and 69,000 employees around

17   the world which includes the 550 branches in the United States having no less than

18   2,750 agents in the United States, with  one of those branches being UBS Financial

19   Services, Inc., Bakersfield, California Branch, local agent, local registered broker,

20   alter ego, representative of UBS AG.  The same website shows that the center of

21   operation is at the same address where banking, financing and wealth management

22   takes place. as it advertises.

23   UBS AG (Bank, Inc.)  101 Park Avenue, Manhattan, New York 10178 and

24   UBS Financial Services, Inc.  1200 Harbor Boulevard, Weehawken, New Jersey

25   07086 are both joined as defendants, being both agents, registered brokers, branch,

26   alter ego, incorporated department, substitute for the presence of, representative of

27   UBS AG of Zurich, Switzerland, to  facilitate collection and assist in obtaining

28   relief for the plaintiff and based on the fact that liability of the head office UBS

3

1    (continued) A LLEGATIONS COMMON TO ALL CAUSES OF ACTION

2

3    AG (Bank Inc.) is a liability of all its branches, <u>agents, alter ego, registered</u>
4    <u>brokers, representatives/, incorporated department</u> of UBS AG being part of the
5    same corporation and substitutes for the presence of UBS AG in the United States.
6    UBS Financial Services, Inc. Bakersfield Branch, with address at 10000 Stockdale
7    Highway, 1 Riverwalk, Suite 270, Bakersfield, California 93311is joined as
8    defendant <u>for being the branch local agent, registered broker, alter ego,</u>
9    <u>representative, incorporated depart</u>ment of UBS AG and substitutes for the
10   presence of UBS AG in Bakersfield, California.

11   Defendant UBS Financial Services <u>Inc.</u>, Weehawken, main office, with
12   address at 1200 Harbor Boulevard, Weehawken, New Jersey 70786 is the<u> agent,</u>
13   <u>alter ego, representative, incorporated department/registered broker of/substitute</u>
14   <u>for the presence o /[for] UBS AG of Zurich, Switzerland . UBS Financial Services</u>
15   <u>Inc. with all the 550 branches are c/ommissioned to perform the duty of "wealth</u>
16   <u>management" and is a "registered  broker" of/for UBS AG "offering securities,</u>
17   <u>trading, brokerage and related products and services acting as agent of UBS</u>
18   <u>AG.(Exhibit 3, second to the last paragraph attached to this 3rd amended</u>
19   <u>complaint and forms an integral part of this complaint) That UBS Financial</u>
20   <u>Services Inc. branches are actually performing those duties(more records of</u>
21   <u>performance of those duties are in the office of Jay Ericsson) is admitted and</u>
22   <u>confirmed by the Manager of the UBS FS, Bakersfield Branch, Jay Ericcson</u>
23   <u>stating that "The Bakersfield Office consists of five licensed brokers and a support</u>
24   <u>staff." "([Sworn] Declaration of Jay B. Ericsson attached to Doc. 11, District</u>
25   <u>Court. The Sworn Declaration of Tambra King, secretary officer of UBS FS Inc.</u>
26   <u>confirms the declaration of the Bakersfield Manager stating that "UBS FS</u>
27   <u>currently maintains approximately 550 branch office locations" throughout the</u>
28   <u>United States. (Sworn Dec. of Tambra King attached to Doc. 11) Using the</u>

4

1    (continued)  A LLEGATIONS COMMON TO ALL CAUSES OF ACTION

2    number of employees or agents of the UBS FS Branch in Bakersfield, California, a

3    smaller city,  which are five agents, multiplied by 550 branches in the U.S. gives a

4    minimum  total  of  2,750  employees  agents/registered  brokers.  This  is  a

5    conservative estimate considering there are many larger branches in major cities in

6    the  U.S.  UBS  Financial  Services  Inc.,  both  the  main  office  headquarters  at

7    Weehawken, New Jersey and the Bakersfield, California Branch functions as the

8    parent corporation's representative, which is UBS AG,  in that it performs services

9    that are sufficiently important to the parent corporation that if it did not have a

10   representative to perform them, the corporation's  own officials would undertake

11   to perform substantially similar services. UBS Financial Services Inc., performs

12   functions that the parent UBS AG would otherwise have to perform, so that UBS

13   Financial Services Inc., functions UBS Financial Services Inc.,as "merely the

14   incorporated department of its parent, UBS AG. Further, UBS Financial Services

15   Inc., substitutes for the presence of the parent". [UBS AG] in the forum

16   (California) One such agent in Bakersfield, California is . UBS Financial Services

17   Inc.,, Bakersfield, California Branc. actually performing the functions mentioned

18   above  now and before.

19        UBS Financial Services Inc. is an alter ego of UBS AG. UBS FS is a 100%

20   or wholly owned entity of UBS AG.  (Disclosure Statement of Defendant, Notice

21   of Removal, Doc. 1, p. 1, par. 2)  Both UBS AG and UBS FS are represented in

22   this case by one law firm. UBS Financial Services Inc. is a marketing conduit of

23   UBS AG since UBS Financial Services Inc. delivers the product of UBS AG into

24   the  stream  of  commerce  in  the  United  States,  California  and  in  Bakersfield,

25   California with the expectation that those products will be purchased by consumers

26   in the forum or the places mentioned above. The products for delivery by UBS

27   Financial Services Inc. in behalf of UBS AG are (1) wealth management which as

28   stated by UBS AG in Exhibit 3, attached to this complaint as an integral part

1     (continued)  A LLEGATIONS COMMON TO ALL CAUSES OF ACTION

2

3  hereof, second to the last paragraph is "Wealth Management services in the United

4  States are provided by UBS Financial Services Inc".; (2) UBS Financial Services

5  Inc. is a "registered broker/dealer" of/for UBS AG "offering securities, trading,

6  brokerage and related products and services." (Exhibit 3, second to last paragraph,

7  attached to this 3rd amended complaint and forms an integral part of this

8  complaint) Consumers in the United States, California and Bakersfield California

9  had purchased the above products of UBS AG as proven by records of UBS

10  Financial Services Inc., Bakersfield, California Branch, local agent, registered

11  broker, representative, alter ego, incorporated department of UBS AG, substitute

12  for the presence of UBS AG in Bakersfield, California.

13     The fact that UBS Financial Services, Inc. performs the function of

14  delivering the products of UBS AG as above sated is confirmed by the sworn

15  Declaration of Jay Ericcson, Manager that  "The Bakersfield Office consists of

16  five licensed brokers and a support staff. "([Sworn] Declaration of Jay B. Ericsson

17  attached to Doc. 11, District Court.)  The same function is distributed to all

18  branches in the U.S. as confirmed by the Sworn Declaration of Tambra King,

19  secretary officer of UBS FS Inc. stating that "UBS FS currently maintains

20  approximately 550 branch office locations" throughout the United States. (Sworn

21  Dec. of Tambra King attached to Doc. 11)  Taking the Bakersfield Branch as an

22  example with five stockbrokers multiplied by 550 branch offices in the U.S. would

23  give 2,750 employees.  This is the least number that shows the extensiveness of the

24  marketing strength of UBS FS doing "wealth management" and as ".registered

25  broker/dealer offering securities, trading, brokerage, and related products and

26  services" throughout the U.S.  The preceding facts shows the intensiveness and

27  extensiveness of the marketing strength of UBS FS in delivering the products of

28  UBS AG into the stream of commerce in the entire U.S. with the expectation that

1    (continued) A LLEGATIONS COMMON TO ALL CAUSES OF ACTION

2

3    they will be purchased by consumers,  more particularly in the forum. Those
4    products had been in fact purchased by consumers.

5           UBS Financial Services Inc. marketing force organization is set up in the
6    internet and can be seen by tapping or mouse clicking the word "Location" in
7    Exhibit 1 which will give a list of States where UBS Financial Services, Inc. has
8    offices/agents/registered brokers.  By tapping a particular State, it gives a list of
9    Cities.  Tapping further a City gives a list of branch/agents/registered brokers
10   addresses within the city. At the time plaintiff tapped Bakersfield, California in the
11   list which was before filing this case in the Superior Court of California, there
12   were apparently four branch offices/local agencies with  Alan Larsen and Jay
13   Ericsson holding different office agencies at different locations. Mr. Jay Ericsson
14   was with Paine Weber at that time.  Apparently, there is now only one branch
15   agency instead of four with Jay Ericsson and Mr. Larsen being joined in one
16   branch agency at the 1 Riverwalk, Bakersfield, California address, then Mr. Larsen
17   was replaced by Mr. Ericsson as Manager.  Plaintff believes all of these
18   reorganizations were apparently on direct orders from UBS AG from Zurich,
19   Switzerland in anticipation of preparing their defense.

20          UBS Financial Services Inc. being a marketing conduit of UBS AG is
21   enough to show that there is such unity of interest and ownership that their
22   separate personalities no longer exist and that failure to disregard their separate
23   entities would result in fraud or injustice since UBS AG would be able to escape
24   liability for the payment of the 19 million dollars fund transfer as well as its
25   obligation to pay back plaintiff's $76,000 obtained by fraud  which includes the
26   $25,000 paid in behalf of the plaintiff by a third person.

27          This Court in Docket 124, page 15, paragraph 1 ordered plaintiff to allege
28   more facts of alter ego. Subject to plaintiff's objection on the record that

7

1      (continued) A LLEGATIONS COMMON TO ALL CAUSES OF ACTION

2

3      allegations of marketing conduit is already sufficient and by way of compliance to

4      the order of this Court, plaintiff according to his information and belief alleges

5      that UBS Financial Services Inc .is an alter ego of UBS AG due to the existence of

6      any or some of the following facts to be proven by discovery: UBS AG dictates

7      every facet of UBS Financial Services Inc. business from broad policy decisions to

8      routine matters of day to day operation including the fact that it is financially

9      dependent on UBS AG. The separateness between UBS AG and UBS Financial

10      Services Inc. had ceased since the latter is an agent of the former, there is

11      commingling of funds and other assets, UBS AG control the finances of UBS

12      Financial Services Inc., failure to segregate funds of the separate entities,

13      unauthorized diversion of funds or assets to other than corporate uses, treatment by

14      an individual of the assets of the corporation as his own, failure to obtain authority

15      to issue stock or to subscribe to or issue the same, holding out of an individual that

16      he is personally liable for the debts of the corporation, the failure to maintain

17      minutes or adequate corporate records, confusion of the records of the separate

18      entities, identical equitable ownership in the two entities, identification of the

19      equitable owners thereof with the domination and control of the two entities,

20      identification of the directors and officers of the two entities in the responsible

21      supervision and management, sole ownership of all of the stock in a corporation by

22      one individual or the members of a family, the use of the same office or business

23      location, the employment of the same employees and/or attorney, the use of a

24      corporation as a mere shell, instrumentality or conduit for a single venture or the

25      business of an individual or another corporation, the concealment and

26      misrepresentation of the identity of the responsible ownership, management and

27      financial interest, or concealment of personal business activities, the disregard of

28      legal formalities and the failure to maintain arms-length relationships among

8

1   (continued) ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

2

3   related entities, the use of the corporate entity to   procure labor, services or

4   merchandise for another person or entity, the diversion of assets from a

5   corporation by or to a stockholder or other person or entity, to the detriment of

6   creditors, or the manipulation of assets and liabilities between entities so as to

7   concentrate  the assets in one and the liabilities in another, the contracting with

8   another with  intent to avoid performance by use of a corporate entity as a shield

9   against personal liability or the use of a corporation as a subterfuge of illegal

10  transactions, the formation and use of  a corporation to transfer to it the existing

11  liability of another person or entity.

12       UBS Financial Services, Inc. defends that it is a subsidiary separate from

13  UBS AG with no liability. Even following this wrong defense of  UBS Financial

14  Services, Inc., a subsidiary is liable for the fraud of the parent corporation, separate

15  from the theory of alter ego and agency. The allegation of facts of fraud in the first

16  cause of action connected with the second cause of action, the third and fourth of

17  cause of action are likewise the liability of UBS Financial Services, Inc. on the

18  basis of fraud of the parent, UBS AG. The facts alleged in this complaint show that

19  UBS AG has control (or some control is even sufficient)  over UBS Financial

20  Services, Inc. This control coupled with the fraud alleged in the first cause of

21  action is sufficient to make UBS Financial Services, Inc liable for the fraud of the

22  parent UBS AG.  UBS Financial Services, Inc. liability for fraud of UBS AG can

23  be enforced against UBS Financial Services, Inc.  by piercing its veil, (or reverse

24  piercing the veil) the same remedy available in pure alter ego relationship..

25       UBS Financial Services, Inc. 10000 Stockdale Highway, I Riverwalk, Suite

26  270, Bakersfield, California 93311 is joined as defendant for doing business as

27  local agent/registered broker of/for UBS AG, alter ego, representative,

28  incorporated department, doing business in behalf of or together with /its parent

9

1   (continued) A LLEGATIONS COMMON TO ALL CAUSES OF ACTION

2

3   corporation UBS AG Bank Inc. or substitutes for the presence in Bakersfield,

4   California, of UBS AG headquartered in the above address at Zurich, Switzerland.

5   2. Summons and second amended complaint were already served upon

6   defendants UBS AG and UBS Financial Services, Inc. on their addresses below

7   (and hence this Court already acquired jurisdiction over them):

8   a)   UBS AG (Bank Inc.,) Zurich, Switzerland, Headquarters,

9   Bahnhofstrasse 45, Zurich, Switzerland CH-8001, represented by the President,

10  b)   UBS AG (Bank, Inc.), Manhattan, N.Y. Branch, 101 Park Avenue,

11  Manhattan, New York 10178; represemted by the President/General Manager, c/o

12  Legal Department, and as Branch, agent, representative, alter ego, incorporated

13  department of UBS AG of Zurich, Switzerland, substitute for the presence in

14  Manhattan of UBS AG Headquarters, Zurich, Switzerland.

15  c)   UBS Financial Services, Inc., Weehawken New Jersey, main office/

16  Branch/agent/registered broker of/for/, representative, substitute for the presence

17  of, incorporated department of UBS AG, 1200 Harbor Boulevard, 10th Floor,

18  Weehawken, New Jersey, 07086. represented by the President/General Manager,

19  c/o Legal Department, Edmund Shea, agent for process service;

20  d) Clive Standish, former Chief Financial Officer, UBS AG (Bank , Inc.)

21  last known address:  Bahnhofstrasse 45, Zurich, Switzerland, CH-8001.  Plaintiff

22  is currently researching for current address of Clive Standish.

23  e) UBS Financial Services Inc., (Bakersfield, California Branch/local

24  agent/representative/incorporated department/alter ego/local registered broker

25  of/for /substitute for the presence of UBS AG) c/o Manager 10000 Stockdale

26  Highway, 1 Riverwalk, Suite 270, Bakersfield, California 93311.

27  3. Subject matter: This case involves payment of $19,115,000 plus

28  damages. (Payment order for $19,000,000 ,Annex 15; its acceptance, Annex 16)

1    (continued) A LLEGATIONS COMMON TO ALL CAUSES OF ACTION

2

3    4. Personal or *in personam* jurisdiction:

4    a) General jurisdiction:.

5    Defendant UBS Financial Services Inc. with address at 10000 Stockdale

6  Highway, 1 Riverwalk, Suite 270, Bakersfield, California, is a local

7  branch/agent/alter ego/registered broker/substitute for the presence of/

8  representative of UBS AG Bank Inc. headquartered at Zurich, Switzerland as

9  exhibited (Exhibit 2) by its internet advertisement showing it location in the map,

10  financial and other type of services in the former's website,

11  www.ubs.com/financialservicesInc. When the latter website is mouse clicked, the

12  linkage to UBS AG Bank appears showing that UBS AG Bank of Switzerland is

13  the parent company of UBS Financial Services., Bakersfield Branch. (Annex 3)

14  and not UBS AMERICAS INC. which is not involved at all in the control and

15  operation of UBS Financial Services, Inc. The latter office has been doing

16  financial services in Bakersfield, California as further shown by its appearance in

17  the Southern Pacific Bell Company's directory telephone listing for a long time.

18  UBS Financial Service, Bakersfield Branch, California, alter ego/agent/registered

19  broker/substitute for the presence of UBS AG, has been doing business in behalf

20  of UBS AG, with the people of Bakersfield on a permanent, continuous,

21  systematic basis subjecting it and its parent company UBS AG Bank to the general

22  jurisdiction of this Court. (International Shoe Company v. Washington 326 US

23  310, 316, 317 (1945) citing St. Clair v. Cox 106 US 350, 355 (1882); same,

24  Perkins v. Benguet Mining Co. (1952) 392 U.S. 437, 445, 446) so as to make it

25  consistent with traditional notions of fair play and substantial justice to subject the

26  defendant corporations as branches, agents, representative, registered brokers/alter

27  ego, /substitute for the presence of UBS AG/incorporated department of UBS AG,

28  to the jurisdiction of the forum, even where the cause of action is unrelated to the

1      (continued) A LLEGATIONS COMMON TO ALL CAUSES OF ACTION

2

3    contacts. (Calvert v. Huckins [E.D. Cal. 1995) 875 F Supp 674, 677; Heliocopteros

4    Nacionales de Columbia  v. Hall (1984) 466 U.S. 408, 414, footnote 9)

5        Defendant Clive Standish <u>was</u> a high ranking officer of the defendant UBS

6    AG (Bank Inc.) occupying the position of Chief Financial Officer as shown by the

7    attached Exhibit  4, showing his rank from the President of the bank.  As a <u>former</u>

8    officer of the defendant UBS AG (Bank Inc.), he is subject to the general

9    jurisdiction of this Court together with his former employer defendant UBS AG

10    (Bank Inc.).

11        b.. California's Long Arm Statute. §410.10 of California Code of

12    Civil Procedure provides: "A court of this state may exercise jurisdiction on any

13    basis not inconsistent with the constitution of this state and of the United States."

14    The US Supreme Court upheld California's long arm statute in the  case of Calder

15    v. Jones 465 U.S. 783,, 991 (1984); followed and applied by California Court of

16    Appeals in Milwaukee v. Superior Court (2003) 112 Cal App 4th 423, 437)

17    holding that out of state intentional[1] (please see footnote 1 below) tort conduct

18    with injury or harm taking effect in California are subject to the jurisdiction of

19    California Courts. Here,  as alleged in the third  cause of action, the intentional

20    fraudulent demand and intentional fraudulent taking of $51,000 took place in

21    California when plaintiff paid by wire transfer from California thru Washington

22    Mutual Bank of California to UBS AG BANK, Zurich, Switzerland.(Exhibit 5,

23    attached hereof as an integral part hereof) Wire Transfer) and by the intentional

24    fraudulent conduct of the defendants alleged under the First Cause of Action and

---

[1]  "Jurisdiction over petitioners in California is proper because of their intended conduct  in Florida allegedly calculated to cause injury to respondent in California" (Calder v. Jones, supra, at p. 791) Petitioners were served with process by registered mail in Florida under §410.10 of California Code of Civil Procedure, California Long Arm Statute. Petitioner by special appearance moved to quash the service of process for lack of jurisdiction. (Calder v. Jones, supra, at p. 783)The U.S. Supreme Court upheld the service and California's Long Arm Statute.

1    (continued) A LLEGATIONS COMMON TO ALL CAUSES OF ACTION

2

3    Third Cause of Action , intended to harm or injure the plaintiff, did in fact cause
4    the harm or injury to him by his worry in losing $51,000, headache sleepless
5    nights, lack of appetite , mental anguish, emotional distress, humiliation, other
6    psychological damages, caused plaintiff's blood pressure to rise because plaintiff
7    has high blood pressure thereby aggravating it. . Clive Standish and UBS AG's
8    breach of the contract "Exhibits 15 and 16 by demanding  payment of non-existing
9    Anti Drug/Terrorist Cledarnace fee which was paid by the plaintiff not knowing at
10    the time of payment that it is non-existing, then later on both Clive Standish and
11    UBS AG followed with another demand for the non-existing marginal fluctuation
12    deficit on the alleged shortfall of 19 million dollars subject of the fund transfer,
13    both conditions not found on the payment order, constituted breaches of the
14    contract Exhibit 15 and 16. These breaches characterized as the tort of fraud
15    automatically entitled plaintiff to recover damages for mental suffering or mental
16    distress, the prevailing law in California. .

17    UBS AG Bank is sued in its direct/primary responsibility or liability and
18    subsidiary liability for the fraudulent actions of Clive Standish ; direct liability is
19    based on the fact that decisions of Clive Standish is referred to the Board of
20    Directors and the latter issues the decision on what is to be done in this transaction
21    (Exhibit  6, Standish email of 7-19-06; Exhibit 7, Standish email of 7-14-06;
22    Exhibit 8, Standish email of 6-27-06) and also for the reason that every person
23    connected with the fraud is liable for the full amount of the damages (Crawford v.
24    Nastos (1960)  182 Cal App. 2d 659, 665 97 A.L.R. 2D 840; Swasey v.
25    L'Estanache (1936) 17 Cal App 2d 713, 718; Conlin v. Studebaker Brothers 175
26    Cal 395; [165 P 1000]; and furthermore, the Board of Directors issues the decision
27    on what is to be done with the subject transaction; subsidiary liability of the
28    defendants is based on *respondeat superior* (John V v. Chaparral Treatment Center

1    (continued) A LLEGATIONS COMMON TO ALL CAUSES OF ACTION

2

3    Inc. 101 Cal App 4th 565, 575 (2002) since Clive Standish was acting within the

4    scope of his employment and defendants UBS AG BANK placed Clive Standish in

5    a position to defraud and plaintiff relied on Clive Standish misrepresentations

6    enumerated in attachment FR-2a and FR-2b, First Cause of Action. . UBS AG

7    BANK is liable even though  Clive Standish was acting for his own purpose.

8    (Alhino    v.    Starr    112    3d    158,    174    (1980).    Clive    Standish    as

9    employee/agent/representative/Chief Financial Officer of UBS AG knowingly

10   participated in a fraudulent transaction as hereinafter alleged making him equally

11   responsible with his principal, employer, UBS AG.

12       Defendant  Clive  Standish  was  a  customer  service  employee/Chief

13   Financial  Officer  of  defendant  UBS  AG  BANK  in  its  office  located  at

14   Bahnhofstrasse 45,, Zurich, Switzerland and Gessneralle 3, CH-8001, Zurich,

15   Switzerland, and is sued in his personal capacity and representative capacity as a

16   former employee of UBS AG BANK based on facts alleged hereunder; jurisdiction

17   over him is based on facts stated hereunder;

18       5.  Jurisdiction in rem.  All assets of UBS AG Bank headquartered in

19   Zurich, Switzerland and its branches found in the City of Bakersfield, in the State

20   of California, in the entire United States are liable for the enforcement of the

21   judgment of this Court.

22       6. Claims and counterclaims:.  Based on the evidence of this case and the

23   applicable law this Court may offset the claims of the parties against each other

24   and inasmuch as defendant's claim is a tiny drop in the  bucket which is not a legal

25   reason to withhold the 19 million dollars from the plaintiff, judgment be rendered

26   in favor of the plaintiff by ordering the defendants immediately to pay the  balance

27   to plaintiff's account with Washington Mutual Bank under the account number in

28   prayer no. 2 below.

1    (continued) A LLEGATIONS COMMON TO ALL CAUSES OF ACTION

2

3       7.   Incorporation by reference as integral part of this Third Amended

4  Complait.  In view of the (a) big volume of exhibits, Exhibit 1 to 75 produced by

5  the plaintiff on initial disclosure already submitted to the Court in Docket 49

6  attached to plaintiff's Affidavit styled  "Affidavit in Support of Motion for Entry

7  of Default and Default Judgment by the Court", (b) with this third amended

8  complaint making references to those exhibits and the complete detailed facts are

9  found on those exhibits, (c) to avoid repetitious filing of the same exhibits, (d)

10  with defendants UBS AG and UBS Financial Services, Inc. already furnished with

11  a copy of Exhibits 1 to 75 including the Affidavit to which they were attached

12  marked below as Exhibit I (roman numeral I), (e) for the sake of judicial economy,

13  plaintiff hereby incorporates by reference as an integral part of this Third

14  Amended Complaint, Exhibits 1 to 75 attached to plaintiff's Affidavit styled

15  "Affidavit in Support of Motion for Entry of Default and Default Judgment by the

16  Court" filed in Docket 49   including the latter Affidavit itself and hereby marks

17  the same Affidavit as Exhibit I (number one in Roman Numerals).with the

18  following correction in the same Affidavit, Exhibit I:  (a)  on page 4, line 9, the

19  phrase "ending on May 5, 2006" is changed to "ending on Midnight of May 4,

20  2006 with the following day May 5, 2006 as the execution date." (b)on  page 5,

21  line 23-24, the phrase  "which is the end of the sleep period" is changed to "which

22  is the execution date." (c) on page 6, line 25 the date "May 5, 2006" is changed to

23  "Midnight of May 4, 2006". Plaintiff likewise incorporates by reference and forms

24  an integral part of this Third Amended Complaint all the Annexes of the Second

25  Amended Complaint, Annex 1 to 21, which was remarked as Exhibits 1 to 21, a

26  copy of each of which was already received by defendants UBS AG (Zurcih,

27  Switzerland Headquarters and Manhattan Branch)  and UBS Financial Services

28  (Weehawken, New Jersey main office/Agent and Bakersfield Branch/Agent and

Clive Standish. <u>Exhibit 76, Court Record of complaints against UBS AG  attached</u>

<u>hereof is incorporated by reference and forms an integral part hereof.</u>


____First___                    CAUSE OF ACTION ----Fraud/Conversion   Page_1__
    (number)
    Attachment to   x     Complaint          Cross-Complaint

*(Use a separate cause of action form for each cause of action)*
<u>First element of fraud - misrepresentation (false representation, concealment, or</u>
<u>non-disclosure.)</u>


      FR-1  Plaintiff (name):  Carl L. Jimena

            alleges that defendant (name): Clive Standish, UBS AG Bank and all

            defendants named in the caption of the complaint

            on or about (date): between May 6, 2006 and up to the filing of this

            complaint and sometime thereafter, defrauded plaintiff as follows:

      FR-2   x     Intentional or Negligent Misrepresentation
            a. Defendant made representations of material fact

                    x     as stated in Attachment FR2a         as follows:

                      FR-2a  and  FR-2b  combined


             b. These representations were in fact false.  The truth was

                    x     as stated in attachment FR-2b         as follows:


<u>Second element of fraud - knowledge of falsity (scienter)</u>


             ___First___CAUSE OF ACTION ----Fraud/Conversion


            c.  When defendant made the representations,

                x     defendant knew they were false or

                 x     defendant had no reasonable ground for believing the

                    representations were true.

1   ___First___ CAUSE OF ACTION ----Fraud/Conversion
2

3   Plaintiff ff is of the belief that one of the purposes for charging Anti-

4   Drug/Terrorist Clearance Certificate of $76,000 is to eliminate plaintiff from this

5   transaction because if plaintiff fails to pay, UBS AG will keep/convert the 19

6   million dollars as a gain in this transaction for itself; and if plaintiff is able to pay

7   the $76,000, as he did pay induced with promises, threats and intimidation, (threat

8   was to cancel the transaction if $76,000 is not paid) unaware that the Anti-

9   Drug/Terrorist Clearance Certificate fee is non-existing , UBS AG intends again

10  concealing from the plaintiff, to charge for marginal fluctuation deficit, as it did

11  conceal and charge it, and surely, plaintiff will not be able to pay the accumulated

12  marginal fluctuation deficit or plaintiff will refuse to pay it since UBS AG failed

13  to comply with its promise to deliver the 19 million dollars upon payment of

14  $76,000, hence, would accomplish its intention to convert the 19 million dollars

15  for itself  This shows UBS AG' intention to do one fraud after the other to convert

16  the 19 million dollars for itself manifesting malice. This intention is also shown by

17  UBS AG keeping the 19 million up to the present time for itself inconsistent with

18  or in derogation of the plaintiff's rights even after Clive Standish was separated

19  from UBS AG. Plaintiff is of the belief that UBS AG's behavior is motivated by

20  converting the 19 million dollars to itself and hence, knew that its charges were

21  false and had the intent to defraud.

22

23  Third element of fraud - intent to defraud, i.e., to induce reliance
24

25          d.  Defendant made the representations with the intent to

26              defraud and induce plaintiff to act as described in item

27              FR-5.  At the time plaintiff acted, plaintiff did not

28              know  the representations were false and believed they

29

17

___First___ CAUSE OF ACTION ----Fraud/Conversion

-                          were true.  Plaintiff acted in justifiable reliance upon
                            the truth of the representations.

FR-3    x    Concealment

          a. Defendant concealed or suppressed material facts

                    x    as stated in Attachment FR-3a        as follows:

          b. Defendant concealed or suppressed material facts

                    x    defendant was bound to disclose

                    by telling other facts to mislead plaintiff and prevent plaintiff

                    from discovering the concealed or suppressed facts

          c. Defendant concealed or suppressed these facts with intent to

                    defraud and induce plaintiff to act as described in item FR-5.

                    At the time plaintiff acted plaintiff was unaware of the

                    concealed or suppressed facts and would not have taken the

                    action if plaintiff had known the facts.


FR-4   x    Promise without intent to perform

          a. Defendant made a promise about a material matter without any

                    intention of performing it   x    as stated in Attachment FR-4a

                            as follows:


          b. Defendant's promise without any intention of performance was

                    made with the intent to defraud and induce plaintiff to rely

                    upon it and to act as described in item FR-5.  At the time

                    plaintiff acted, plaintiff was unaware of defendant's intention

                    not to perform the promise.  Plaintiff acted in justifiable

                    reliance upon the promise.

___First___ CAUSE OF ACTION ----Fraud/Conversion

FR-5   In justifiable reliance upon defendant's conduct, plaintiff was induced to act

      x    as stated in Attachment FR-5      as follows:

FR-6   Because of plaintiff's reliance upon defendant's conduct, plaintiff has been

damaged   x     as stated in Attachment FR-6      as follows:

FR-7   Constructive Fraud on the 19 million dollars,: [The elements of a cause of

action for breach of fiduciary duty are: (1) the existence of a fiduciary duty or

fiduciary relationship{Amtower v. Photon Dynamics, Inc. 158 Cal. App. 4th 1582,

71 Cal. Rptr. 3d (6th Dist. 2008), as modified, (Feb. 15, 2008, review denied (Apr.

9, 2008) (2) breach of fiduciary duty, and (3) resulting damage. (Pellegrini v.

Weiss, 165 Cal. App. 4th 515, 81 Cal. Rptr. 3d 387 (6th Dist. 2008)] Plaintiff

alleges that the fiduciary duty in this case arises from the special deposit, the

account coded escrow for 96 hours and from California Civil Code, § 2223,

discussed together below.  Plaintiff incorporates by reference to form an integral

part of this FR-7  and as legal basis his allegations in the second cause of action

among others in paragraph 1, 1(e) of the second cause of action, definition of

payment order. Plaintiff alleges that Exhibit 15 is subject to no condition except as

to 96 obsolescence hours accepted by UBS AG in Exhibit 16.  Plaintiff alleges it

is undisputed that under Exhibit 15 and 16 UBS AG became trustee of the funds

transferred thru credit remittance by Standard Trust Bank PLC  accepted and

placed by UBS AG in an account coded escrow since it  was deposited for a

special purpose,  for delivery to the plaintiff as beneficiary or for the issuance of a

payment order on the execution date May 5, 2006 to Washington Mutual Bank,

now Chase, to be credited to plaintiffs account at the latter bank or otherwise for

the special purpose of paying plaintiff's claim as beneficiary. UBS AG is obligated

to issue a payment order under the contract Exhibit 15 and 16. UBS AG failed to

execute the payment order on the execution date May 5, 2006 or otherwise deliver

19

1        ___First___ CAUSE OF ACTION ----Fraud/Conversion

2

3    the funds to the plaintiff. This execution date appears on the right bottom side of

4    Exhibit 16, to the left of which is a rectangle check box bearing an actual

5    checkmark followed by the words "Advice and Pay" which is an instruction that

6    UBS AG pay, issue and transmit its payment order on May 5, 2006 with an advice

7    or notice to Washington Mutual Bank, now Chase, (which includes notice to

8    plaintiff) to credit the 19 million dollars to the account of the plaintiff beneficiary.

9    Beginning May 6, 2006 the day after the breach of the contract Exhibit 15 and 16,

10   UBS AG is an illegal, wrongful or unauthorized holder under Exhibit 15 and 16,

11   of the 19 million dollars in escrow for 96 hours only, a special deposit wherein

12   UBS AG is the trustee and plaintiff is beneficiary creating a fiduciary relationship

13   and has a continuing fiduciary duty to deliver the funds (by issuing a payment

14   order either by telegraphic or computer means) to the plaintiff beginning May 6,

15   2006 the day after UBS AG failed to execute the payment order on May 5, 2006 to

16   the present time and until it is actually delivered. Beginning May 6, 2006 UBS AG

17   up to now, UBS AG is wrongfully detaining the 19 million dollars placed on

18   escrow in Exhibit 16 inconsistent with the right of the plaintiff beneficiary to be

19   paid under Exhibit 15 and 16 and owner of the funds as beneficiary under the

20   contract Exhibit 21. UBS AG under the contract Exhibit 15 and 16 had only 96

21   hours to hold the 19 million dollars on account coded escrow. Beyond 96 hours

22   which ended in this case on midnight of May 4, 2006, UBS AG, is a

23   wrongful/unauthorized holder of the account coded escrow. (California Civil

24   Code, § 2223: One who wrongfully detains a thing is an involuntary trustee

25   thereof, for the benefit of the owner.) The latter section of California Civil Code

26   imposes a constructive trust on the account coded escrow for illegally detaining it

27   and UBS AG became an involuntary trustee for the benefit of the plaintiff, a

28   fiduciary duty imposed by California law from May 6, 2006 until it is delivered.

20

1            __ First___ CAUSE OF ACTION ----Fraud/Conversion

2

3   UBS AG is continuously committing day by day a separate breach of trust and

4   violation of confidence under the constructive trust imposed by the California

5   Civil Code on the account coded escrow in Exhibit 16, the 19 million dollars,

6   making UBS AG a recidivist of constructive fraud since each day is a separate

7   breach of trust and confidence entitling plaintiff to triple punitive damages and

8   even more and also entitles plaintiff to triple legal rate of interest. The continuing

9   failure of UBS AG, as it did in fact failed, to deliver the funds to the plaintiff

10   beginning May 6, 2006 up to the present time is a breach of confidence and trust

11   on a daily basis constituting multiple constructive fraud. UBS AG had only one

12   day, May 5, 2006 to execute the payment order by issuing its payment order or

13   deliver the 19 million dollar by expeditious means . UBS AG under the contract

14   Exhibit 15 and 16 does not have 365 days a year to execute the payment order or

15   otherwise deliver the funds. UBS AG had only 96 hours authority to hold the 19

16   million dollars under the contract Exhibit 15 and 16 and beyond 96 hours, UBS

17   AG is an illegal, wrongful holder of the funds. Further, the escrow in Exhibit 16 is

18   a special deposit where UBS AG is the trustee and plaintiff is the beneficiary, a

19   recognized fiduciary relation creating a fiduciary duty so that when UBS AG failed

20   to deliver the 19 million dollars, UBS AG is in breach of trust and confidence

21   constituting constructive fraud. The resulting damage to plaintiff is he is deprived

22   of the 19 million dollars to the present time for distribution to religious and

23   charitable institutions.

24       Furthermore, plaintiff alleges that UBS AG knowingly undertook to act in

25   behalf of Standard Trust Bank PLC for the benefit of the plaintiff beneficiary to

26   deliver the 19 million dollars (issue a payment order to Washington Mutual Bank,

27   now Chase, for credit of the 19 million dollars to the account of the plaintiff) to

1

__First__   CAUSE OF ACTION ----Fraud/Conversion

2

3   default and default judgment, par. 21 (c) pages. 18-19)  Both Clive Standish and

4   UBS AG failed to transfer the 19 million dollars after inducing plaintiff with many

5   promises that it will be transferred after payment of the balance of $51,000.

6   Plaintiff paid the $51,000 for a non-existing fee, unaware at the time of payment

7   that it is non-existing.  This is a "breach of duty".  They both "mislead" plaintiff to

8   pay $51,000 for a non-existing fee and mislead plaintiff that the 19 million dollars

9   will be delivered to plaintiff's account at Washington Mutual Bank, now Chase

10  after the $51,000 is paid.   A fiduciary relationship exist between plaintiff

11  beneficiary and defendant UBS AG as trustee (and Clive Standish) created by the

12  escrow deposit which is a special deposit. and hence, imposed a fiduciary duty on

13  UBS AG to make a truthful, honest disclosure and comply with its promise to

14  deliver the 19 million dollars[2]. Above all, plaintiff made a demand for the return of

15  the $76,000 (Exhibit 17) and Clive Standish and UBS AG refused to return the

16  $76,000 (Exhibits 54, 55), UBS AG received the $51,000 on June 15, 2006

17  (Exhibit 18) for payment by plaintiff for the non-existing Anti-Drug/Terrorist

18  Clearance Certificate fee. Clive Standish and UBS AG knew the latter fee is non-

19  existing since within a reasonable time after payment of the $51,000 and even up

20  to the present time they had not sent an Anti-Drug/Terrorist Clearance Certificate

21  to the plaintiff, the best proof of its non-existence.  Under California Civil Code

22

23

---

[2] The combination of the preceding three factual elements falls squarely under §1573 of the California Civil Code declaring it constructive fraud under paragraph 1 of the latter section.. Paragraph 1 of §1573 "involves the overreaching of a beneficiary by a trustee..." Here the beneficiary is the plaintiff and the trustee is UBS AG. (Witkin, Summary of California Law, Contracts, 10th Ed. [2005] p.321) In the case of Crocker-Anglo Nat. bank v. Kuchman 224 C.A. 2d 490, 494, (1964)  the Court interpreted §1573 as follows:

> By the clear language of section 1573 there must be a "breach of duty" to give rise to constructive fraud. The duty must be one created by a confidential relationsip, for Section 1583 of the Civil Code states 'the rule applicable in   confidential relations.']

First___ CAUSE OF ACTION ----Fraud/Conversion

§2224[3]  UBS AG obtained and gained  plaintiff's $51,000 by fraud and violation of a trust as alleged in FR-2a and FR-2b, First Cause of Action ,making UBS AG an involuntary trustee of the $51,000 for the plaintiff from the moment UBS AG received it and UBS AG cannot dispose of it by sending it to Hongkong as he claimed it was sent to Hongkong HSBC. UBS AG is obligated to return the $51,000 to plaintiff since upon receipt of it, UBS AG was an involuntary trustee for the benefit of the plaintiff upon receipt of the $51,000. Thus UBS AG is liable for refund of $76,000 with triple punitive damages equivalent to $228,000 ($76,000 x 3) since there is multiple fraud as alleged in FR-2a and 2b above. UBS AG is further liable for triple legal rate of interest under California Civil Code§3289(b) governing interest on fraud in relation to §3288 of the same code providing for the legal rate of interest at 10% per annum.(multiplied by 3)

FR-9  Conversion.  ["Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." (Weiss v. Marcus (1975) 51 Cal.App.3d 590, 599 [124 Cal.Rptr. 297].) "The elements of a conversion cause of action are (1) plaintiffs' ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages." (Baldwin v. Marina City Properties, Inc. (1978) 79 Cal.App.3d 393, 410 [145 Cal.Rptr. 406].) (Italics added.) It is clear that legal title to property is not a requisite to maintain an action for damages in conversion. To mandate a conversion action "it is not essential that plaintiff shall be the absolute owner of the property converted but she must show that she was entitled to immediate possession at the time of conversion." (Bastanchury v. Times-Mirror Co. (1945) 68 Cal.App.2d 217, 236 [156 P.2d 488].)

"While it is true that money cannot be the subject of an action for conversion unless a specific sum capable of identification is involved [citation], it is not

---

[3] California Civil Code, § 2224.  One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.

1          ___First___ CAUSE OF ACTION ----Fraud/Conversion

2

3    necessary that each coin or bill be earmarked. " (Haigler v. Donnelly (1941) 18

4    Cal.2d 674, 681 [117 P.2d 331].)   cited by Fischer v. Machado (1996) 50

5    Cal.App.4th 1069 , 58 Cal.Rptr.2d 213 (3rd Dist, 1996)]

6

7          (a) Plaintiff alleges that on April 28, 2006, he is the owner and has the right

8    to the possession of the 19 million dollars funds placed in account coded escrow in

9    Exhibit 16 being the named beneficiary both in Exhibit 15 and 16 and the true

10   owner of the funds as its beneficiary under the contract Exhibit 21.  The funds on

11   the account coded escrow is specifically identified by bar codes for a specific sum

12   of 19 million dollars  in Exhibit 16 or otherwise capable of specific identification

13   under the same account coded escrow as shown by the bar codes at the bottom of

14   Exhibit 16.

15          (b)  On May 5, 2006, the date of execution of the payment order in Exhibit

16   15, UBS AG failed to deliver the funds in account coded escrow by issuing a

17   payment order to Washington Mutual Bank, now Chase, for credit to the account

18   of plaintiff in the latter bank supported by the funds in UBS AG's above account

19   coded escrow.  Beginning May 6, 2006, and up to the present time UBS AG

20   continued to hold on to the above funds in account coded escrow wrongfully

21   detaining it to the exclusion of the plaintiff or inconsistent with or in denial of the

22   rights of plaintiff, preventing plaintiff to exercise dominion over the funds in order

23   to distribute it to religious and charitable institutions.

24          (c) The wrongful detention of the above funds in account coded escrow up

25   to the filing of this Third Amended Complaint and thereafter resulted in damages

26   by way of denying the plaintiff to distribute the funds to the ultimate benefactors,

27   the religious and charitable institutions, denying the plaintiff interests on the funds

28

29

___First___ CAUSE OF ACTION ----Fraud/Conversion

(d) The wrongful detention of the above funds is accompanied by multiple fraud alleged in the first cause of action.

Plaintiff requests that defendants be held liable for conversion of the 19 million dollars and this is an additional legal basis for the liability of defendants to pay the 19 million dollars. Plaintiff reiterates as relief for conversion his main prayer at the end of this complaint. In particular, plaintiff pray that the conversion, being also an act of malice and oppression, committed by UBS AG be made as a additional basis for finding UBS AG liable for treble punitive damages and treble legal rate of interest

Attachment FR-2a and FR2b (combined)

Defendants made representations of material fact as enumerated hereunder and were in fact false as explained on each representations as follows:

1. Falsely representing that the Financial Action Task Force (hereinafter abbreviated as FATF) charges a fee of $76,000 for Anti-Drug/Terrorist Clearance Certificate, the truth being that the same certificate is not required (Annex 9) or no fee at all is charged by the FATF (Annex 10). (i) When - This false representation was made on May 4, 2006. How – by email through the internet to plaintiff's California email address mindoro123@yahoo.com. Where – In North Edwards, California where plaintiff resides. Why – for the purpose of obtaining $51,000 from the plaintiff allege balance for Anti-Drug/Terrorist Clearance Certificate. (Exhibit 26, 26.2 beginning with paragraph 3). (ii) When – Again on May 8, 2006; How, where, why, what is the same as the preceding (i) abive. (Exhibit 27, paragraph 1, Exhibit 27.2 paragraph 2. (iii) When - Again on May 9, 2006; how, where, why, what is the same as (i) above. (Exhibit 28, paragraph 1) (iv) When – Again on May 12, 2006;how where why what is the same as (i) above (Exhibit

1   \_\_\_First\_\_\_CAUSE OF ACTION ----Fraud/Conversion

2

3   2929.1, paragraph 3.(v)  When – Again on May 15, 2006; How, where, why, what

4   is the same as (i) above. Exhibit 30,  paragraph 3, Exhibit 30.1, paragraph 1; (vi)

5   When – On May 16, 2006; how, where, why, what is the same as (i) above. (Exh.

6   31, paragraph 2,) (vii) When – Again on May 23, 2006; how, where, why, what is

7   the same as (i) above. (Exhibit 32, paragraph 2, 3 and 4) (viii) When – Again on

8   May 29, 2006; how, where, why, what is the same as (i) above. (Exhibit 33.1,

9   paragraph 2) (ix)  When – Again on June 5, 2006; how, where, why, what is the

10  same as (i) above. (Exhibit 35.1, first paragraph) (x) Again on July 7. 2006; how,

11  where, why, what is the same as (i) above.(Exhibit 13, paragraph 1)(xi) Again on

12  September 11, 2006; how, where, why, what is the same as (i) above. (Exhibit 56)

13  In fact no Anti-Drug/Terrorist Clearance Certificate was issued to plaintiff up to

14  the filing of this complaint either by the FATF in Singapore where the $25,000

15  was paid or by the FATF in Hongkong where the $51,000 was supposed to have

16  been paid.  The Uniform Commercial Code, being binding on the defendants as

17  they are subject to the general jurisdiction of this Court, requires that the payment

18  order is not subject to any condition.  Defendant UBS AG Bank cannot create a

19  condition as payment of Anti-Drug/Terrorist Clearance Certificate  where there is

20  none on the payment order, as plaintiff has never been notified by Standard Trust

21  Bank PLC  that there is any such condition.  On the contrary, plaintiff was notified

22  by Standard Trust Bank PLC that the electronic wire transfer is subject only to 96

23  sleep hours and none other which is in conformity with  California Commercial

24  Code,,§ 11103(a)(1)(i) (UCC §4A-103(a)(1) (Exhibit 11, notice  to plaintiff by

25  Standard Trust Bank PLC  dated 4-28-06;  Exhibit 11a, Text enlargement of

26  Exhibit 11)

27

28

29

27

                   \_\_\_First\_\_\_CAUSE OF ACTION ----Fraud/Conversion
<br>(continued)
<br>Attachment FR-2a and FR2b (combined)

2. Falsely representing to plaintiff that there will be no further charge after the payment of $51,000 (Exhibit 12, Standish email of 5-15-06, same as Exhibit 30, paragraph 3; when - this false representation was made on the latter date; How – by email through the internet to plaintiff's California email address mindoro123@yahoo.com. Where – In North Edwards, California where plaintiff resides. Why – for the purpose of obtaining alleged marginal fluctuation deficit). which was in fact false because defendant UBS AG Bank and Clive Standish after plaintiff paid the $51,000 (Exhibit 18 and 20) charged marginal fluctuation deficit on the 19 million dollars, first in the amount of $21,780.00 as of July 5, 2006 (Exhibit 20-B, Exhibit 6A) and has grown to $88,450.00 as of November 6, 2006 (Exhibit 58) This charge of marginal fluctuation deficit is not due by the nature of a special deposit as defendants claim the deposit is a special deposit (Standish email of 7-7-06, Exhibit 13) and the same marginal fluctuation deficit is also not due based on the fact that the delay was caused by defendants false charging of $76,000 fee for Anti-Drug/Terrorist Clearance Certificate alleged in the immediately preceding paragraph 1 above; furthermore, the delay was caused by defendants failure to execute the payment order of Standard Trust Bank PLC on May 5, 2006 which was after the 96 sleep hours , by electronically wire transferring the 19 million dollars to plaintiff's account with Washington Mutual Bank, now Chase, as required by California Commercial Code §11302(a)(1)(i).

3. Falsely representing to plaintiff by many promises enumerated in FR-4a (a)(1 and 2) hereof that defendants will electronically wire transfer the 19 million dollars at Washington Mutual Bank, California, USA within 24 hours after confirmed payment of $51,000 which was in fact false based on the fact that after

1                   __First___ CAUSE OF ACTION ----Fraud/Conversion
2                                  continued
3                      Attachment FR-2a and FR2b (combined)
4

5 payment of $51,000 on June 14, 2006, defendant failed to electronically wire

6 transfer the 19 million dollars at plaintiff's Washington Mutual Bank, now Chase,

7 account in California, USA but instead made a false pretext of charging marginal

8 fluctuation deficit (Exhibit 20 and 6A) which is not due by the nature of a special

9 deposit and also not due based on the fact that the delay was caused by falsely

10 charging $76,000 fee for Anti-Drug/Terrorist Clearance Certificate as alleged in

11 paragraph 1 above, FR-a and FR-b, First Cause of Action and not due furthermore

12 since under California Commercial Code §11302(a)(1), defendants are obligated

13 to electronically wire transfer the 19 million dollars on the execution date, May 5,

14 2006 which date is past the expiration of the 96 sleep hours, as instructed by the

15 sender Standard Trust Bank PLC.

16      4. Falsely representing that Frontier Const. Eng. Ltd. is Financial Action

17 Task Force (FATF) (When - This false representation was made on June 28, 2006;

18 How – by email through the internet to plaintiff's California email address

19 mindoro123@yahoo.com. Where – In North Edwards, California where plaintiff

20 resides. Why – for the purpose of obtaining $51,000 from the plaintiff allege

21 balance for Anti-Drug/Terrorist Clearance Certificate.( Exhibit 47, paragraph 1

22 Exhibit 47.1 paragraph 1),when the truth is FATF does not use another name at all

23 as stated by Asia Pacific Group on Money Laundering (APGML), (Exhibit 10).

24      5. Falsely representing that the $51,000 will be paid to the Financial Action

25 Task Force in Hongkong (when – June 13, 2006; How – by email through the

26 internet to plaintiff's California email address mindoro123@yahoo.com. Where –

27 In North Edwards, California where plaintiff resides. Why – for the purpose of

28 obtaining $51,000 from the plaintiff allege balance for Anti-Drug/Terrorist

29

First___ CAUSE OF ACTION ----Fraud/Conversion

Attachment FR-2a and FR2b (combined)

Clearance Certificate. Exhibit 38.1) when in fact defendant UBS AG Bank transferred to the beneficiary Frontier Const. Eng. Ltd. only $200 (Exhibit 14) which implies that UBS AG Bank kept at least $50,800 assuming one US dollar is equivalent to one Honkong dollar. Defendant UBS AG allege in its answer that "UBS AG carried out those instructions wiring the funds to HSBC on June 15, 2006 and charging a fee of $20.60; admits on information and belief that the instructions originated with the plaintiff ...." The latter allegation is false since in Exhibit 14 attached to this third amended complaint as of July 3, 2006, Hongkong and Shanghai Bank had given a credit of $200 Hongkong dollars to the beneficiary Frontier Const. Eng. Ltd. Hence, there was no transfer of $51,000 to Hongkong and Shanghai Bank on June 15, 2006. The fact that Frontier Construction Eng. Ltd. Was not credited with $51,000 on June 15, 2006 is further confirmed by Clive Standish email of June 16, 2006, Exhibit 41, of June 19, 2006, Exhibit 42, of June 20, 2006, Exhibit 43, of June 23, 2006, Exhiibit 45, of June 27, 2006, Exhibit 46, of June 28, 2006, Exhibit 47 where Clive Standish further confirmed no credit of $51,000 in the account of Frontier Const. Eng. Ltd, to quote: "All what the UBS wants you to understand is that the USD51,000 payment has not been credited to the account supplied by the Financial Action Task Force which is the Frontier Const. Eng. Ltd." All of the immediately preceding emails of Clive Standish confirms Exhibit 14 that as of July 3, 2006 only $200 appear in the account of Frontier Const. Eng. Ltd. The sole document produced by UBS AG on initial disclosure that $51,000 was transferred to UBS AG after deducting the fee of $20.60 is another eleventh hour fabrication of UBS AG, also a clear proof of UBS

1   AG's intent to gain the total $76,000 paid for the non-existing Anti-Drug/Terorist

2   Clearance Certificate making applicable §2224, California Civil Code and

3   ___First___ CAUSE OF ACTION ----Fraud/Conversion
4   continued
5   Attachment FR-2a and FR2b (combined)
6

7   imposing constructive trust on the same $76,000 upon receipt by UBS AG for

8   being gained by fraud and violation of trust. (also obligating upon receipt by UBS

9   AG to return to plaintiff the same money or $51,000 paid by plaintiff. The

10  instruction to transfer the $51,000 to Hongkong and Shanghai Bank did not

11  originate from the plaintiff but from Clive Standish in his email of June 13, 2006,

12  Exhibit 38.1 after inducing the plaintiff to pay by many promises enumerated in

13  FR-4a (a)(1 and 2)hereof that UBS AG will credit without delay or transfer the 19

14  million dollars to plaintiff's account at Washington Mutual Bank, now Chase, and

15  after plaintiff was threatened and intimidated that if payment of $51,000 is not

16  made the transaction will be cancelled (Standish email of May 8, 2006, Exhibit

17  27.1, paragraph 6; Standish email of May 9, 2006, Exhibit 38, paragraph 2),

18  Plaintiff was merely complying with the instruction of Clive Standish, the

19  originator of instructions.

20       6. Falsely representing that marginal fluctuation deposit charge is due for

21  delay ([i] When – This false representation was made on July 5, 2006; How – by

22  email through the internet to plaintiff's California email address

23  mindoro123@yahoo.com. Where – In North Edwards, California where plaintiff

24  resides. Why – for the purpose of obtaining $21,780 allegedly due for marginal

25  fluctuation deficit, "the fluctuation in currency between the time the Standard

26  Trust Bank Plc, Nigeria transferred the funds and the time it took you [plaintiff] to

27  pay the charges for the processing of the Anti Drub/Terrorist Certificate." ,

28  Exhibit 50.1, paragraph 3; [ii] When – Again on July 7, 2006. Clive Standish said

29  "The requested MFD  of  US$21,780.is the short fall in the US$19.0M…"; How,

1   Where, Why, What same as (i), this paragraph;(Exhibit 51.1. middle of paragraph)

2   [iii] When – Again on July 19, 2006, How, Where, Why , What, same as preceding

3            ___First___ CAUSE OF ACTION ----Fraud/Conversion
4                              continued
5                   Attachment FR-2a and FR2b (combined)
6

7   Exhibit 50.1, paragraph 3; Exhibt 53, paragraph 2; [iv] When – Again on July 31,

8   2006, Clive Standish said: I wish to personally assure you that your

9   US$19,000,000.00 will be credited to your account once the MFD fee is paid.";

10  How, where, why same as [i] this paragraph; Exhibit 54, paragraph 2 and 3) when

11  in fact the truth is the delay was caused by the defendant's action in falsely

12  charging $76,000 as alleged in paragraph 1 above and by the nature of a special

13  deposit, defendant knew that a special deposit is not subject to marginal fluctuation

14  deficit; and furthermore, defendant cannot impose a further condition in the

15  payment order of marginal fluctuation deficit where there is none, defendant's duty

16  being merely to execute the payment order in accordance with the sender's

17  payment order (Exhibit 15 and UBS AG Bank acceptance, Exhibit 16) Also, UBS

18  AG was already a wrongful holder of the account coded escrow and an involuntary

19  trustee for benefit of plaintiff.(§2223,Calififornia  Civil Code) since May 6,2006.

20       7.   Falsely representing that after the $76,000 total payment for Anti-

21  Drug/Terrorist Clearance Certificate fee is paid the latter certificate will be

22  prepared and issued (same Exhibits cited in paragraph 1 of this FR-2a and FR2b)

23  but up to the time this complaint is filed either the Financial Action Task Force in

24  Singapore where the $25,000 was paid or the Financial Action Task Force in

25  Hongkong where the $51,000 is supposed to have been paid, had not issued an

26  Anti Drug/Terrorist Clearance Certificate to the plaintiff.

27       8. Falsely representing that the $76,000 supposed fee for Anti-

28  Drug/Terrorist Clearance Certificate  was paid to the European Union Commission

29

___First___ CAUSE OF ACTION ----Fraud/Conversion
continued
Attachment FR-2a and FR2b (combined)

as tax (When – this representation was made on September 5, 2006, to quote Clive Standish: "The UBS wishes to inform you that it is not possible to return the said USD 76,000.00 as it has been paid to the European Union Commission as the said USD76,000.00 was paid through the UBS covering charges for European Union Tax. Thus it is not possible to return the funds".; (Exhibit 55, paragraph 2, Exhibit 55.1, paragraph 1) when the truth is the European Union Commission cannot impose a tax or fee for Anti-Drug/Terrorist Clearance Certificate to be collected in Singapore and Hongkong because the latter two countries are outside the jurisdiction of the European Union Commission and hence is without power to enact a tax law to be executed in Singapore and Hongkong.

___First___ CAUSE OF ACTION ----Fraud/Conversion
continued

Attachment FR-3a

    a. Defendants concealed or suppressed material facts as follows:

Before plaintiff' made the payment of $51,000, he made sure that there will be no additional charges by asking directly defendant Clive Standish if there are other charges after payment of $51,000 and if there are, to state specifically what are those charges and if there is a charge for the transfer of the $19 million dollars from UBS in Switzerland to Washington Mutual Bank in California; to these questions of plaintiff, defendant Clive Standish answered "there will be no further charges" (defendant Clive Standish email of May 15, 2006, copy attached as Exhibit 12, paragraph 3; reprinted as better copy is Exhibt 30, paragraph 3;; same "no further charges" in Standish email of May 16, 2006, Exhibit 31, paragrah 3) and plaintiff will be credited within twenty-four hours the moment the payment of

1         ___First___ CAUSE OF ACTION ----Fraud/Conversion
2                       continued
3               Attachment FR-3a
4

5 $51,000 is confirmed received. Contrary to the assurance of Clive Standish that

6 "there will be no further charges" he concealed that there will be an additional

7 charge for marginal fluctuation deficit and in fact he did charge $21,780 for

8 marginal fluctuation deficit" (Exhibit 13-A, middle paragraph)(which was also a

9 separate false representation as alleged in paragraph 2, FR-2a and FR-2b, page 2,

10 First Cause of Action)

11       b. Defendants UBS AG Bank and Clive Standish concealed or suppressed

12 material facts they are bound to disclose as enumerated in attachment FR-2a and

13 FR-2b and they failed to disclose.. They are bound to disclose those facts since in

14 a special deposit, as the defendants claimed the deposit in this transaction is a

15 special deposit, the relationship between the plaintiff and defendant is that of a

16 bailment with defendant UBS AG Bank as bailee and the funds are trust funds,

17 plaintiff being the beneficiary and the defendant UBS AG Bank as trustee.

18 Plaintiff is considered the depositor as beneficiary of the funds held by UBS AG

19 Bank as trustee and plaintiff falls within the definition of depositor as this is

20 understood in California, USA. Hence in a special deposit, a fiduciary relationship

21 exist between beneficiary, plaintiff and the depositary, UBS AG Bank which is the

22 legal basis for defendants duty to disclose and they failed to disclose. Also, UBS

23 AG is already an involuntary trustee (§2223, CA CC) for the benefit of plaintiff

24 since May6,2006 due to wrongful detaining of funds imposing fiduciary duty to

25 deliver.

26

27         ___First___ CAUSE OF ACTION ----Fraud/Conversion
28                       continued
29               Attachment FR-4a
30

1        a. Defendants UBS AG Bank and Clive Standish made a promise about a

2  material matter without any intention of performing it, in <u>fact failed to perform,</u> as

3  stated in plaintiff's email of July 10, 2006 to defendant Clive Standish as follows:

4                    ___First___CAUSE OF ACTION ----Fraud/Conversion
5                                continued
6                          Attachment FR-4a

7

8  "1. Let me state once more that before I paid you the $51,000 to make sure there

9      are no more charges, I asked you these questions: After I pay the $51,000 are

10     there other charges to be paid? If yes, what are they? Is there a charge for the

11     transfer from UBS to Washington Mutual Bank? Your answer in your email of

12     May 15, 2006 was "there are no further charges." You never mentioned there

13     will be a charge on the 19 million dollars for marginal fluctuation deficit. (Exhibit

14     67)

15

16  2. You affirmed your representation of no further charges when you said in your

17     email as follows:

18     a. In your email of July 3, 2006 :" once I have that tracer with me, I assure you

19     that the USD19.0M will be credited to your account within 2 days.

20     (Exhibit 48.2, last paragraph)

21

22     b. In your email of May 22, 2006, page 2, bottom last two sentence you said: "In

23     answer to your question, the US$19.0M will be transferred to your account at the

24     'Washington Mutual Bank in California after the confirmation of the balance of

25     US$51,000 (Exhibit 32.1, bottom; Exhibit 32.2, topmost sentence)

26

27     c. In your enail of June 22, 2006: "we have started processing the Anti-

28     Durg/Terrorist Certificate, which will be concluded themoment the payment is

29     confirmed." (Exhibit 44.1)

35

1    d. In your email of June 14, 2006: "The UBS swishes to once again restate its

2    resolve to conclude this transaction once the balance of USD51,000 is received."

3    (Exhibit 39.1)

4    e. In your email of June 13, 2006: "The UBS Zurich wishes to use this

5    opportunity to re-affirm its resolve to immediately credit

6        __First__ CAUSE OF ACTION ----Fraud/Conversion
7                           continued
8                       Attachment FR-4a
9

10   your account at the Washington Mutual Bank with the US$19.0M once the

11   balance of $51,000.00 is received." (Exhibit 38, paragraph 1)

12

13   f. In your email of June 9, 2006: "all things being equal, the transfer of the USD

14   19,000,000.00 to your account will take place the moment the USD51,000.00

15   payment is confirmed." (Exhibit 37.1)

16

17   g. In your email of June 6, 2006: we are continuing with the processing of the

18   certificate with the US$25,000.00 already in our possession while waiting for the

19   US$51,000.00 is to confirm."(Exhibit 36.1)

20       There is no intention to wire transfer the 19 million dollars to plaintiff's

21   account at Washington Mutual Bank, California based on the fact that defendants

22   concealed and were holding in reserve to make a further charge for marginal

23   fluctuation deficit as they did in fact made a charge for it. (Exhibit 50.1, paragraph

24   3; Exhibt 53, paragraph 2;Exhibit 54, paragraph 2 and 3; Exhibit 51.1. middle of

25   paragraph) and failed to issue a payment order in accordance with the instructions

26   of Standard Trust Bank PLC and transmit it to Washington Mutual Bank, now

27   Chase, for credit to .plaintiff's account at the latter bank.

28       The assurances, promises and concealment were made to induce plaintiff to

29   pay $51,000 for the alleged Anti-Drug/Terrorist Clearance Certificate. Defendants

30   intent not to perform their promise is manifested by making false representations

36

1   enumerated in the First Cause of Action, paragraph 1 to 8 of FR-2a and FR-2b

2   combined. Plaintiff to complete the $51,000 demanded by Clive Standish and

3   UBS AG, took a cash advance of $6,000 from his credit card with Bank of

4   America. Defendants took advantage of this information to kick plaintiff out of

5

6             \_\_\_First\_\_\_CAUSE OF ACTION ----Fraud/Conversion
7                            continued
8                       Attachment FR-4a

9

10   this transaction by concealing that they will charge for marginal fluctuation deficit

11   after plaintiff pays the $51,000 because by then plaintiff no longer has any money

12   and would have to abandon this transaction,(also an earmark of malice and

13   fraudulent intent) and hence defendants can keep plaintiff's $51,000 and could

14   possibly keep the 19 million dollars as well by converting it as manifested by the

15   fact that defendants refused to pay plaintiff the 19 million dollars and continuously

16   kept it despite the fact that Clive Standish was already separated from UBS AG.

17

18   Fourth element of fraud - justifiable reliance

19

20        In justifiable reliance upon defendants conduct, plaintiff was induced as

21   follows:

22        Relying on the assurance of defendant that there will be no further charges

23   and with the above promises of defendant Standish that plaintiff will be credited

24   on his account with Washington Mutual Bank of the $19 million dollars within 24

25   hours after payment is confirmed and with plaintiff's expectation that he can

26   payoff Bank of America the $6000 cash advance that he borrowed, plaintiff with

27   his lifetime savings of $45,000 cash at Washington Mutual Bank (a lifetime

28   savings earned from plaintiff's working career which has sentimental value and

29   concerns his comfort, happiness and personal esteem) plus a cash advance of

30   $6,000 from his credit card with Bank of America, plaintiff asked Washington

1   Mutual Bank , thru its correspondence Bank of New York, to pay UBS AG Bank

2   with the following address as instructed by defendant Standish: (Exhibit 35.1)

3       UBS AG
4       GESNERALLE 3
5       CH-8001, ZURICH
6       · SWIFT CODE UBSWCHZH80A
7       ___First___CAUSE OF ACTION ----Fraud/Conversion
8                   Attachment FR-4a
9
10      FURTHER CREDIT TO:
11      SWIFT CODE: HSBCHKHHHKH
12      BENEF: FRONTIER CONS. ENG. LTD.
13      A/C 809130438838

14      A tracer showed that the Bank of New York, correspondent bank of

15  Washington Mutual Bank,  paid UBS AG BANK $51,000 on June 14, 2006 as

16  evidenced by their transaction number FTS0606148328500 (Exhibit 18) which did

17  not follow Clive Standish wire transfer instruction of giving "Further credit to xxx

18  Bene: Frontier Const. Eng. Ltd.", supposed to be the pseudonym  for Financial

19  Action Task Force, (Exhibit  19, Standish email of 6-28-06).  The Bank of New

20  York, left it to UBS AG Bank of Zurich, Switzerland to pay the beneficiary

21  Frontier Cons. Eng. Ltd..  On June 15, 2006, UBS AG Bank continued the wire

22  transfer of the Bank of New York by crediting the beneficiary Frontier Cons. Eng.

23  Ltd.  with "HKD200" (Exhibit 14)  which means that the  beneficiary Frontier

24  Cons. Eng. Ltd. was given credit only for 200 Hongkong Dollars and the rest of

25  $50,800 was kept by defendant UBS AG Bank assuming that the equivalent of one

26  Hongkong dollar is one US dollar;  In all cases of partial, full or no transfer of the

27  $51,000 from UBS AG BANK to the beneficiary Frontier Cons. Eng. Ltd., [they]

28  all  constitute fraud since the Financial Action Task Force (FATF) charges no fee

29  (Exhibit 10) and FATF  does not use false names such as Frontier Cons. Eng. Ltd.

30  misrepresented by defendants as FATF (Exhibit 10) and an Anti-Drug/Terrorist

31  Clearance Certificate is not required (Exhibit 9 and due to §2223, California Civil

38

Code___ alleged below, UBS AG and Clive Standish for illegally detaining the account coded escrow became involuntary trustee for benefit of plaintiff with fiduciary duty to deliver which they failed to do since May 6, 2006 to the present time. Defendant Clive Standish acknowledged receipt of $51,000 paid by plaintiff. (Exhibit 20)

First___ CAUSE OF ACTION ----Fraud/Conversion
continued
Attachment FR-5

In justifiable reliance, plaintiff continued to work programming the funds for donation to religious and charitable projects, the value of his labor for writing and for the continuation of writing programs is estimated to $29,000.

In further justifiable reliance, plaintiff looked for agents to sell a parcel of land to payoff the $6,000 borrowed as cash advance from Bank of America. Plaintiff succeeded in finding an agent but plaintiff was forced to accept $20,000 (Exhibit 70) as purchase price when the estimated value of the property is $30,000 (Exhibit 71). Plaintiff suffered a loss of $10,000.

Attachment FR-6

Fifth element of fraud - resulting damage

Because of plaintiff's reliance upon defendant's conduct, plaintiff has been damaged as follows:

1. Plaintiff paid to defendant $51,000 broken down as follows:

    a) Plaintiff was forced to borrow $6,000 from Bank of America as cash advance from his credit card.

b) Plaintiff withdrew his entire lifetime savings of $45,000 from
Washington Mutual Bank.

2. In order to pay $6,000 to Bank of America, plaintiff was forced to sell his lot for $20,000 which has an estimated market value of $30,000 suffering a loss of $10,000.

3. Plaintiff was unable to recover the value of his services estimated at $29,000 for writing and for more writing of the program implementation of Mrs. Faith Muhammed's religious and charitable projects.

4. Plaintiff suffered delay in implementing the religious and charitable projects of Mrs. Faith Muhammed. The amount of damages cannot be estimated.

5. Plaintiff was denied to exercise his rights and obligations with his contract with Mrs. Faith Muhammed the amount of damages being not subject to exact estimation.

Exemplary Damages Attachment

Attachment to   X      3rd Amended Complaint

Ex-1. As additional damages against all named five defendants in the above caption of this case (names in the caption and pages 1, 4, paragraph 2, pages 6 and 7, this amended complaint ):

Plaintiff alleges defendants were guilty of
      X      malice
      X      fraud
      X      oppression

40

Exemplary Damages Attachment
(Continued)
Attachment to   X   3rd Amended Complaint

as defined in Civil Code section 3294, and plaintiff should recover, in addition to actual damages to make an example of and to punish defendants.

Ex-2.  The facts supporting plaintiff's claim are as follows:

The facts supporting plaintiff's claim for exemplary damages

are those stated particularly in paragraph 1, FR-2a and FR-2b

(combined), First Cause of Action and as further stated in the

subsequent paragraphs thereof up to the last paragraph

of the First Cause of Action containing all the elements of fraud and

deceit which are incorporated by reference and forms an integral part

of this Exemplary Damages Attachment, all facts of multiple fraud.

Ex-3   UBS AG is guilty of multiple fraud as alleged in the first cause of

action. In addition, UBS AG and Clive Standish demanded $76,000 for the non-

existing fee for Anti-Drug/Terrorist Clearance fee and after inducing its payment

of promising to issue a payment order to plaintiff's account at Washington Mutual

Bank, now Chase, for 19 million dollars, plaintiff and a third person in behalf of

plaintiff, paid it but Clive Standish and UBS AG failed to comply with its promise

by issuing its payment order. Then they demanded   payment of non-existing

marginal fluctuation deficit of $88,450 promising again to transfer to plaintiff's

account at Washington Mutual Bank the 19 million dollars only after its payment.

Nothing could be more despicable than to do one fraud after the other. This

conduct of UBS AG and Clive Standish was carried out with willful and conscious

disregard of plaintiff's rights as beneficiary under the contract Exhibit 15 and

16.This entitles plaintiff to treble punitive damages and treble legal rate of interest.

Ex-4   UBS AG is a recidivist. A copy of the list of fraud complaints

against UBS AG copied from the records of the Southern U.S. District Court of

41

1  New York is attached to this Third Amended Complaint and marked hereof as

2  Exhibit 76 for the plaintiff to which judicial notice is invited. Any, some or all of

3  the complaints could be reduced to judgments driving UBS AG deeper as a fraud

4  recidivist. Further, in this case, UBS AG had only one day to deliver the 19 million

5                      Exemplary Damages Attachment
6                            (Continued)
7        Attachment to   X    3rd Amended Complaint
8

9  dollars to the plaintiff which was on the execution day May 5, 2006, the day after

10  the expiration of the 96 hours UBS AG accepted as the specified time he can

11  legally hold the 19 million dollars.  Beginning May 6, 2006 and each day

12  thereafter, UBS AG continued to hold the escrow deposit and is committing day by

13  day a breach of trust and violation of confidence making it a recidivist for failure

14  to deliver the funds to the plaintiff.  UBS AG does not have 365 days a year to

15  deliver the funds in account coded escrow. UBS AG can hold the escrow deposit

16  only for 96 hours beyond which time UBS AG becomes an illegal and an

17  unauthorized holder of the same.

18       Ex-5  UBS AG and UBS FS presented one fabricated evidence at initial

19  disclosure, an act of fraud and oppression.

20       Ex-6  UBS AG and UBS FS made sham and false defenses  particularized

21  in Docket 33 unjustifiably resisting plaintiff's claims also an act of oppression.

22       Ex-7  UBS AG is guilty of multiple constructive fraud both on the 19

23  million dollars and on the $76,000 obtained and gained by fraud for the non-

24  existing fee of Anti-Drug/Teerrorist Clearance Certificate fee.. [Constructive fraud

25  or oppression constitute an appropriate basis for an award of punitive damages.

26  Day v. Rosenthal (1985)  170 Cal. App. 3d 1125 cert. denied (1986) 475 U.S,

27  1048)]

28       Ex-8  Malice. (a)  The conduct of Clive Standish and UBS AG charging a

29  fee for the non-existing Anti-Drug/Terrorist Clearance Certificate fee which was

42

1    paid out of plaintiff's lifetime savings was intended to cause plaintiff the loss of

2    $51,000 and was carried out with willful and conscious disregard of plaintiff's

3    rights as beneficiary under the contract Exhibit 15 and 16.  (b) The false

4    representation of Clive Standish and UBS AG to plaintiff that there will be no

5    further charges after payment of $51,000 was intended to cause the loss of

6                        Exemplary Damages Attachment
7                               (Continued)
8         Attachment to   X    3rd Amended Complaint

9

10   plaintiff's $51,000 and is a despicable conduct carried out by both defendants with

11   a willful and conscious disregard of plaintiff's rights as beneficiary under the

12   contract Exhibits 15 and 16 because after payment of $51,000 UBS AG again

13   charged for non-existing   marginal fluctuation deficit of $21,780 the alleged

14   shortfall on the 19 million dollars.(c)  Falsely representing to plaintiff by many

15   promises enumerated in FR-4a (a)(1 and 2) hereof that defendants will

16   electronically wire transfer the 19 million dollars at Washington Mutual Bank,

17   California, USA within 24 hours after confirmed payment of $51,000 which was in

18   fact false based on the fact that after payment of $51,000 on June 14, 2006,

19   defendant failed to electronically wire transfer the 19 million dollars at plaintiff's

20   Washington Mutual Bank, now Chase, account in California,  USA but instead

21   made a false pretext of charging marginal fluctuation deficit (Exhibit  20 and 6A)

22   which is not due since the California Civil Code . (California Civil Code,

23   §2223.One who wrongfully detains a thing is an involuntary trustee thereof, for the

24   benefit of the owner.) imposes a constructive trust on the account coded escrow for

25   illegally detaining it beginning May 6, 2006, the day after UBS AG failed to

26   execute the payment order on May 5, 2006. This is a despicable conduct  carried

27   on by UBS AG and Clive Standish with willful and conscious disregard of

28   plaintiff's rights as beneficiary under the contract Exhibit 15 and 16. (d) Clive

29   Standish and UBS AG by falsely representing that Frontier Const. Eng. Ltd. is

43

1    Financial Action Task Force (TF) when the truth is FATF does not use another

2    name at all as stated by Asia Pacific Group on Money Laundering (APGML),

3    (Annex 10) committed a despicable conduct  carried on by UBS AG and Clive

4    Standish with willful and conscious disregard of plaintiff's rights as beneficiary

5    under the contract Exhibit 15 and 16. (e) Clive Standish and UBS AG by falsely

6                        Exemplary Damages Attachment
7                                (Continued)
8             Attachment to   X    3rd Amended Complaint
9

10   representing that the $51,000 will be paid to the Financial Action Task Force in

11   Hongkong when in fact defendant UBS AG Bank transferred to the beneficiary

12   Frontier Const. Eng. Ltd. only $200 on June 15, 2006  (Exhibit 14) and up to June

13   28, 2006, Clive Standish confirmed that Frontier Const. Eng. Ltd., was not credited

14   with $51,000 showing that UBS AG produced at initial disclosure a fabricated

15   document that UBS AG did transfer to Hongkong and Shanghai Bank $51,000 on

16   June 15, 2006. This is a a despicable conduct manifesting an intent to profit by

17   UBS AG from the $76,000 obtained by fraud from the plaintiff and carried on by

18   UBS AG and Clive Standish with willful and conscious disregard of plaintiff's

19   rights as beneficiary under the contract Exhibit 15 and 16. (f) UBS AG and Clive

20   Standish by falsely representing that marginal fluctuation deposit charge is due for

21   delay when in fact the truth is the delay was caused by the defendant's action in

22   falsely charging $76,000 as alleged in paragraph 1 above a condition not found in

23   the payment order UBS A accepted.  (This is aside from the reason advanced

24   above that California Civil Code § 2223 imposes a constructive trust on the 19

25   million dollars on account coded escrow) Again the conduct of UBS AG and Clive

26   Standish was carried on with willful and conscious disregard of plaintiff's rights as

27   beneficiary under the contract Exhibit 15 and 16. (g) UBS AG and Clive Standish

28   falsely represented that after the $76,000 total payment for Anti-Drug/Terrorist

29   Clearance Certificate fee is paid the latter certificate will be prepared and issued

44

1   but no such certificate was sent to plaintiff within a reasonable time after plaintiff

2   paid the $51,000 completing the total of $76,000, a despicable conduct carried on

3   by UBS AG and Clive Standish with willful and conscious disregard of plaintiff's

4   rights as beneficiary under the contract Exhibit 15 and 16. (h) UBS AG and Clive

5

6                     Exemplary Damages Attachment

7                           (Continued)

8        Attachment to   X    3rd Amended Complaint

9

10   Standish by falsely representing that the $76,000 supposed fee for Anti-

11   Drug/Terrorist Clearance Certificate was paid to the European Union Commission

12   as tax then at the initial disclosure produced a document that the $76,000 was paid

13   to the account of Frontier Const. Eng. Ltd in Hongkong and Shanghai Bank,

14   Hongkong, China. This conflicting explanation given by UBS AG and Clive

15   Standish is a despicable conduct carried on by them with willful and conscious

16   disregard of plaintiff's rights as beneficiary under the contract Exhibit 15 and 16

17        Ex-9 Oppression. UBS AG's and Clive Standish charge of $76,000 for the

18   non-existing fee for Anti-Drug/Terrorist Clearance Certificate subjected plaintiff

19   to cruel and unjust hardship since plaintiff had to pay the $51,000 balance for that

20   certificate fee by taking $6,000 cash advance from his credit card with Bank of

21   America and by withdrawing all of his lifetime savings that concern his comfort

22   and happiness or personal esteem in the amount of $45,000 and in order to pay

23   back the $6,000 to Bank of America, plaintiff had to sell a parcel of land for

24   $20,000 with a market value of $30,000 suffering a loss of $10,000.

25        Ex-10 Conversion. This is likewise an act of malice and oppression since it

26   satisfies their definition.

27

SHORT TITLE                                    CASE  NUMBER
Carl L. Jimena v. UBS AG Bank, et. al.

__Second__   CAUSE OF ACTION --Payment of $19,000,000    Page_1__
Obligation of Receiving Bank California Commercial Code §11302, §11212 and
§11103

Plaintiff alleges against all captioned-named defendants as follows:

1.  On or about April 28, 2006, defendant UBS AG (Bank) accepted a
payment order (Exhibit 16) in the amount of  $19,000,000  million U.S. dollars
issued by Standard Trust Bank PLC of Lagos, Nigeria (Exhibit 15) on the same
date of April 28, 2006 to the benefit of the plaintiff as beneficiary. Standard Trust
Banks' instructions to UBS AG  as intermediary bank in Exhibit 15 states:  UBS
AG will pay plaintiff as beneficiary[1] in the payment order by telegraphic[2] means
on the execution date May 5, 2006[3] the amount of $19,000,000[4] (19 million
dollars) directly to Washington Mutual Bank[5], (beneficiary's bank) now Chase,
addressed at California, USA, to be credited to the account of plaintiff at the latter
bank, account number 3976467213[6], routing  number 322271627[7] out of the credit
remittance[8] of 19 million dollars to UBS AG already made on April 28, 2006 [and

---

[4]  . Exh. 15, 3rd rectangle from top  rectangle, left side appears "Beneficiary" below it is "Carl L.
Jimena"

[1]  Exh. 15, (about line 14 with a check mark).

[2]Exh. 15 - 2nd rectangle, right side from the bottom rectangle appears "May 5th, 2006".

[3] Exh. 15, sixth group of rectangles from the top at middle right side appears "amount due" below
it is "US$19,000,000"

[3]  Exh. 15, 1st line on top, "To:  washington Mutual Bank      From: STBNIGPLC

[3] Exh. 15, At the middle group of rectangles appears "Receiving Bank & A/C No.;" below latter
is "Washingnton Mutual Bank;" below the latter is plaintiff's account no. "3976467213"

[3 6] Exh. 15, middle group of rectangles at extreme right appears "routing number;" below the
latter is "322271627"

[3] Exh. 15, 8th group of rectangle from the top appear "Credit Remittance;" below the latter is
"Advice Reference;"  below the latter are the code numbers

8

was placed by UBS AG in account coded escrow (bottom of Exhibit 16)], the credit remittance number reference appearing in the payment order Exhibit 15. No other conditions appear in the payment order except as to the sleep period of 96 hours[9] ending on midnight of May 4, 2006. After the latter date is May 5, 2006, the execution date. In Exhibit 15, the second rectangle at the right side from the bottom rectangle appears "May 5, 2006". On the left side of the latter date is a rectangle box with a check mark after which appear the words "Advise and Pay" showing that the execution date is May 5, 2006, the date immediately following the expiration of the 96 hours agreed obsolescence period. "Advise and Pay is an instruction of Standard Trust Bank PLC to UBS AG to pay, issue and transmit its payment order to Washington Mutual Bank, now Chase, to be credited to plaintiff's account on May 5, 2006 and notify Washington Mutual Bank, now Chase and plaintiff of the payment. Although the payment order literally states by "telegraphic" means, as explained below, it is the understanding between the parties that transmission is via computer to computer between UBS AG and Washington Mutual Bank, now Chase. When the contract Exhibit 15 and 16 states the "obsolescence" period is 96 hours, this refers to the sleep period in UBS AG's computer ending on Midnight of May 4, 2006, with the following day May 5, 2006 as the execution date in Exhibit 15. UBS AG is obligated to program its computer in a way to transmit its payment order on the execution date May 5, 2006 immediately after midnight of May 4, 2006, the latter time being the end of the agreed 96 sleep hour period. (UBS AG may also just allow the automatic programming of Standard Trust Bank to pass thru its computer adopting it as its own or with some modifications.) That computer to computer transmission will be made between UBS AG and Washington Mutual Bank, now Chase, was confirmed by Clive Standish in his email of July 5, 2006, Exhibit 50.1, paragraph 1 stating "The programming for your USD 19.0M fund transfer was concluded

---

[9] Exh. 16 - 13th line group of words, left side, appears "obsolescence" opposite of which to the right is "96 hours"

this afternoon..." All the terms of Exhibit 15 was accepted by UBS AG in Exhibit 16 subject to no condition in Exhibit 16. In Exhibit 16, the word "Accepted" is located at about 13th line  from the top. right side..  Opposite of the word "Accepted" to the left are the words "Delivery Monitoring"  which is the tracking of the 19 million dollars transferred to UBS AG.  Below "Delivery Monitoring" are the words "Obsolescence Period";  opposite the latter words on the right is "96 hours".  On the 8th line from the word "Acknowledgment" at the bottom is the word  ""Beneficiary" to the opposite right side of which appears the name "Carl L. Jimena"  above the latter name is the routing number of Washington Mutual Bank which is 322271627 above the latter is 3976467213 which is plaintiff's  account with Washington Mutual Bank.  Above plaintiff's  account number is the name and address of Washington Mutual Bank. At the bottom of Exh. 16 appears the word "Acknowledgment".  This is the official acknowledgment by UBS AG of the transferred fund of 19 million dollars by placing it on an account "A/C & CODED ESCROW"  Below the latter words are bar codes. These bar codes represent the identity of the account number and is the equivalent of the signature of UBS AG .

a)  [In compliance with Footnote 1, Docket 18 Court order, re: California Uniform Commercial Code §11302. This is related to §11212, , [id] Exhibit 15 and 16 is an express agreement by UBS AG  to accept a payment order by issuing its payment order under §11212, California UCC on May 5, 2006, the execution date under Exhibit 15.  UBS AG on May 5, 2006, the execution date, (and even up to the present time). failed to issue a payment order which is a failure to accept a payment order under §11212 in breach of UBS AG obligation to accept under the express agreement Exhibit 15 and 16. Hence, UBS AG was already liable to pay 19 million dollars under §11212, California UCC. This liability to pay under §11212, was effective immediately after UBS AG failed to execute the payment order on May 5, 2006.  This first paragraph is sufficient legal basis for the enforcement of plaintiff's legal rights under Exhibit 15 and 16. The subsequent allegations supplies more details.

UBS AG expressly accepted in writing Standard Trust Bank's ( PLC) Payment Order appearing in Exhibit 16, line 13, right column and under FMMRA3008083500 appearing immediately below acknowledgement, line 11, right column of Exhibit 16 obligating UBS AG to accept the payment order under §11212, California UCC by issuing a payment order under §11212 in relation to §11302 California UCC, otherwise, if UBS AG does not issue its payment order , as it did in fact failed to issue the payment order, it is liable for breach of the agreement (Exhibit 16 and 15) to the extent provided in the latter agreement (§11212, id) added to its liability for fraud under the First Cause of Action. Hence, UBS AG is obligated under §11302 to accept the payment order of Standard Trust Bank PLC by issuing a payment order under the same §11302 in relation to §11212, in fact failed to issue the same payment order, whereby on the execution date May 5, 2006 appearing on the right bottom of Exhibit 15 UBS AG must execute (in fact failed to execute) the payment order by issuing its payment order and comply (in fact failed to comply with) with the sender, Standard Trust Bank's instruction concerning the means by which its payment order is to be transmitted which is "Telegraphic" as it appears in Exhibit 15 (about line 14 with a check mark). However, since "telegraphic" transfer is also a "wire transfer" under §11302(a)(2), California UCC, UBS AG may transmit the payment order by the most expeditious means.(in fact failed to transmit by expeditious means by computer transfer). Standard Trust Bank made the fund transfer by making a telex advice followed by automatic computer programming (Exhibit 11, 11A) agreed to sleep 96 hours in UBS AG's computer (12th line, right column, Exhibit 16) after which on May 5, 2006, UBS AG's computer will automatically transmit its payment order to Washington Mutual Bank (now merged to and called Chase)(UBS AG failed to comply by making its computer to make transmission of the payment order according to Standard Trust Bank PLC instructions.) UBS AG may literally follow the contract Exhibit 15 and transmit its payment order by "telegraphic" means and in fact failed to make a transmission of its payment by

telegraphic means under its option to do so.  Computer to computer transfer from UBS AG to Washington Mutual Bank (now Chase) is a transfer by the most expeditious means, which UBS AG failed to do so,  and satisfy §11302(a)(2), California UCC. In fact, Clive Standish in behalf of UBS AG, intended to transmit UBS AG's payment order by computer programming to Washington Mutual Bank, now Chase, in his email of July 5, 2006, Exhibit 50.1, paragraph 1 stating "The programming for your USD 19.0M fund transfer was concluded this afternoon…"   Also, under §11302(a)(2), the sender, Standard Trust Bank's payment order has a payment date which is May 5, 2006 (right bottom of Exhibit 15) which obliges UBS AG to transmit  (in fact failed to transmit) its payment order at a time and by means reasonably necessary to allow payment to the beneficiary on the payment date or as soon thereafter as is feasible.  UBS AG failed to comply with the latter obligation required by the above provision of California UCC.

Contrary to the obligation of UBS AG under the contract Exhibit 15 and 16 based on the provisions of the California UCC cited above, instead of executing the payment order on May 5, 2006, the execution date, either by telegraphic means or computer to computer transfer, (UBS AG failed to do both) UBS AG placed the funds in escrow (agreed to last only for 96 hours in Exhibit 16, 13th line group of words, left side appears "obsolescence" opposite of which to the right is "96 hours") as shown in the acknowledgment in Exhibit 16, for the purpose of demanding   from the plaintiff the non-existing fee of   $76,000 for Anti Drug/Terrorist Clearance Certificate. demonstrating UBS AG'S intent to defraud. This is a fraudulent execution of Standard Trust Bank's payment order under §11301(a), California UCC since the purpose is to demand a non-existing fee which is used as a reason to withhold the execution of the payment order of Standard Trust Bank PLC. UBS AG failed to execute the payment order on the execution date on May 5, 2006 and from the latter date to the present date and therefore under §11212, UBS AG already became liable as of May 6, 2006 under

the express agreement it had accepted under §11212 to pay the 19 million dollars subject of Exhibit 15 and 16. This liability to pay was admitted by UBS AG in all emails of Clive Standish (acting in behalf of UBS AG) Exhibit 25 to 58, where in Exhibit 25 his email of May 2, 2006, he stated as the subject of his email "Re: TRANSFER OF USD19.0M DUE TO MR. CARL L. JIMENA" and in all his subsequent emails to plaintiff stating below the salutation "Dear Sir" is the subject "Transfer of USD19,000,000.00 from Standard Trust Bank PLC" with the "subject" on top of the email "RE: Swift Message dated 28/04/06 under FMMRA 3008083500" the latter number referring to the number of the payment order, UBS AG accepted in Exhibit 16, the same number appearing immediately below the "ACKNOWLEDGEMENT" of Exhibit 16.

To show the fraudulent manner of execution by UBS AG, Clive Standish in behalf of UBS AG made demands from the plaintiff payment of Anti-Drug/Terrorist Clearance fee as shown in Exhibit 26.2; Exhibit 27, paragraph 1; Exhibit 27.1 paragraph 2; Exhibit. 28, paragraph; 1, Exhibit 29, 29.1 paragraph. 3; Exhibit 30, paragraph 3; Exhibit. 30.1, paragraph. 1; Exhibit 31, paragraph 2. These fraudulent demands are quoted in paragraph 21, page 16 to 17 of plaintiff's Affidavit, marked as Annex 1 to this Third Amended Complaint and are hereby incorporated by reference to form an integral part of this Third Amended Complaint.

b) [In compliance with Footnote 2, Docket 18 Court order, re: California Uniform Commercial Code §11303 and §11103. §11303 does not apply to this case. §11103 is included in Footnote 5.]

c) [[In compliance with Footnote 3, Docket 18 Court order, re: California Uniform Commercial Code §11302(a)(1). This is already included in the allegations in paragraph 1(a) above]

d) [In compliance with Footnote 4, Docket 18 Court order, re: California Uniform Commercial Code §11301(b), Execution Date]. Standard Trust Bank's payment order, Exhibit 15 at the right bottom side states May 5, 2006 as the day

on which the receiving bank, UBS AG may properly issue a payment order in execution of Standard Trust Bank's payment order, Exhibit 15. In Exhibit 15, the second rectangle at the right side from the bottom rectangle appears "May 5, 2006". On the left side of the latter date is a rectangle box with a check mark after which appear the words "Advise and Pay" showing that the execution date is May 5, 2006, the date immediately following the expiration of the 96 hours agreed obsolescence period. "Advise and Pay" is an instruction of Standard Trust Bank PLC to UBS AG to pay, issue and transmit its payment order to Washington Mutual Bank, now Chase, to be credited to plaintiff's account on May 5, 2006 and notify Washington Mutual Bank, now Chase, and plaintiff of the payment.

    e) [In compliance with Footnote 5, Docket 18 Court order, re: California Uniform Commercial Code §11103, Payment Order definition] Exhibit 15 is an instruction (see 1st paragraph. of paragraph 1 above) by Standard Trust Bank PLC to the receiving Bank UBS AG to pay the fixed amount of NINETEEN MILLION DOLLARS ($19,000,000.00) to plaintiff as beneficiary under the specific instructions contained in Exhibit 15 whereby among others UBS AG will credit without delay plaintiff's account at Washington mutual Bank, now Chase, with 19million dollars or transmit its payment order to Washington Mutual Bank, now Chase, to be credited to plaintiffs account the same 19 million dollars all of the following applying to the same payment order Exhibit 15: (i) The instruction in Exhibit 15 does not state a condition to payment to the plaintiff beneficiary other than time of payment being after the expiration of 96 hours from April 28, 2006 computed by excluding the day of transfer, Friday, April 28, 2006, likewise excluding the following Saturday and Sunday respectively April 29 and 30 being non-business day then beginning Monday May 1, 2006, to Tuesday May 2, 2006, Wednesday May 3, 2006, Thursday May 4, 20006 ending midnight of May 4, 2006 totaling 96 hours (96 hours divided by 24 hours equals 4 days) The following day after expiration of 96 hours is Friday May 5, 2006, is the agreed execution day. (ii) The receiving bank UBS AG received a payment of 19 million dollars by

means of credit remittance (Exhibit 11, 11A, Exhibit 15 and 16, particularly in the "Acknowledgement" part of Exhibit 16, placing the 19 million dollars in Account Coded Escrow, the bar codes appearing below Account Coded Escrow is the equivalent of the signature of UBS AG). In Exhibit 15, 8th group of rectangle from the top appear "credit remittance", below the latter is "advice reference", below the latter are the code numbers.   Clive Standish, Chief Financial Officer, acknowledged in behalf of UBS AG, receipt of the 19 million dollars by referring to it to plaintiff in all his emails by stating "Re: Transfer of USD19,000,000.00 from Standard Trust Bank Plc" An exhaustive .statement of facts showing receipt of the 19 million dollars with reference and proven by exhibits are found in plaintiff's Affidavit styled Affidavit in Support of Motion for Entry of Default and Default Judgment, paragraph 18, pages 8-11, (Exhibit 1 hereof) which is hereby incorporated by reference and forms an integral part of this complaint (iii) The instruction to pay was initially transmitted directly by the sender Standard Trust Bank by telex advice on April 28, 2006 (Exhibt 11, 11A) followed by pre-programmed computer transmission to UBS AG's computer. (Exhibit 11, 11A) The direct transmission was acknowledged by Clive Standish, Chief Financial Officer, in his email of May 2, 2006, Exhibit 25 when he said: "We wish to officially write you that the Union Bank of Switzerland has received instructions from the Standard Trust Bank PLC., Lagos, AC Nigeria to credit without delay the sum of US$19,000,000.00 ....only to your account at the Washington Mutual Bank" (now Chase) and in Clive Standish email of July 7, 2006, Exhibit 51.1 stating "Your demand for an interest of 10% is not feasible as you already know that the US$19.0M is a special deposit that cannot attract any   interest...." (underlining mine referring to Account Coded Escrow in Exh. 16)

f) On May 5, 2006, the execution date of the payment order under Exhibit 15 and 16, UBS AG failed to deliver the 19 million dollars on escrow by failing to issue its payment order to Washington Mutual , now Chase, to credit plaintiff's account with the fund transfer. It is undisputed that the 19 million dollars was

53

placed by UBS AG in an account and coded escrow. (bottom of Exh. 16)  Clive Standish admitted (a vicarious admission) that the 19 million dollars is a special deposit when he said in Exh. 51.1, last paragraph as follows: "Your demand for an interest of  10% is not feasible as you already know that the US$19.0M is a special deposit...."  The failure to deliver the funds in escrow is likewise a breach of the escrow laws of California concurrently applicable to Exhibit 16. [10]

        g) UBS AG failed to issue a payment order on the execution date May 5, 2006 or simply to deliver the funds by telegraphic means under the contract Exhibit 15 and 16 on May 5, 2006 after UBS AG acknowledge receipt of the credit remittance of 19 million dollars in account coded escrow. Exhibit 15 and 16 is a simple contract binding on both Standard Trust Bank PLC and UBS AG concurrently applicable with the California    Uniform Commercial Code and Escrow Laws of California. Exhibit 15 and 16 satisfy the elements of a contract, namely: (1) parties capable of contracting, (2) Their consent,   (3) lawful object, (4) a sufficient cause of consideration.   (Witkin, Summary of California Law, Contracts, 10th ed., [2005], page 4)which is  binding on both parties. Since, the

---

[10]     An escrow holder bears a fiduciary relationship to each of the parties to the escrow. (Amen v. Merced County Title Co., 58 Cal. 2d 528, 534; Garton v. Title Ins. & Trust Co., 106 Cal. App. 3d 365, 381' [1980];   Kirk Corp. v. First American Title Co. 220 Cal. App. 3d 785, 806;[ 1990]; Nguyen v. Calhoun, 105 Cal. App/ 4th 428, 442 at foonote [2003]) In this case the escrow account is a special deposit. (Burket v. Bank of Hollywood  (1937) 9 C2d 113, 116; 62 P2d 421)  In a special deposit the fund is a trust fund.  The bank acquires no title thereto and is a mere trustee for the safekeeping return or disbursement of the fund, according to the special contract by which it is made. (Van de Kamp v. Bank of America [1988] 204 Cal App 3d 819, 858;)  A special deposit being a trust fund, creates a fiduciary relationship with the plaintiff as beneficiary and UBS as depositary trustee. Failure to perform by delivering the money is a betrayal of a confidence and violation of a trust constituting constructive fraud, which equity will remedy.  (Brison v. Brison (1891) 90 Cal 323, 336; 27 P 186; Rheingans v. Smith (1911) 161 Cal. 362, 366; 119 P. 494; Lauriceella v. Lauricella, (1911) 161 Cal  61, 65)  A breach of fiduciary duty is considered fraud. (Van de Kamp v. Bank of America, *supra,* at p. 854; Crocker-Anglo Nat. Bank v. Kuchman [1964] 224 Cal. App. 2d 490,494))

contract is for the benefit of the plaintiff, the latter can enforce the contract as against UBS as plaintiff is enforcing it now. (§1559, California Civil Code) As to parties, both UBS AG and Standard Trust Bank are both capable of contracting. As to the consent, of both parties freely gave their consent to the formation of the contract. As to lawful object of the contract, the transfer of funds is a lawful object. As to consideration, UBS AG is free to deduct the consideration of more or less $40 from the fund transfer as it did allegedly deduct $20.60 from plaintiff's $51,000 when it allegedly transferred the plaintiff's $51,000 to Hongkong and Shanghai Bank, a fact disputed by plaintiff in this complaint. (UBS AG' Answer to plaintiff's 2nd Amended Complaint, paragraph 9, line 16). UBS AG may bill Standard Trust Bank for its fee to transfer the 19 million dollars to plaintiff's account at Washington Mutual Bank, now Chase or bill plaintiff for that fee and plaintiff would have paid it willingly. Plaintiff has/had no objection for UBS AG to deduct its fee from the 19 million dollars for making the fund transfer. In fact, plaintiff authorized UBS AG to deduct the  $76,000 fee for the payment of the Anti-Drug/Terrorist Clearance Certificate. (Exhibit 27, paragraph 1). Plaintiff and defendants agreed in this case that California Laws apply to plaintiff's claims. (Docket 33, page 2, line 5)

2. Plaintiff is the beneficiary of the payment order, and then had and now has the right to be paid in the full amount of the payment order, $19,000,000. Plaintiff became the beneficiary when on April 2, 2006 (Exhibit 21) plaintiff and Mrs. Faith Muhammed, prior to her death, entered into a. contract whereby plaintiff will be the beneficiary of the account of Mr. Jubril Muhammed, husband of Mrs. Faith Muhammed,  in consideration of executing the wishes of Mrs. Faith Muhammed of disbursing 70% of $19 million dollars as donations to religious and charitable projects with the remaining 30% to be plaintiff's compensation;

5. The contract under paragraph 2 above was submitted to Standard Trust Bank PLC of Lagos, Nigeria,  to release  the money to the plaintiff.  Upon payment of $600 activation fee  and transfer fee of $3800; computed at 2% per

SHORT TITLE                                    CASE   NUMBER
Carl L. Jimena v. UBS AG Bank, et. al.


  Second    CAUSE OF ACTION --Payment of $19,000,000    Page_2__
  (number)
Obligation of Receiving Bank California Uniform Commercial Code §11302,
§11212. §11103


million, on April 28, 2006, Standard Trust Bank PLC paid the plaintiff issuing a
payment order/slip (Annexes 15, 16, 11) to him for $19 million dollars. On the
same date, April 28, 2006 without prior notice, authorization,  consent or
subsequent ratification of the plaintiff on or as to the choice of intermediary bank,
Standard Trust Bank PLC. transferred the funds to plaintiff's account at
Washington Mutual Bank, Lancaster City, California, thru defendant
correspondent bank UBS AG Bank of Zurich, Switzerland (Tracer, Annex 16)
under  contract with the latter bank for the benefit of the plaintiff to deliver the 19
million dollars to the above Washington Mutual Bank or in accordance with
Standard Trust Bank's (PLC) instruction issue its payment order  to be transmitted
telegraphically or via computer on the execution date May 5, 2006 to Washington
Mutual Bank, now Chase, for 19 million dollars to be credited to plaintiff's
account at the latter bank which UBS AG failed to do. Plaintiff was notified of the
fund transfer. (Annex 11) on the same date of transfer but it was too late for the
plaintiff to stop the transfer for the purpose of choosing a good correspondent
bank because the transfer was already made. With the payment of the  19 million
dollars to plaintiff as shown by Annexes 15, 16, 11 title  to the funds was already
with the plaintiff and UBS AG Bank is obligated to transfer or credit without delay
to plaintiff's account at Washington :Mutual Bank,  Lancaster City, California
after a 96 sleep hours the expiration of which  falls on midnight of May 4, 2006.
On  May 5, 2006, the execution date, the funds did not reach plaintiff's account at
Washington Mutual Bank as a result of breach of the payment order by defendant

UBS AG Bank by failing to deliver the funds as instructed by Standard Trust Bank PLC by issuing its payment order to Washington Mutual Bank, now Chase for credit to plaintiff's account. . Defendant UBS AG Bank instead of complying with the instructions of Standard Trust Bank PLC , fraudulently and deceitfully required the plaintiff to pay beginning May 4, (Exhibit 26.2, paragraph) the non-existing Anti-Drug/Terrorist Clearance Certificate fee, a condition not found in the payment order Exhibit 15 and as accepted in Exhibit 16.

6. Plaintiff paid the $76,000 fee mentioned above, not knowing at the time of payment that it is a non-existing fee for Anti-Drug/Terrorist Clearance Certificate and is recovering it under the first cause of action showing that the plaintiff is acting in good faith whereas the defendant UBS AG Bank is not acting in good faith by not issuing its payment order on the execution date, May 5, 2006 to Washington Mutual Bank, now chase to be credited to plaintiff's account or otherwise transferring   by the most expeditious means the $19,000,000 to Washington Mutual Bank, now Chase, to be credited to plaintiff's bank account as promised several times by defendant UBS AG Bank also alleged under the first cause of action. Instead of complying with its many promises, defendant UBS AG Bank again demanded and required plaintiff to pay the non-existing marginal fluctuation deficit in the amount of $21,780 which according to defendant has grown to $88,450. Marginal fluctuation deficit is not due on the $19,000,000 which defendant has placed on special deposit because by the nature of a special deposit it is a trust fund,   the defendant bank being a trustee and bailee, and defendant UBS AG Bank is required to keep on hand at all times cash equivalent to the original deposit of $19,000,000 which the bank is not authorized to use in its general banking business. Subjecting the $19,000,000 special deposit to marginal fluctuation deficit would mean keeping cash not equivalent to the original deposit and delivering to the beneficiary plaintiff less than the equivalent deposit. Hence, this Court should disregard defendants marginal fluctuation deposit charges on the special deposit of $19,000,000 made by defendant as not due. Defendant UBS AG

57

Bank as a mere intermediary bank must comply with the instruction of Standard Trust Bank PLC ;pursuant to the Uniform Commercial Code of California and not impose -unauthorized/fraudulent/deceitful conditions not found in the payment order  contrary to the same Uniform Commercial Code of California.  Further, UBS AG cannot charge marginal fluctuation deficit since after it failed to issue its payment order on May 5, 2006 to Washington Mutual Bank for credit to plaintiff's account, UBS AG became an unauthorized,  wrongful , illegal holder of the account coded escrow in Exhibit 16 from May 6, 2006 up to now for the reason that UBS AG's authority under the contract Exhibit 15 and 16  to hold the account coded escrow is only for 96 hours after which time UBS AG is an involuntary trustee of the account coded escrow for the benefit of the plaintiff imposed by California Civil Code §2223 based  on the fact that UBS AG has been illegally detaining the account coded escrow.  UBS AG had only one day to execute the payment order and it failed to do it.  Thereafter, each day of failure to deliver is a breach of trust and confidence under the same §2223 of California Civil Code constituting recidivism entitling plaintiff to triple punitive damages and triple legal rate of interest for constructive fraud.

7.  Payment to plaintiff on the payment order was due from defendant UBS AG on May 5, 2006, the execution date, but the defendant UBS AG failed to comply with the payment order instructions it had accepted under circumstances already alleged in the preceding paragraphs;

8.   Plaintiff made a written demand on defendant for payment of the amount due on the payment order of $19,000,000 plus $76,000 as alleged under the first cause of action and interest on them; (Exhibit 17, July 14, 2006 plaintiff's demand)

9.  Defendants also received from plaintiff written notice of the particular circumstances that would give rise to consequential damages to plaintiff as a result of nonpayment.

10. On the date payment was due, defendant refused, and has continued to and still does refuse, to pay plaintiff the amount owing from the payment order, or any part of this amount including the $76,000 due for refund to plaintiff as alleged in paragraph 6 above The amount of the order is now due and owing to plaintiff..

11. As a direct and proximate result of defendant's refusal to pay plaintiff the amount due on the payment order, plaintiff has suffered the following damages: a) loss of interest which is the subject of the 4th cause of action; b) same damages alleged in paragraph 4 and 5, FR-6, First Cause of Action and other consequential damages unknown up to the filing of the complaint; c) had plaintiff received the fund payment, he could have deposited his own share into a time deposit and could have earned interest

1 2. Equitable Estoppel. Plaintiff alleges that UBS AG and Clive Standish are estopped to assert that plaintiff is dealing with an impostor, that Standard Trust Bank PLC never wired 19 million dollars to UBS AG and that UBS AG never received 19 million dollars from Standard Trust Bank PLC.

"Under California Law, the elements of equitable estoppel are (1) the party to estopped must be apprised of the facts, (2) [the party to be estopped] must intend that his conduct shall be relied upon, or must so act that the party asserting the estoppel had a right to believe it was so intended (3) the [party asserting the estoppel] must be ignorant of the true state of facts, and (4) [the party asserting the estoppel] must rely upon the conduct to his injury." Granite State Ins. Co. v. Smart Modular Techs., Inc., 76 F. 3d 1023, 1026 (9th Cir 1996) citing the case of Driscoll v. City of Los Angeles, 431 P. 2d. 245, 250 (1967)

### 1) The party to be estopped must be apprised of the facts

Clive Standish, in behalf of UBS AG, fully knows from beginning to end that UBS AG has 19 million dollars to pay or wire transfer. In Exh. 25, paragraph 1, the very first email of Clive Standish to plaintiff, which is an admission of liability, stated as follows:

We wish to officially write to inform you that the Union Bank of Switzerland has received instructions from the Standard Trust Bank Plc., Lagos, Nigeria to credit without delay the sum of US$19,000,000.00 (Nineteen Million

59

United States Dollars) only to your account at the Washington Mutual Bank. We are now set to credit the above sum to your bank account details as shown below:"

Clive Standish and UBS AG are fully aware of the undisputed facts, all admissions of liability, stated by plaintiff in paragraph 18, (a) to (j) of his affidavit in support of entry of default and default judgment which are incorporated hereof by reference and forms an integral part of this Third Amended Complaint. On account of its length, plaintiff beg leave to incorporate them by reference. Clive Standish and UBS AG are fully apprised of the facts.

### 2) The party to be estopped must intend that his conduct shall be relied upon, or must so act that the party asserting the estoppel had a right to believe it was so intended

Clive Standish and UBS AG made numerous promises to wire transfer the 19 million dollars immediately after plaintiff pays the $51,000 balance to complete the total fee of $76,000 for Anti-Drug/Terrorist Clearance Certificate as (FR-4a, paragraph (a)(1 and 2)(a to g) are incorporated hereof by reference as part of this allegation and stated by plaintiff in his affidavit in support of entry of default and default judgment, paragraph 21(c), page 18, line 1-28 thereof which are incorporated hereof by reference and forms an integral part of this Third Amended Complaint. Plaintiff on account of its length beg leave to make incorporation by reference. In addition to those promises, Clive Standish said in Exh. 48.1, line 19 from the bottom, as follows:

"Mr. Jimena, I have looked at the whole transaction realistically and I have also put myself in your shoes and I can understand how you are feeling. No right thinking person will be happy after paying USD51,000 for more than two without the payment being cited and the transaction for which the payment was made being concluded. I really feel for you and I wish to personally inform you that I will do everything possible within my limit to track this payment and to see that this transaction is concluded this week....."

Clive Standish reinforced his promises with the intention that plaintiff rely on them by stating in Exh. 29.1, paragraph 1 assuring the plaintiff that there is no

fraud in this transaction and that the demand for $76,000 fee for Anti-Drug/Terrorist Certificate is genuine. To quote Clive Standish:

"The UBS is aware that Nigerians commit a lot frauds but we wish to inform you that your transaction is not fraudulent despite attempts made by Barrister Ademola Adeshina to divert the funds to an account in Holland. The Police and the officials of the Union Bank of California informed you that this transaction is fraudulent based on what they have heard about Nigerians but not based on this particular transaction."

Clive Standish continued in paragraph 4 or 19th line from the bottom of the same Exh. 29.1 as follows:

"The demand for Anti Drug/Terrorist Clearance is genuine...."

### 3)    The party asserting the estoppel must be ignorant of the true state of facts

Plaintiff was ignorant of the fact that there is no fee for Anti-Drug/Terrorist Clearance Certificate until he was informed by an email of APGML on July 21, 2007 (Annex 10 to amended complaint, now marked as Exhibit 10) telling the plaintiff the Financial Action Task Force charges no fee for the Anti Drug/Terrorist Clearance Certificate. The best proof that the Anti-Drug/Terrorist Clearance Certificate fee is non-existent is the fact that after plaintiff paid the $51,000 on June 14, 2006 (Exhibit 18).to UBS AG, Clive Standish and UBS AG never sent plaintiff a copy of that Anti-Drug/Terrorist Clearance Certificate which should have been sent to plaintiff within two weeks after payment or within a reasonable time after payment.

### 4)    The party asserting the estoppel must rely upon the conduct to his injury.

Plaintiff relied on the promises and representations of Clive Standish by paying the $51,000 balance for Anti-Drug/Terrorist Clearance Certificate fee. (Exh. 20, par. 1 or Annex 20, par. 1 to amended complaint.) Plaintiff was prejudiced by paying $51,000 for a non-existing fee (Exh. 10 of plaintiff). and

then there was no wire transfer of the 19 million dollars. As already stated above, the best proof of the non-existence of the Anti-Drug/Terrorist Cleance Certificate is that Clive Standish and UBS AG never sent a copy of it within two weeks from payment or within a reasonable time after payment.

WHEREFORE,    subject to the prayer at the end of this complaint, defendants be ordered to pay plaintiff $19,000,000, with triple punitive damages and  triple 10% legal rate of  interest per year equivalent to 30%  per year from May 6, 2006 until paid and for damages as prayed for  at the end of this complaint, costs and other relief as the Jury may deem just and equitable.


            Third      CAUSE OF ACTION ----Intentional Tort, Fraud
        Attachment to    X    Complaint            Cross-Complaint

        (Use a separate cause of action form for each cause of action)
[Plaintiff and defendants  agreed that "The parties agree that California law applies to plaintiff's claims". (Doc. 33, p. 2, line 5-6) In California the law is "when breach of contract also constitute a tort, (here the breach of fund transfer is to demand the non-existing fee for Anti-Drug/Terrorist Clearance Certificate which is the tort of fraud plus the other fraud alleged in FR-2a and FR-2b combined in the First Cause of Action)  the injured party may recover for mental suffering.[34]" (23 Cal Jur [Rev] 173-174 citing Crisci v. Security Ins. Co. of New Haven, Conn. [1967] 66 Cal. 2d 425, 58 Cal. Rptr. 13) In the latter case the California Supreme Court speaking of a breach of contract which is a tort said: "We are satisfied that a plaintiff who as a result of a defendant's tortious conduct loses his property and suffers mental distress may recover not only for pecuniary loss (166 Cal. 2d 434) but also for his mental distress." (at 435). The elements of a prima facie case of intentional infliction of emotional distress in California are (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's

suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. Tekle ex rel. Tekle v. U.S., 457 F.3d 1088, 1103 (9th Cir. 2006) ]

It-1  (a) Plaintiff (name): Carl L. Jimena  alleges that defendants (name): <u>Clive Standish, UBS AG Bank Head Office  and all the rest of the above captioned- named defendants on imputed liability committed on the various dates alleged in FR-2a and FR-2b hereof, paragraph 1 to 8; conduct alleged in FR-3a hereof; conduct alleged in FR-4a hereof; conduct alleged in FR-5, extreme and outrageous conduct  with the intention of causing or reckless disregard of the probability of causing emotional distress comprising of the following acts: conduct alleged  in attachment  FR-2a and FR-2b hereof, paragraph 1 to 8; conduct alleged in FR-3a hereof; conduct alleged in FR-4a hereof; conduct alleged in FR-5 which are all incorporated by reference and forms an integral part of this third cause of action (b)  As a result of the same defendants extreme and outrageous conduct alleged ,in  the preceding It-1(a), plaintiff suffered severe emotional distress comprising of mental suffering, specifically  nervousness, grief, anxiety, worry, shock, indignity, , humiliation (Crisci v. Security Ins. Co. of New Haven, Conn. [1967] 66 Cal. 2d 425),sleepless nights, physical pain  of headache, causing his blood pressure to rise, loss of appetite, mental anguish, mental or emotional distress and other psychological damage, , whenever he thinks of this fraudulent case, to which plaintiff is entitled to damages in an amount assessed by the Jury but no less than one million dollars which plaintiff will donate, as it is hereby donated, to charity  of  his choice after its collection. (c) The facts alleged in It(a) above were the actual and proximate causation of the emotional distress suffered by plaintiff in It-(b) above due to the defendant's outrageous conduct.</u>

<u>      Plaintiff further alleges in particular that  Clive Standish and UBS AG's demand for the non-existing Anti-Drug/Terrorist Clearance Certificate fee the first time on May 4, 2006 –(Exhibit 26.2 beginning with paragraph 3) and in the</u>

subsequent specific dates thereafter as alleged in FR-2a and FR-2b, paragraph 1, which is within the 96 sleep hours in the contract Exhibit 15 and 16 constitute breach of the contract which is a tort of fraud since the payment order contains no conditions except as to time of payment, the execution date being May 5, 2006 as stated in Exhibit 15. Clive Standish and UBS AG's demand for marginal fluctuation deficit on the dates specifically in FR-2a and FR-2b, paragraph 2, 3, and 6, were likewise breaches of the contract which were torts of fraud , are enough basis for an award for mental distress. In fact, all the fraud allegations in the first cause of action are breaches of the contract that constitute torts of fraud. Those are the complete basis for an award for damages for mental suffering in favor of the plaintiff as enumerated above.

____Fourth____    CAUSE OF ACTION ----Interest as Damages
Attachment to   X   Complaint        Cross-Complaint

*(Use a separate cause of action form for each cause of action)*

1. Plaintiff (name): Carl L. Jimena

   alleges that defendants (name): UBS AG Bank,  Clive Standish and all the rest of the captioned-named defendants on imputed liability on or about (date):  beginning May 6, 2006 and other dates thereafter as specified below, defendants are liable to plaintiff for interest as damages.

2. The factual basis for interest are based on the following allegations:

   a) Plaintiff hereby incorporates by reference and forms an integral part of this Fourth Cause of Action his fraud allegations particularly in paragraph 1,  FR-2a and FR-2b (combined), First Cause of Action and as further stated in the subsequent paragraphs thereof up to the last paragraph of the First Cause of Action containing all the

elements of fraud. and deceit, basically multiple fraud both actual and constructive, recidivism, conversion.

b) As alleged under the First Cause of Action, plaintiff paid a total of $76,000 under fraudulent circumstances (§3288, .California Civil Code) which includes the $25,000 paid in behalf of the plaintiff by Ralph Nwadike subjecting defendants to pay treble 10% legal rate of

(continued)

Form Approved by the        4th cause of action -- Interest as Damages    American LegalNet.Inc.
___Fourth___            CAUSE OF ACTION ----Interest as Damages
       Attachment to   X      Complaint            Cross-Complaint

interest [§3289(b) California Civil Code] equivalent to 30% legal rate of interest per annum. The $51,000 paid by plaintiff should bear legal interest of 30%  per annum at $41.91  per day from June 14, 2006 when it was paid until it is actually paid and the $25,000 paid by Ralph Nwadike in behalf of the plaintiff should also bear treble legal rate of interest at $20.60  per day from the time it was paid on May 15, 2006 until it is actually paid   The presence of fraud, multiple fraud both actual and constructive, recidivism, oppression, malice or bad faith in this case makes applicable §3288 of the California Civil Code in relation to §3289(b). at treble legal rate of interest.

c) Defendants are obligated to pay treble legal interest on the $19 million dollars under California Uniform Commercial Code, §11506 [Art. 4A-506(b) Uniform Commercial Code] but the rate of interest under the latter code is rendered inapplicable due to the presence of fraud, multiple fraud, recidivism, oppression, malice, conversion  as alleged under the First Cause of Action.  Hence, defendants are

obligated to pay from the time of the breach on May 6, 2006, until paid, treble 10% legal rate of interest equivalent to 30% total legal rate of interest per annum §3289(b), California Civil Code governing interest on fraud in relation to §3288, California Civil Code providing for legal rate of interest at 10% per annum.

d). Defendants are liable for interest due to delay being caused by defendants fraudulent charging for Anti-Drug/Terrorist Clearance Certificate and fraudulent charging of marginal fluctuation deficit;

e) Defendants are liable to plaintiff for interest in delaying the execution of the payment order (Annex 15 and 16) in accordance with the instructions of Standard Trust Bank PLC, the originator's bank or sender of the funds. (California Uniform Commercial Code § 11305 (a). *and for illegally detaining the account coded escrow from May 6, 2006 to present.*.

## COMBINED RELIEF/PRAYER ON ALL CAUSES OF ACTION

WHEREFORE, plaintiff prays that judgment be rendered against all five defendants named in the above caption of this case, and specifically identified under the heading "Parties" of the allegations common to all causes of action in this third amended complaint , jointly and severally liable to plaintiff as follows:

1. All named defendants, jointly and severally be ordered to refund to plaintiff $76,000 with treble 10% legal rate of interest which is equivalent to 30% per annum as damages for delay; fraud, multiple fraud, recidivism, oppression, malice or bad faith broken into two parts as follows:   $51,000 paid by plaintiff to bear interest at $13.97 per day legal rate of interest multiplied by three equals $41.91 per day which is from June 14, 2006 until paid; and $25,000 paid by Ralph Nwadike in behalf of the plaintiff to bear treble 10% legal interest of $6.85

per day_ multiplied by three equals $20.55 per day from May 15, 2006 until it is paid back. The most defiant attitude of defendants to payback the $76,000 without justifiable reason and on the basis of fraud, multiple fraud, recidivism, bad faith, conversion, oppression, malice entitles plaintiff to another additional award of treble punitive damages of $76,000 equivalent to $228,000 by way of punitive damages .

2. All caption-named defendants, jointly and severally, be ordered to pay the $19 million dollars to plaintiff's account at Washington Mutual Bank, now Chase, Account No. 3976467213 Routing No. 322271627 with treble 10% legal rate of interest (10% per annum times 3 equals 30%) as damages for delay,fraud, multiple fraud, recidivism, conversion, oppression, malice, or bad faith amounting to $5,205.00 per day multiplied by three equals $15,615.00 per day from May 6, 2006, the day after May 5, 2006 the date UBS AG failed to execute the payment order Exhibit 15 up to the time of actual payment..

3. Plaintiff be awarded damages under the third cause of action in the amount of no less than one million dollars (an amount not even commensurate with the amount involved in this case) to be donated by plaintiff, as it is hereby donated, to charities of his choice after collection.

4. Plaintiff be awarded .against all named defendants, jointly and severally, to pay plaintiff treble punitive damages (19 million dollars times 3) equivalent to 57 million dollars for defendants vehement refusal on the basis of fraud, oppression, malice or bad faith, recidivism, multiple fraud, conversion, to issue a payment order to plaintiff's account at Washington Mutual Bank, now Chase, or any expeditious means to pay the 19 million dollars to plaintiff's account at Washington Mutual Bank, now Chase, in California, USA;

5. Plaintiff be awarded damages for being deprived of exercising his rights and obligations under his trusteeship agreement since plaintiff was deprived of the use of his share under that trusteeship agreement in an amount that cannot be estimated and the amount of damages is left to the discretion of the Jury.

6. Plaintiff be awarded $10,000 for the loss he suffered from the forced sale of his lot for $20,000 which has an estimated market value of $30,000 in order to payoff $6,000 owed to Bank of America with legal rate of interest from the time of the loss at the date of sale of the parcel of land which is the date of closing escrow. Also, plaintiff be awarded $29,000 for writing the initial implementation program of Mrs.Faith Muhammed's religious and charitable projects and for other projects to be written.

7. Plaintiff requests that defendants be held liable for conversion of the 19 million dollars and this is an additional legal basis for the liability of defendants to pay the 19 million dollars. In particular, plaintiff pray that the conversion, being also an act of malice and oppression committed by UBS AG and Clive Standish be made as a additional basis for finding UBS AG liable for treble punitive damages and treble legal rate of interest

8. Claims and counterclaims:. Based on the evidence of this case and the applicable law, plaintiff prays that the Court offset the claims of the parties against each other, if there are any on the part of UBS AG, and inasmuch as defendant's claim is a tiny drop in the bucket which is not a legal reason to withhold the 19 million dollars from the plaintiff, judgment be rendered in favor of the plaintiff by ordering the defendants immediately to pay the balance to plaintiff's account with Washington Mutual Bank under the account number in prayer no. 2 above.

9. Plaintiff be awarded court costs, attorneys fees and other expenses in this case. Other equitable relief is prayed for as may be just and equitable under the premises.

Date: June 12, 2009

Carl L. Jimena

CARL L. JIMENA

Plaintiff, In Propia Persona

# Civil Name Search Results

**69 Total Party matches for selection UBS AG after 12/13/2006 for New York Southern**

**Search Complete**
**Sat May 30 21:42:12 2009**
**Selections 1 through 54 (Page 1)**

*EXHIBIT 76*


Download (2 pages $ 0.08)

Next 15
Next 15

| | Name | Court | Case No. | Filed | NOS | Closed |
|---|---|---|---|---|---|---|
| 1 | UBS AG | nysdce | 1:2007cv00049 | 01/04/2007 | 120 | 01/29/2007 |
| 2 | UBS AG | nysdce | 1:2007cv00241 | 01/11/2007 | 850 | 04/24/2007 |
| 3 | UBS AG | nysdce | 1:2008cv00859 | 01/24/2008 | 290 | 08/22/2008 |
| 4 | UBS AG | nysdce | 1:2009cv00893 | 01/30/2009 | 850 | |
| 5 | UBS AG | nysdce | 1:2008cv00955 | 01/29/2008 | 190 | |
| 6 | UBS AG | nysdce | 1:2009cv01196 | 02/10/2009 | 410 | 02/17/2009 |
| 7 | UBS AG | nysdce | 1:2008md01950 | 06/18/2008 | 410 | |
| 8 | UBS AG | nysdce | 1:2007cv02020 | 03/09/2007 | 120 | 09/26/2007 |
| 9 | UBS AG | nysdce | 1:2009cv02046 | 03/06/2009 | 190 | |
| 10 | UBS AG | nysdce | 1:2009cv02191 | 03/10/2009 | 850 | |
| 11 | UBS AG | nysdce | 1:2008cv02233 | 03/06/2008 | 850 | |
| 12 | UBS AG | nysdce | 1:2007cv02252 | 03/15/2007 | 850 | |
| 13 | UBS AG | nysdce | 1:2008cv02516 | 03/13/2008 | 410 | |
| 14 | UBS AG | nysdce | 1:2008cv02516 | 03/13/2008 | 410 | |
| 15 | UBS AG | nysdce | 1:2008cv02753 | 12/19/2008 | 890 | 01/26/2009 |
| 16 | UBS AG | nysdce | 1:2007cv02799 | 04/06/2007 | 190 | |
| 17 | UBS AG | nysdce | 1:2007cv02799 | 04/06/2007 | 190 | |
| 18 | UBS AG | nysdce | 1:2008cv02967 | 05/08/2009 | 850 | |
| 19 | UBS AG | nysdce | 1:2008cv03002 | 03/24/2008 | 410 | 06/23/2008 |
| 20 | UBS AG | nysdce | 1:2008cv03082 | 03/26/2008 | 850 | 03/30/2009 |
| 21 | UBS AG | nysdce | 1:2009cv03261 | 04/06/2009 | 190 | |
| 22 | UBS AG | nysdce | 1:2008cv03692 | 04/17/2008 | 190 | 06/10/2008 |
| 23 | UBS AG | nysdce | 1:2007cv03700 | 05/10/2007 | 190 | 10/17/2008 |
| 24 | UBS AG | nysdce | 1:2007cv03701 | 05/10/2007 | 190 | 01/18/2008 |

25 UBS AG nysdce 1:2007cv03702 05/10/2007 190 01/15/2008
26 UBS AG nysdce 1:2009cv03798 04/15/2009 190
27 UBS AG nysdce 1:2007cv03994 05/22/2007 850 02/25/2009
28 UBS AG nysdce 1:2007cv04046 05/23/2007 850 02/25/2009
29 UBS AG nysdce 1:2007cv04144 05/29/2007 850 02/25/2009
30 UBS AG nysdce 1:2009cv04286 05/01/2009 190
31 UBS AG nysdce 1:2008cv04352 05/08/2008 850 03/30/2009
32 UBS AG nysdce 1:2008cv04414 05/09/2008 890
33 UBS AG nysdce 1:2007cv04719 06/04/2007 850 02/25/2009
34 UBS AG nysdce 1:2007cv04727 06/04/2007 850 02/25/2009
35 UBS AG nysdce 1:2007cv04815 06/06/2007 190
36 UBS AG nysdce 1:2008cv05251 06/09/2008 850 03/30/2009
37 UBS AG nysdce 1:2007cv05450 06/08/2007 190 04/23/2009
38 UBS AG nysdce 1:2007cv05450 06/08/2007 190 04/23/2009
39 UBS AG nysdce 1:2008cv05492 06/18/2008 410 06/23/2008
40 UBS AG nysdce 1:2008cv06142 07/03/2008 410 07/15/2008
41 UBS AG nysdce 1:2007cv06145 06/29/2007 850 02/25/2009
42 UBS AG nysdce 1:2008cv06304 07/14/2008 410 07/21/2008
43 UBS AG nysdce 1:2008cv06342 07/15/2008 410 07/21/2008
44 UBS AG nysdce 1:2007cv06492 07/18/2007 190 05/21/2008
45 UBS AG nysdce 1:2008cv06696 07/28/2008 791
46 UBS AG nysdce 1:2008cv06696 07/28/2008 791
47 UBS AG nysdce 1:2008cv06868 07/31/2008 791
48 UBS AG nysdce 1:2008cv07161 08/11/2008 190
49 UBS AG nysdce 1:2008cv07161 08/11/2008 190
50 UBS AG nysdce 1:2007cv07462 08/22/2007 380 03/07/2008
51 UBS AG nysdce 1:2007cv07462 08/22/2007 380 03/07/2008
52 UBS AG nysdce 1:2007cv07462 08/22/2007 380 03/07/2008
53 UBS AG nysdce 1:2008cv07606 08/28/2008 791
54 UBS AG nysdce 1:2008cv07746 09/04/2008 410

4· Next 15
Next 15

| PACER Service Center |
| --- |
| Transaction Receipt |
| 05/30/2009 21:42:12 |
| |