1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT FOR THE

7                    EASTERN DISTRICT OF CALIFORNIA

8

9    CARL L. JIMENA,                  )      No. CV-F-07-367 OWW/SKO
                                       )
10                                     )      MEMORANDUM DECISION AND
                                       )      ORDER DENYING PLAINTIFF'S
11               Plaintiff,            )      MOTION TO SERVE SUMMONS AND
                                       )      THIRD AMENDED COMPLAINT TO
12          vs.                        )      CLIVE STANDISH'S ATTORNEY
                                       )      WITHOUT PREJUDICE (Doc. 157)
13                                     )
     UBS AG BANK, et al.,              )
14                                     )
                                       )
15               Defendants.           )
                                       )
16   _____ )

17        Plaintiff Carl L. Jimena, proceeding *in pro per*, has filed a

18   motion to serve a summons and the Third Amended Complaint on

19   Suhana S. Han, Sullivan & Cromwell, New York City, who Plaintiff

20   asserts "represents Clive Standish in the United States District

21   Court for the Southern District of New York, Civil Case No. 07 CV

22   11225 (RHS) ECF case together with the other defendants UBS AG,

23   Peter S. Wuffli, David S. Martin."

24        After the motion was filed and noticed for hearing,

25   Plaintiff filed a "Notice of Letter Received from Clive Standish

26   Attorney."  (Doc. 177).  In this letter dated November 2, 2009,

                                       1

Suhana S. Han states:

> I am in receipt of your letters dated October 13 and October 19, 2009. Even if these letters and their enclosed documents were sufficient to effect proper service on Mr. Clive Standish in the above-captioned action, I neither represent Mr. Standish nor am authorized to accept service on his behalf in that action. In light of this, please withdraw your 'Motion to Serve Summons and 3rd Amended Complaint to Clive Standish's Attorney.'
>
> Along with this letter, I am returning your letters and the enclosed documents.

UBS AG opposes this motion. Submitted with its opposition is the Declaration of Suhana S. Han:

> 1. I am an attorney and a member of Sullivan & Cromwell LLP. and am admitted to practice in Massachusetts, New York, the United States District Courts for the Southern and Eastern Districts of New York, the United States Courts of Appeal for the Second and Eleventh Circuits, and the United States Supreme Court. I have personal knowledge of the matters set forth herein, and if called, could and would competently testify thereto, under oath. This declaration is submitted in support of UBS AG's Response to Plaintiff's 'Motion to Serve Summons and Complaint [sic] to Clive Standish [sic] Attorney.'
>
> 2. I received by priority U.S. mail the following documents from Carl L. Jimena dated October 5, 2009: (i) a 'Notice of Motion, Motion to Serve Summons and 3rd Amended Complaint to Clive Standish's Attorney'; and (ii) a 'Motion to Serve Summons and 3rd Amended Complaint to Clive Standish's Attorney'; and (iii) 'Memorandum of Law on Motion to Serve Summons and 3rd Amended Complaint to Clive Standish Attorney.'
>
> 3. I also received by priority U.S. mail a document from Mr. Jimena dated October 16, 2009 and entitled 'Notice of Errata,' which included as an exhibit a notice of appearance

2

that I filed for Mr. Standish in *In re UBS Securities Litigation*, No. 07 CV 11225 (RJS)(S.D.N.Y.).  Neither set of documents that I received from Mr. Jimena contained a complaint.

4.  I, along with other lawyers at Sullivan & Cromwell LLP, represent UBS AG in *In re UBS Securities Litigation*, a putative securities fraud class action concerning UBS's portfolio of mortgage-backed and auction rate securities and its U.S. cross-border business.  In connection with that case, I have filed notices of appearance on behalf of numerous current and former UBS AG directors and officers who were named as individual defendants, including Mr. Standish.

5.  Thus, while I do represent Mr. Standish in a case pending in the Southern District of New York, neither I nor any lawyer from Sullivan & Cromwell LLP representing UBS AG in *In re UBS Securities Litigation* represents or is authorized to accept service on behalf of Mr. Standish in the *Jimena* litigation. Indeed, I have never communicated with Mr. Standish about this lawsuit or any other matter.

In opposing this motion, UBS AG acknowledges that its counsel does not represent Clive Standish in this litigation, but "provides this response to Plaintiff's motion because of UBS AG's interest in the speedy resolution of this frivolous case, which has already dragged on for nearly three years and has unnecessarily consumed both UBS AG's and the Court's resources."

Plaintiff objects to UBS AG's opposition to this motion, contending that it does not have standing, making UBS AG's response "a mere scrap of paper that cannot be recognized and is a scandalous matter that should be stricken under Rule 12(f) FRCP."

3

1    Plaintiff initially filed this as on August 18, 2009, as an

2  "Ex Parte Motion to Serve Summons and 3rd Amended Complaint to

3  Clive Standish's Attorney."  (Doc. 152).  By Order filed on

4  September 30, 2009, the Court ordered Plaintiff to file a notice

5  of motion, setting the motion on the Court's civil law and motion

6  calendar.  While UBS AG technically may not have standing to

7  oppose this motion, there is no prejudice to Plaintiff in

8  considering UBS AG's contentions, especially since Plaintiff

9  responds to them in his reply brief.

10    Clive Standish is named as a defendant in this action.    In

11  the Memorandum Decision and Order filed on June 8, 2007 (Doc.

12  18), the Court noted at footnote 7:

13            The third defendant in this lawsuit,
              individual defendant Clive Standish, a United
14            Kingdom citizen and Swiss resident, has not
              been served and no attorney has made an
15            appearance for him.  Plaintiff appears to
              contend that he served Mr. Standish by
16            sending an email to the Yahoo email address
              used by the impersonators who defrauded
17            plaintiff by pretending to be Mr. Standish.
              California does not provide for service by
18            email, and even if it did, such service could
              not have been effective as to the real Mr.
19            Standish, a stranger to the Yahoo email
              address used by Plaintiff.
20
      On June 25, 2007, Plaintiff filed a motion to order Yahoo,
21
   Inc. "to make a disclosure on the two email accounts you contend
22
   belong to an imposter of Clive Standish."  (Doc. 29).  In this
23
   motion, Plaintiff contended that he was dealing with the real
24
   Clive Standish and that the two email addresses,
25
   clive_standish@yahoo.com is Mr. Standish's personal email address
26

                                    4

and customerservices@privateclientssubs.cjb.net is Mr. Standish's office email.  Plaintiff asserted that he is in possession of an email from Clive Standish wherein Mr. Standish admits that these two email addresses are his and asserted that a disclosure by Yahoo, Inc. will confirm his position.  It appears from the docket that this motion was denied by Magistrate Judge Goldner by minute order filed on July 24, 2007.  (Doc. 41).

In his instant motion, Plaintiff asserts:

> 2.  On March 9, 2007 before Plaintiff had any knowledge of the notice of removal which was received on March 12, 2007, plaintiff served defendant Clive Standish three times in succession with the summons and amended complaint by email on his two email address [sic], namely: 'clive_standish@yahoo.com' his personal email address and 'customerservices@privateclientssubs.cjb.net' his office email address.  This is shown by the proof of service signed by a notary public, Salman Ejaz, attached as Annex 7 to Exhibit C of plaintiff's motion to declare notice of removal void or for remand, (Doc. 8).

> 3.  The Superior Court of California recognized the above service as valid service under California's Code of Civil Procedure, rule 410.10 ... as shown by the Register of Actions of the Superior Court of California copy attached as Exhibit G to Doc. 8, motion to declare notice of removal void.  In view of the difficulty of [sic] finding Clive Standish, plaintiff is not waiving the validity of the first service on March 9, 2007.

> 4. Plaintiff (without waiving the validity of the first service on March 9, 2007 by email as stated in paragraph two above) be authorized to serve Clive Standish's attorney ... by certified priority airmail with return receipt requested, the same manner UBS AG and UBS FS were served before.

1   Plaintiff's attempt to serve Clive Standish by email on March 9,
2   2007 occurred after the action was removed to this Court on March
3   6, 2007.

4        With regard to Plaintiff's contention that the Kern County
5   Superior Court recognized the email service of summons and
6   complaint on March 9, 2007 to the two email addresses listed by
7   Plaintiff, Exhibit G to Doc. 8 does not substantiate Plaintiff's
8   contention.   Exhibit G to Doc. 8 is a copy of a document
9   captioned "Civil Case Information - Register of Actions/Case
10  Docket" generated by the Kern County Superior Court in this
11  action prior its removal to this Court.   For the date March 14,
12  2007, the docket entry states:

13              PROOF OF SERVICE-SUMMONS/COMPLAINT
                WHAT SERVED: SUMMONS; AMENDED COMPLAINT
14              WHO SERVED: CLIVE STANDISH
                HOW SERVED: CERTIFIED
15              DATE SERVED: 3/9/07

16  Although Plaintiff argued to the Kern County Superior Court that
17  service of the summons and complaint on Clive Standish by email
18  was allowed under the law and facts, no such order from the Kern
19  County Superior Court is submitted by Plaintiff.   A docket entry
20  by an unknown individual, which docket entry does not refer to
21  email service of summons and complaint, instead stating
22  "certified," is not supportive of Plaintiff's position.   Attached
23  to Plaintiff's reply brief as Exhibit 1 is a copy of the Kern
24  County Superior Court docket.   The entry for February 5, 2007 in
25  connection with an order to show cause, which states in pertinent
26  part:

6

                    COURT DECLINES TO GRANT EX-PARTE APPLICATION
                    TO CLERK RE: REQUEST FOR SERVICE IN
                    SWITZERLAND, WITHOUT PREJUDICE.

The entry for February 22, 2007 states:

                    RULING ON: DECLARATION OF COMPLIANCE FILED
                    2/8/07

                    PARAGRAPH 5: THIS COURT CAN NOT WAIVE ANY
                    REQUIREMENTS OF THE HAGUE CONVENTION. FINAL
                    'IN VIEW ...' PARAGRAPH: THE COURT DOES NOT
                    WAIVE OBJECTIONS TO ANY SERVICE MADE IN
                    COMPLIANCE WITH APPLICABLE LAW.

     Plaintiff cites *Rio Properties, Inc. v. Rio International
Interlink,* 284 F.3d 1007 (9th Cir.2002), in support of his
contention that service of the summons and Third Amended
Complaint on Ms. Han as counsel for Clive Standish in another
civil action is appropriate.

     In *Rio Properties, Inc.*, Las Vegas hotel and casino operator
Rio Properties, Inc. (RIO) sued Rio International Interlink
(RII), a foreign internet business entity, asserting various
statutory and common law trademark infringement claims.  The
District Court entered default judgment against RII for failing
to comply with discovery orders.  RII appealed the sufficiency of
service of process, effected via email and regular mail pursuant
to Rule 4(f)(3), Federal Rules of Civil Procedure.
To initiate suit, RIO attempted to locate RII in the United
States.  RIO discovered that RII claimed an address in Miami,
Florida when it registered the allegedly infringing domain names.
However, that address housed only RII's international courier,
IEC, which was not authorized to accept service on RII's behalf.

7

1   IEC agreed, however, to forward the summons and complaint to

2   RII's Costa Rican courier.  After sending a copy of the summons

3   and complaint through IEC, RIO received a telephone call from Los

4   Angeles attorney John Carpenter, inquiring about the lawsuit.

5   Apparently, RII received the summons and complaint from IEC and

6   subsequently consulted Carpenter about how to respond.  Carpenter

7   indicated that RII provided him with a partially legible copy of

8   the complaint and asked RIO to send him a complete copy.  RIO

9   agreed to resend the complaint and, in addition, asked Carpenter

10  to accept service for RII; Carpenter declined.  Carpenter did

11  request that RIO notify him upon successful completion of service

12  of process on RII.  *Id.* at 1013.

13      RIO then investigated the possibility of serving RII in

14  Costa Rica.  RIO searched international directory databases

15  looking for RII's address in Costa Rica.  The investigator

16  learned that RII preferred communications through its email

17  address, and received "snail mail," including payment for

18  services, at the IEC address in Florida.  *Id.*

19      Unable to serve RII by conventional means, RIO filed an

20  emergency motion for alternate service of process.  RII opted not

21  to respond to RIO's motion.  The District Court granted RIO's

22  motion, and pursuant to Rule 4(h)(2) and 4(f)(3), ordered service

23  of process on RII through the mail on Carpenter and IEC and via

24  RII's email address.  *Id.*

25      Rule 4(f) provides:

26          Unless federal law provides otherwise, an

8

individual ... may be served at a place not within any judicial district of the United States:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

    (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

    (B) as the foreign authority directs in response to a letter rogatory or letter of request; or

    (C) unless prohibited by the foreign country's law, by:

        (i) delivering a copy of the summons and of the complaint to the individual personally; or

        (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

In *Rio Properties, Inc.*, the Ninth Circuit held that "service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement." 284 F.3d at 1014. "[S]o long as court-directed and not prohibited by an international agreement, service of process ordered under rule 4(f)(3) may be accomplished in contravention of the laws of the

foreign country."  *Id.*   The Ninth Circuit rejected RII's argument that Rule 4(f) creates a hierarchy of preferred methods of service of process:

> RII's interpretation would require that a party attempt service of process by those methods enumerated in rule 4(f)(2), including by diplomatic channels and letters rogatory, before petitioning the court for alternative relief under Rule 4(f)(3).  We find no support for RII's position.  No such requirement is found in the Rule's text, implied by its structure, or even hinted at in the advisory committee notes.

*Id.* at 1014-1015.  The Ninth Circuit ruled:

> Contrary to RII's assertions, RIO need not have attempted every permissible means of service of process before petitioning the court for alternative relief.  Instead, RIO needed only to demonstrate that the facts and circumstances of the present case necessitated the district court's intervention.  Thus, when RIO presented the district court with its inability to serve an elusive international defendant, striving to evade service of process, the district court properly exercised its discretionary powers to craft alternate means of service.  We expressly agree with the district court's handling of this case and its use of Rule 4(f)(3) to ensure the smooth functioning of our courts of law.

*Id.* at 1016.  The Ninth Circuit then addressed whether the method of service of process ordered by the District Court comported with constitutional notions of due process.  To meet this requirement, the method of service crafted by the district court must be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Id.*

1  The Ninth Circuit ruled that the alternate service ordered by the

2  District Court was constitutionally acceptable.   After discussing

3  service by mail on IEC, the Ninth Circuit addressed service on

4  the attorney, Carpenter, and on RII by email:

> Service upon Carpenter was also appropriate
> because he had been specifically consulted by
> RII regarding this lawsuit.  He knew of RII's
> legal positions, and it seems clear that he
> was in contact with RII in Costa Rica.
> Accordingly, service to Carpenter was
> reasonably calculated in these circumstances
> to apprise RII of the pendency of the present
> action.
>
> Finally, we turn to the district court's
> order authorizing service of process on RII
> by email at _email@betrio.com._  We acknowledge
> that we tread upon untrodden ground.  The
> parties cite no authority condoning service
> of process over the Internet or via email,
> and our own investigation has unearthed no
> decisions by the United States Courts of
> Appeals dealing with service of process by
> email and only one case anywhere in the
> federal courts.  Despite this dearth of
> authority, however, we do not labor long in
> reaching our decision.  Considering the facts
> presented by this case, we conclude not only
> that service of process by email was proper -
> this is, reasonably calculated to apprise RII
> of the pendency of the action and afford it
> an opportunity to respond - but in this case,
> it was the method of service most likely to
> reach RII.
>
> ...
>
> Although communication via email and over the
> Internet is comparatively new, such
> communication has been zealously embraced
> within the business community.  RII
> particularly has embraced the modern e-
> business model and profited immensely from
> it.  In fact, RII structured its business
> such that it could be contacted *only* via its
> email address.  RII listed no easily
> discoverable street address in the United

States or in Costa Rica.  Rather, on its
website and print media, RII designated its
email address as its preferred contact
information.

Unlike the Iranian officials in *New England
Merchants,* RII had neither an office nor a
door; it had only a computer terminal.  If
any method of communication is reasonably
calculated to provide RII with notice, surely
it is email - the method of communication
which RII utilizes and prefers.  In addition,
email was the only court-ordered method of
service aimed directly and instantly at RII,
as opposed to methods of service effected
through intermediaries like IEC and
Carpenter.  Indeed, when faced with an
international e-business scofflaw, playing
hide-and-seek with the federal court, email
may be the only means of effecting service of
process.  Certainly in this case, it was a
means reasonably calculated to apprise RII of
the pendency of the lawsuit, and the
Constitution requires nothing more.

Citing *WAWA, Inc. v. Christensen*, ... 1999 WL
557936, at *1 ... (E.D.Pa, July 29, 1999)
..., RII contends that email is never an
approved method of service under Rule 4.  We
disagree.  In *WAWA*, the plaintiff attempted
to serve the defendant via email absent a
court order.  Although RII is correct that a
plaintiff may not generally resort to email
service on his own initiative, in this case,
as in *International Telemedia Associates,*
email service was properly ordered by the
district court using its discretion under
Rule 4(f)(3).

Despite our endorsement of service of process
by email in this case, we are cognizant of
its limitations.  In most instances, there is
no way to confirm receipt of an email
message.  Limited use of electronic
signatures could present problems in
complying with the verification requirements
of Rule 4(a) and Rule 11, and system
capability problems may lead to controversies
over whether an exhibit or attachment was
actually received.  Imprecise imaging
technology may even make appending exhibits

12

> and attachments impossible.  We note,
> however, that, except for the provisions
> recently introduced into Rule 5(b), email
> service is not available absent a Rule
> 4(f)(3) court decree.  Accordingly, we leave
> it to the discretion of the district court to
> balance the limitations of email service
> against its benefits in any particular case
> ...

*Id.* at 1017-1018.

Plaintiff's request that he be allowed to serve the summons and Third Amended Complaint on Clive Standish by serving his attorney in another civil action in another district is problematic.

First, service of process on an attorney is ineffective unless the attorney has specific authority to accept service in the action.  *See Pochiro v. Prudential Ins. Co. of America,* 827 F.2d 1246, 1248-1249 (9th Cir.1987).  However, in *Forum Financial Group v. President and Fellows of Harvard College*, 199 F.R.D. 22 (D.Me.,2001), the plaintiffs brought suit against the defendants, including Jonathan Hay, an American residing in Russia, involving Hay's business dealings in Russia.  The plaintiffs moved for a court-directed service of process by certified mail to Spiegal, an attorney who had recently accepted service of process on Hay's behalf in another federal case that also involved Hay's business dealings in Russia.  The District Court addressed Spiegal's contention that service on a party through an attorney who is not authorized to accept such service is generally inappropriate because it risks adversely affecting the attorney-client relationship.  *Id.* at 24.  Acknowledging the general rule that

13

service of process on an attorney is not effective unless the attorney is authorized to accept service, the District Court ruled:

> Those cases are distinguishable, however, because they do not involve court-directed service as is requested here, but only the parties' own attempts at service without prior court authorization ... Where, as here, a party moves for court-directed service under Rule 4(f)(3), the court's decision to grant or deny the motion after careful consideration of the particular facts of the case can safeguard the attorney-client relationship against any unwarranted intrusion ... In this case, based upon the representations made at this point in the proceedings,[5] I conclude that service of process via Spiegal is appropriate given Hay's efforts to evade service in Russia and Speigal's recent acceptance of service on Hay's behalf in a case also involving Hay's business dealings in Russia ... Such service via Attorney Spiegal is likely to fulfill the due process requirement of being reasonably calculated to give Hay notice of the case and an opportunity to be heard ... Notably, Attorney Spiegal does not argue that sending service to him would fail to give Hay fair notice, nor does he assert that he is not in contact with Hay.
>
> [5]Employing local counsel in Russia, the plaintiffs have attempted to serve Hay by certified mail and by hand, at both his home and business addresses.  Chizhikova Decl. ¶ 7.  The plaintiffs' legal counsel asserts that Hay has actively evaded her efforts to serve him, id., that he is now living under an assumed name, and that she cannot find him.  Supplemental Chizhikova Decl. ¶ 4.  The plaintiffs also assert that they would be prejudiced if forced to attempt to serve Hay by letter rogatory because the attempt would not be successful but would take between six months and one year to complete.  Pls. Reply to Opp'n to Mot. for Court-Directed Service at 5.

199 F.R.D. at 24-25 & n.5.

However, the record in this action does not mirror the circumstances in *Forum Financial Group*.  Ms. Han and the law firm Sullivan and Cromwell are not authorized to accept service of process on behalf of Clive Standish in this action.  The action against Clive Standish and others in the United States District Court for the Southern District of New York is a class action alleging securities fraud by plaintiffs who purchased or acquired securities issued by UBS AG on worldwide stock exchanges from August 13, 2003 to February 23, 2009.  Although both actions involve allegations of fraud, there the similarities cease. Further, in *Forum Financial Group* and *Rio Properties*, the opinions noted the extent to which evasion of service occurred and, in *Rio Properties*, the Ninth Circuit expressly noted that no international treaty service requirements were involved.  Here, Plaintiff makes no showing that he is not bound by the requirements of the Hague Convention.

In addition, there is a real issue in this action whether the Clive Standish emailed by Plaintiff is the Clive Standish, formerly Chief Financial Officer for UBS AG.  As noted, Standish is represented to be a citizen of Great Britain and a resident of Switzerland.  Plaintiff makes no showing in his motion of any efforts other than the March 9, 2007 emails, to accomplish service of process on Clive Standish.  Annex 1 to Exhibit C to Doc. 8, is a copy of "Plaintiff's Explanation on Order to Show Cause on March 22, 2007" filed in the Kern County Superior Court

15

on March 14, 2007, wherein Plaintiff asserts:

> 5. The only defendant not served is
> defendant Clive Standish who can only be
> served in accordance with the 1964 Hague
> Convention on service of Judicial and
> Extrajudicial Documents abroad.  (Kott v.
> Superior Court, 45 Cal.App.4th 1126, 1135-
> 1136) and this Court declined service of the
> papers to him.

Plaintiff gives no explanation for the Kern County Superior

Court's ruling, if such in fact was the ruling, and what is meant

by "this Court declined service of the papers to him."

Plaintiff asserts in his reply brief:

> Clive Standish presumably resides in
> Switzerland.  Plaintiff while this case was
> in the Superior Court of California prepared
> all the papers for service thru proper
> channels in Switzerland.  Plaintiff requested
> the California Superior Court for permission
> to serve the papers thru international
> channels but it was rejected by the
> California ... With no alternative left,
> plaintiff resorted to California's Long Arm
> Statute, Sec. 410.10, California Code of
> Civil Procedure and served Clive Standish by
> email which was accepted by the California
> Superior Court.  Then this case was removed
> to this District Court.  Plaintiff continued
> to search the internet bi-weekly or monthly
> for any clue as to the whereabouts of Clive
> Standish but to no avail until plaintiff came
> across a news [sic] in the internet that a
> William Wesner filed suit against Clive
> Standish.  Plaintiff searched the court files
> of the Southern District of New York and
> found Atty. Suhana Han.  Plaintiff is on $600
> monthly social security income and cannot
> afford to hire an investigator in Switzerland
> to find Clive Standish.  The only tool
> available to plaintiff to make a search in
> [sic] the internet.

As noted, the record does not establish that the Kern County

Superior Court accepted or approved of the emailed service of

16

process.   Attached to Plaintiff's reply brief as Exhibit 1 is a copy of the Kern County Superior Court docket.   The entry for February 5, 2007 in connection with an order to show cause, which states in pertinent part:

> COURT DECLINES TO GRANT EX-PARTE APPLICATION
> TO CLERK RE: REQUEST FOR SERVICE IN
> SWITZERLAND, WITHOUT PREJUDICE.

The entry for February 22, 2007 states:

> RULING ON: DECLARATION OF COMPLIANCE FILED
> 2/8/07
>
> PARAGRAPH 5: THIS COURT CAN NOT WAIVE ANY
> REQUIREMENTS OF THE HAGUE CONVENTION. FINAL
> 'IN VIEW ...' PARAGRAPH: THE COURT DOES NOT
> WAIVE OBJECTIONS TO ANY SERVICE MADE IN
> COMPLIANCE WITH APPLICABLE LAW.

Plaintiff's briefs in support of this motion provide no explanation of the Superior Court's February 5, 2007 ruling and why he could not then proceed to serve Standish in his country of residence, because the denial was without prejudice.   Plaintiff does not submit copies of his pleadings filed in the Superior Court regarding service of process on Clive Standish.   At the hearing, Plaintiff stated that the Superior Court provided no explanation for its ruling and that he did not again attempt service of process on Clive Standish pursuant to the Hague Convention because he expected the Superior Court to make the same ruling.

*Rio Properties* notes:

> A federal court would be prohibited from
> issuing a Rule 4(f)(3) order in contravention
> of an international agreement, including the
> Hague Convention referenced in Rule 4(f)(1).

17

1

            The parties agree, however, that the Hague
            Convention does not apply in this case
2           because Costa Rica is not a signatory.

3  284 F.3d at 1015 n.4.  Switzerland is a signatory with

4  declarations to the Convention on the Service Abroad of Judicial

5  or Extrajudicial Documents in Civil or Criminal Matters (the

6  "Hague Convention").  Article 10 of the Hague Convention states:

7           Provided the State of destination does not
            object, the present Convention shall not
8           interfere with -

9               (a) the freedom to send judicial
                documents, by postal channels,
10              directly to persons abroad,

11              (b) the freedom of judicial
                officers, officials or other
12              competent persons of the State of
                origin to effect service of
13              judicial documents directly through
                the judicial officers, officials or
14              other competent persons of the
                State of destination,
15
                (c) the freedom of any person
16              interested in a judicial proceeding
                to effect service of judicial
17              documents directly through the
                judicial officers, officials or
18              other competent persons of the
                State of destination.
19
   However, Switzerland declared its reservations that "In
20
   accordance with Article 21, second paragraph (a), Switzerland
21
   declares that it is opposed to the use in its territory of the
22
   method[] of transmission provided for in Article[] ... 10."
23
   Further, "[i]n accordance with Article 21, first paragraph (a),
24
   Switzerland designates the cantonal authorities as Central
25
   Authorities referred to in Articles 2 and 18 of the Convention.
26

                                 18

Requests for service of documents may also be addressed to the
Federal Justice and Police Department in Bern, which will forward
them to the appropriate Central Authority."  *See*
www.hcch.net/index_en.php?actconventions.authorities&cid17.
Therefore, direct mail to a Swiss resident is not an
"internationally agreed means" permitted by Rule 4(f) and the
Hague Convention.  However, there are indications in the record
that Plaintiff does not know the address of Clive Standish or
whether he is in fact a resident of Switzerland.  Article I of
the Hague Convention provides that "[t]his Convention shall not
apply where the address of the person to be served is not known."
However, Plaintiff provides no information of his efforts to
ascertain Standish's address in Switzerland, except to state that
he cannot afford to conduct an appropriate investigation.

Plaintiff makes no showing that Clive Standish is attempting
to evade service of process.  The only attempted service by
Plaintiff was the email service in March 2007; Plaintiff provides
no evidence that he has otherwise attempted service of process
since that date through the Hague Convention.  *See U.S. Aviation
Underwriters, Inc. v. Nabtesco Corp.*, 2007 WL 3012612 at *2
(W.D.Wash., Oct. 11, 2007), citing *Rio Properties*:

> Based on this authority [*Rio Properties*],
> plaintiff's request to use Rule 4(f)(3)
> simply because it 'will be much faster, thus
> moving this case forward in an expeditious
> and cost-effective manner,' ... by itself is
> not sufficient justification for the Court to
> authorize service by alternative method.
> Plaintiff cites no reason what the methods
> specified by Fed.R.Civ.P 4(f)(1) and (2)

1
2
3
4
5

would be ineffective, unlike *Rio Properties*
where the defendant was 'elusive' and
'striving to evade service of process.'  *Rio
Properties*, 284 F.3d at 1016.  Because the
requirements for due process and respect for
international law outweigh plaintiff's desire
to proceed expeditiously, the Court finds
insufficient cause to authorize service by
alternative means.

6   Plaintiff's real explanation for this motion is his contention

7   that he cannot afford to investigate the local address for Clive

8   Standish in order to serve him via the Hague Convention

9   procedures applicable to Switzerland.  Plaintiff asserts that

10  evasion of service is not a prerequisite to court-directed

11  service of process on Standish's attorney in another case, citing

12  *Forum Financial Group*, *supra*, 199 F.R.D. at 23-24:

13
14
15
16
17
18
19
20
21
22
23
24
25
26

Attorney Spiegal ... contends that court-
directed service under Rule 4(f)(3) is not
generally available unless attempts at
service by means authorized by any applicable
international agreement have proven
unsuccessful.  He asserts that court-directed
service is 'extraordinary relief' that is
inappropriate in this case because the
plaintiffs have not attempted to serve Hay by
letter rogatory.  He asserts that the latter
method is allowed under a 1985 agreement
between the United States and the Union of
Soviet Socialist Republics ... Contrary to
these assertions, nothing in Rule 4(f) or its
advisory committee notes indicates that
court-directed service under Rule 4(f)(3) is
'extraordinary relief.'  By its plain
language and syntax, Rule 4(f)(3)'s plain
language unambiguously indicates that the
only limit it imposes on court-directed
service under Rule 4(f)(3) is that the means
must not be prohibited by international
agreement ... Moreover, the 1985 Agreement
between the United States and U.S.S.R. - if
it is even applicable - merely sets forth
procedures for executing letters rogatory; it
does not prohibit other means of service.

1
2
3
              Because no international agreement prohibits
              me from directing service on Hay via
              certified mail to Spiegel, neither does Rule
              4(f)(3).

Plaintiff further asserts that, even if it is first necessary for

Plaintiff to establish that Clive Standish has evaded service of

process:

              Plaintiff has no direct evidence that Clive
              Standish is actually evading service because
              he is presumably in Switzerland while
              Plaintiff is in California.  Plaintiff has no
              eyes and ears in Switzerland.  But the
              circumstantial evidence that he is evading
              service is when he was served by email at his
              office address he did not answer.  His office
              email address
              customerservice@privateclientssubs.cjb.net is
              a good email address because plaintiff say
              that before in UBS AG's website,
              http://www.ubs.com/ Defendants now say that
              email address is an imposter address - this
              is sham and false.  Plaintiff personally saw
              that email address at www.ubs.com many times
              before this case was filed.  Another
              circumstantial evidence of evading service is
              that plaintiff could not find any clue in the
              internet other than his case pending in
              Southern [sic] District of New York.
              Apparently he has withdrawn himself from the
              public scene in view of the fraud cases he
              got involved. [sic] Defendants say plaintiff
              'has not made a good faith effort to serve
              Mr. Standish through traditional means.' ...
              Plaintiff already explained this above that
              he prepared all papers for service under
              international law but the California Superior
              Court rejected it.

    Again, Plaintiff provides no explanation for the Superior

Court's ruling and his contention that the email address for

Clive Standish is correct is unproven as yet.  Further, the cases

emphasize evasion of service of process.  Merely because Clive

Standish's personal address is not available via the internet

21

1 does not mean he evaded service of process.

2 　　　UBS AG cites *Rio Properties*, *supra*, 284 F.3d at 1016, that

3 "we hold that Rule 4(f)(3) is an equal means of effecting service

4 of process under the Federal Rules of Civil Procedure, and we

5 commit to the sound discretion of the district court the task of

6 determining when the particularities and necessities of a given

7 case require alternate service of process under Rule 4(f)(3)."

8 UBS AG argues that the "particularities and necessities" of this

9 case weigh against granting Plaintiff's motion.  Plaintiff has

10 filed a motion for judgment on the pleadings in which he asserts

11 that this action is ripe for summary adjudication and UBS AG has

12 filed a motion for summary judgment:

13 　　　　　　　If, as UBS AG believes, its motion should
　　　　　　　dispose of this case, this is particularly

14 　　　　　　　inopportune time to bring in an additional
　　　　　　　defendant, sued on the same frivolous legal

15 　　　　　　　theory, who will need to expend time and
　　　　　　　money to get up to speed on this years' long

16 　　　　　　　litigation.

17 　　　This action was commenced in the Kern County Superior Court

18 in February 2007 and removed to this Court on March 6, 2007.  The

19 Memorandum Decision and Order denying Plaintiff's motion to

20 remand was filed on June 8, 2007, in which the Court noted at

21 footnote 7:

22 　　　　　　　The third defendant in this lawsuit,
　　　　　　　individual defendant Clive Standish, a United

23 　　　　　　　Kingdom citizen and Swiss resident, has not
　　　　　　　been served and no attorney has made an

24 　　　　　　　appearance for him.  Plaintiff appears to
　　　　　　　contend that he served Mr. Standish by

25 　　　　　　　sending an email to the Yahoo email address
　　　　　　　used by the impersonators who defrauded

26 　　　　　　　plaintiff by pretending to be Mr. Standish.

22

1
2
3

> California does not provide for service by
> email, and even if it did, such service could
> not have been effective as to the real Mr.
> Standish, a stranger to the Yahoo email
> address used by Plaintiff.

4   Although Plaintiff filed a request for entry of default against

5   Clive Standish on June 15 and 20, 2007, (Docs. 20 & 22), the

6   request was denied by the Clerk on June 15 and 22, 2007 because

7   there is no valid proof of service on file with the Court. (Docs.

8   21 & 23).  Plaintiff did not file the instant motion until

9   October 8, 2009.  Although Rule 4(m), Federal Rules of Civil

10  Procedures's 120 day limit on service of process does not apply

11  to service in a foreign country under Rule 4(f), Plaintiff

12  delayed for years, with no apparent effort at service after the

13  case was removed, before bringing this motion.

14  **CONCLUSION**

15       For the reasons stated, Plaintiff's motion to serve a

16  summons and the Third Amended Complaint on Clive Standish's

17  attorney is DENIED WITHOUT PREJUDICE.  There is no showing why

18  Plaintiff has waited three years to effect service on Clive

19  Standish or that statutorily authorized means of service will not

20  be effective.

21       IT IS SO ORDERED.

22  Dated:   June 10, 2010                    /s/ Oliver W. Wanger
23                                      UNITED STATES DISTRICT JUDGE

24
25
26

23