# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| CARL L. JIMENA, | CASE NO. 1:07-cv-00367-OWW-SKO |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION TO COMPEL** |
| v. | |
| UBS AG BANK, INC., SWITZERLAND HEADQUARTERS, et al., | **(Docket Nos. 211, 212, 246)** |
| Defendants. | |

## I. INTRODUCTION

Plaintiff Carl L. Jimena ("Plaintiff") filed this action on February 5, 2007. Plaintiff alleges that he was defrauded in a variant of the "Nigerian advance fee scheme" by Clive Standish, the Chief Financial Officer ("CFO") of UBS AG Bank, Inc. ("UBS"), who sent Plaintiff an email from an email address "clive_standish@yahoo.com." Via this email, Standish allegedly offered to transfer $19 million to Plaintiff's bank account by convincing Plaintiff to wire $51,000 via Washington Mutual Bank, Bank of New York, and UBS to an account at a fourth bank, HSBC, to satisfy a purported "Anti-Drug/Terrorist Clearance" fee required for transfers from Nigeria. Plaintiff also asserts that he received electronic correspondences regarding this transaction from an email bearing the address of "customerservices@privateclientsubs.cjb.net." Plaintiff alleges that he never received the $19 million.

Plaintiff is now seeking to obtain any documents that Yahoo! Inc. ("Yahoo") may have that are associated with either of two the email addresses from which he received electronic mail relevant to the disputed transaction in this case: "clive_standish@yahoo.com" and "customerservices@privateclientsubs.cjb.net."

Yahoo is not a party to this action. Therefore, on May 20, 2010, pursuant to Federal Rule of Civil Procedure 45, Plaintiff sought records from Yahoo through service of a subpoena duces tecum. The subpoena sought the following information relative to the two email addresses:

1. Complete account information details from the time the two accounts were opened until they were closed such as for example, name, address, birthdate, home phone, work phone, and other details identifying the account owner/user of the email address.
2. All changes in the entries of the two email accounts from the time they were opened until they were closed.
3. Authorized users of the two email accounts or email address from the time opened until closed.
4. All exchanges of email messages on the above two email address of Clive Standish, between Carl L. Jimena and Clive Standish from the time the same two email address[es] [were] opened until closed.
5. All exchanges of email messages on the above two email address[es] of Clive Standish between Atty Ademola Adeshina and Clive Standish concerning transferring 19 million dollars in which Carl L. Jimena is the beneficiary, from UBS AG to Rabo Bank, Purmerend, Netherlands.
6. All exchanges of email messages on the above two email address[es] of Clive Standish, between Standard Trust Bank and Clive Standish concerning transfer of 19 million dollars from Standard Trust Bank to Carl L. Jimena or to Carl L. Jimena's account at Washington Mutual Bank located at California, USA passing through UBS AG of Zurich, Switzerland.
7. All exchanges of email messages on the above two email address[es] of Clive Standish, between the Financial Action Task Force (FATF) and Clive Standish concerning transfer of 19 million dollars from Standard Trust Bank to Carl L. Jimena or to Carl L. Jimena's account at Washington Mutual Bank located at California, USA passing through UBS AG of Zurich, Switzerland.
8. Identity of the computer used by Clive Standish in sending emails, if retrievable from Yahoo's system.
9. Location of the computer of Clive Standish from where messages are being sent to Carl L. Jimena, if traceable by Yahoo in its system. This may require a backward trace of the connecting computers on which Clive Standish['s] outgoing mail passes through.

*See* Exhibit A attached to the Declaration of Doug Nolan. (Doc. 227).

On May 25, 2010, Yahoo responded to the subpoena by letter addressed to Plaintiff. Yahoo reported that it did not have any information pertaining to the Yahoo subscriber identification ("ID") specified in the subpoena, namely, "clive_standish@yahoo.com" and "customerservices@privateclientsubs.cjb.net." *See* Exhibit B attached to the Declaration of Doug

Nolan. (Doc. 227). Yahoo also reported that it could find no responsive documents for "Clive Standish." *Id.*

Yahoo further explained that, even if it had located documents responsive to the subpoena, it could not disclose the *content* of electronic communications absent certain exceptions enumerated under the Stored Communications Act ("SCA"), 18 U.S.C. § 2702(b). Yahoo's letter elaborated that the primary exception under which disclosure is allowed by the SCA is subscriber consent. Yahoo suggested that Plaintiff seek the consent of the subscriber associated with the subscriber IDs in question.

On June 7, 2010, Plaintiff filed a "Motion to Compel UBS AG to Give its Consent for Yahoo Inc. to Disclose Clive Standish Two Email Addresses." The gravamen of Plaintiff's motion is that, because Clive Standish was UBS's CFO, UBS may lawfully consent to the production of electronic correspondences associated with what Plaintiff claims is Clive Standish's personal subscriber ID at Yahoo. Further, Plaintiff seeks an order requiring Yahoo to disclose all the information sought in the subpoena. *See* Doc. 211. On June 7, 2010, Plaintiff also filed a "Motion and Memorandum to Compel UBS AG For Production of Exhibits 15 and 16." The exhibits to which Plaintiff refers were attached as exhibits to his complaint. Exhibits 15 and 16 are copies of bank documents sent to him regarding the disputed $19 million transfer. Specifically, Plaintiff asserts that Exhibit 15 is a "Standard Trust Bank's Payment Order" and Exhibit 16 is an "Acceptance by UBS AG of the Payment Order of Standard Trust Bank." Plaintiff believes that UBS has the originals of Exhibits 15 and 16 in its possession and seeks to compel UBS to produce them pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure.

On June 28, 2010, apparently after having been served with Plaintiff's motion to compel, Yahoo filed an opposition to Plaintiff's motion, instead of a motion to quash the subpoena issued to it. *See* Doc. 227, 228. Yahoo's counsel stated at the August 13, 2010, hearing in this matter that Yahoo filed an opposition to Plaintiff's motion out of an abundance of caution that the Court might construe Plaintiff's filing as a motion to compel Yahoo's compliance with the May 2010 subpoena.

On August 3, 2010, UBS filed a statement regarding the discovery dispute and Plaintiff's motions to compel. UBS maintained that it willingly consents to Yahoo producing documents

responsive to the subpoena, but noted that Yahoo stated there were no responsive documents to produce in any case.[1] UBS further stated that the documents referred to as Exhibits 15 and 16 are blatant forgeries of bank documents and it has no such records in its possession. UBS filed the declarations of Saumya Bhavsar, the Executive Director at UBS, and Patrick Mathieu, a Director at UBS, in support of its contention that the original copies of Exhibits 15 and 16 are not in its possession. In their joint declaration, Saumya Bhavsar and Patrick Mathieu state that they have reviewed UBS's records, and UBS does not possess any copies of Exhibits 15 and 16. *See* UBS Discovery Statement, Exhibit A. (Doc. 242.)

On August 10, 2010, Plaintiff filed a response and objections to Defendant UBS's statement regarding the discovery dispute. On August 13, 2010, the matter came on regularly for hearing. All parties, including non-party Yahoo, appeared telephonically, and the matter was submitted to the Court following argument. The Court ordered Yahoo to submit a declaration regarding the results of its search for, and any burden associated with further searches to uncover, documents responsive to Plaintiff's subpoena. Yahoo filed the declaration of Jeffrey Stanford on August 19, 2010. (Doc. 256.) It is Plaintiff's (1) motion to compel UBS's consent for Yahoo to disclose electronically stored information and (2) motion to compel UBS to produce originals of Exhibits 15 and 16 that are currently pending before the Court.

## II. DISCUSSION

**A.     Plaintiff's Motion to Compel UBS's Consent to Allow Yahoo to Disclose Electronic Records is DENIED.**

As an initial matter, to the extent that Plaintiff's motion can be construed as one seeking enforcement of the subpoena served by Plaintiff on Yahoo, the motion is denied. First, it is not clear that the subpoena itself is procedurally valid and enforceable. Federal Rule of Civil Procedure 45(b)(2)(B) provides that a subpoena may be served at any place outside the issuing district but within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection. Here, the subpoena was apparently "served" at 701 First Avenue, Sunnyvale, California. According to the subpoena, production was required to take place at the U.S. District Court in Fresno,

---

[1] Although largely unaddressed by UBS and Yahoo, there is a serious question whether UBS's consent relative to the subscriber ID's at issue could ever be effective for purposes of disclosure under the SCA.

California. Thus, service of the subpoena was not within 100 miles of the place specified for production. Facially, it does not appear that the subpoena was procedurally proper.

Even assuming, *arguendo,* that the May 2010 subpoena could be enforced by the Court, Yahoo has stated that it has uncovered no responsive documents. In support of this contention, Yahoo filed the declaration of Jeffrey Stanford, who is a compliance paralegal and a custodian of Yahoo's business records. Declaration of Jeffrey Stanford ("Stanford Decl.") ¶ 4. (Doc. 256.) Yahoo asserts that any additional searches for records related to the subscriber IDs that Plaintiff identified would "require the company to dedicate an incalculable amount of resources to conduct a manual search of all of its stored data." *Id.* at ¶ 8.

Federal Rule of Civil Procedure 45(c)(1) provides that a party responsible for issuing the subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. Fed. R. Civ. P. 45(c)(1). Further, the Court may not enforce a subpoena that subjects a person to an undue burden. *See* Fed. R. Civ. P. 45(c)(3)(A)(iv). Because Yahoo states that further searches for responsive electronic data would be extremely expensive and unlikely to yield different results, the Court cannot compel Yahoo to conduct additional costly and burdensome searches. *Id.; see also* Stanford Decl. at ¶¶ 8, 9.

To the extent that Plaintiff is seeking to compel UBS's consent for Yahoo to disclose electronic records and information related to the subscriber IDs identified by Plaintiff in his subpoena to Yahoo, the Court denies the motion as moot. UBS has stated that it will consent to disclosure by Yahoo of any responsive electronic correspondence relevant to the subscriber IDs identified by Plaintiff.[2] Therefore, Plaintiff has received everything that he seeks from UBS regarding its consent to disclosure. Whether UBS's consent is operative under the SCA is a separate question. The Court expressly declines to decide whether any consent on the part of UBS is effective to allow disclosure of electronic communications under the SCA related to the subscriber IDs identified by Plaintiff. The parties did not brief this issue and, as there are no documents responsive

---

[2] The Court notes, without deciding, that it is unlikely that UBS's consent is effective for purposes of an exemption to disclosure under the SCA for the subscriber IDs that are at issue in the subpoena to Yahoo; in other words, it is not clear that UBS has any authority to consent to disclosure of the communications related to the subscriber IDs identified by Plaintiff.

5

to the subpoena in any case, the Court's decision in this regard would amount to nothing more than obiter dictum.

**B.      Plaintiff's Motion to Compel UBS to Produce Exhibits 15 and 16 is DENIED**

Plaintiff's second motion to compel (Doc. 212) seeks the original versions of Exhibits 15 and 16 from UBS. Plaintiff has not presented a discovery request to which UBS refused to respond. Rather, Plaintiff appears to be arguing that, because Plaintiff has copies of these documents, UBS must have the original documents but failed to produce them voluntarily under Rule 26(a).

UBS, on the other hand, maintains that it does not have these documents in its possession. To support this, UBS filed the joint declaration of Saumya Bhavsar and Patrick Mathieu, employees of UBS. Plaintiff filed objections to the declaration. Among other arguments, Plaintiff challenges the joint declaration of Saumya Bhavsar and Patrick Mathieu on the basis that these witnesses were not disclosed to him by UBS voluntarily as required by Federal Rule of Civil Procedure 26(a). Plaintiff argues that UBS is precluded from submitting declarations from witnesses not initially disclosed to him.

First, Rule 26(a) requires the disclosing party to provide information and identify witnesses, among other things, that it may use to support its claims or defenses. Fed. R. Civ. P. 26(a). Even assuming that UBS has the originals of Exhibits 15 and 16, it was not required to disclose these documents voluntarily unless it planned to use them to support its claims or defenses. *See id.* The exhibits were not the types of documents that would have been subject to voluntary disclosure by UBS in the first place. This is not a situation where UBS is attempting to introduce Exhibits 15 and 16 as evidence in support of its claims or defenses without ever having disclosed its possession of these documents to Plaintiff.

Second, Plaintiff does not reference a particular discovery request to which UBS has refused to respond or produce documents. (*See* Doc 212.) In Plaintiff's motion, he states that he served a demand for production of Exhibits 15 and 16 and states that the copy of this request for production is attached to his motion as Exhibit 1. (Doc. 212 at ¶ 2.) There is no exhibit attached to Plaintiff's motion. Further, it appears that there are several outstanding discovery requests about which the

6

parties have not yet met and conferred and are not the subject of this motion to compel.[3] It appears that Plaintiff's reference to a "Demand for Production" is not one of the outstanding discovery requests in Plaintiff's June 7, 2010 Motion to Compel that is presently before the Court. Other than the required initial disclosures under Rule 26(a), UBS has no duty to produce documents absent a specific discovery request by Plaintiff.[4]

The Court finds no evidence that UBS violated its initial disclosure obligations by failing to produce the originals of Exhibits 15 and 16. The Court also finds no evidence that UBS has wrongfully failed or refused to produce Exhibits 15 and 16 pursuant to a specific discovery request. Thus, Plaintiff's motion to compel UBS to produce Exhibits 15 and 16 is DENIED.

IT IS SO ORDERED.

**Dated:   August 27, 2010**                        /s/ Sheila K. Oberto
                                                                    UNITED STATES MAGISTRATE JUDGE

---

[3] In his motion to compel Exhibits 15 and 16 from UBS (Doc. 212), Plaintiff references a "Demand for Production" that he discussed with UBS's counsel and asserts that UBS has stated it will not be producing any documents pursuant to Plaintiff's demand because it has no responsive documents. However, there is no indication when this "Demand for Production" was served or whether the parties have met and conferred regarding that discovery request. UBS states there are several outstanding discovery requests that the parties have not yet discussed and are not the subject of this motion. (Doc. 242 at ¶ 9.)

[4] The parties did not file a joint statement regarding their discovery dispute as required by Local Rule 251. Instead, they each filed separate statements. Plaintiff filed a separate statement voicing objections to a joint declaration of Saumya Bhavsar and Patrick Mathieu filed in support of UBS's separate statement regarding the discovery dispute, Doc. 242, Exhibit A; UBS did not respond to the objections. The Court did not rely on this declaration in reaching its decision.