IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL L. JIMENA,<br><br>               Plaintiff,<br><br>     vs.<br><br>UBS AG BANK, et al.,<br><br>               Defendants. | No. CV-F-07-367 OWW/SKO<br><br>MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S REQUEST FOR RECONSIDERATION BY THE DISTRICT COURT OF MAGISTRATE JUDGE'S RULING (Doc. 270) |

    Plaintiff Carl L. Jimena, proceeding *in pro per*, has timely filed a request for reconsideration by the District Court of the Magistrate Judge's Order Denying Plaintiff's Motion to Compel (Doc. 267).

    The standard of review is the "clearly erroneous or contrary to law" standard set forth in 28 U.S.C. § 636(b)(1)(A). Rule 303(f), Local Rules of Practice. The "clearly erroneous" standard applies to a Magistrate Judge's findings of fact. *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 623 (1993). "A findings is 'clearly erroneous' when

1

although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at 622.  The "contrary to law" standard allows independent, plenary review of purely legal determinations by the Magistrate Judge. *FDIC v. Fidelity & Deposit Co. of Md.*, 196 F.R.D. 375, 378 (S.D.Cal.2000); *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3rd Cir.1992).  "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *DeFazio v. Wallis*, 459 F.Supp.2d 159, 163 (E.D.N.Y.2006).

   A.   <u>Timeliness of UBS's Responses to Discovery</u>.

Plaintiff argues that the Magistrate Judge erred in ruling that UBS's responses to discovery were timely, even though they were not served until Monday, July 12, 2010.

The record establishes that Plaintiff dropped off his discovery requests addressed to UBS's counsel at an OfficeMax FedEx drop off location on Sunday, June 6, 2010.  Plaintiff did not complete a proof of service for these discovery requests, but retained a receipt showing that he dropped the package off on June 6, 2010.  The package was shipped to UBS's counsel by FedEx on Monday, June 7, 2010.  Plaintiff refers to his Declaration, (Doc. 248, Exh. 5):

> 2.  On June 23, 2010, at about 3:15 p.m., I had a telephone conversation with Atty. Jacob S. Kreilkamp on the subject of when I served UBS AG with the Request for Admission, Interrogatories, Demand for Production of Documents, all Set No. 1.  He asked me when I served UBS AG with the latter discovery

papers, I answered him, it was on June 6, 2010, a Sunday, the day proceeding the hearing of the above entitled case on June 7, 2010. I recorded this conversation on the attached Exhibit 1, 'Notes on Conversation with Atty. Jacob S. Kreilkamp' which I hereby declare to be true and correct under penalty of perjury under federal law and California Laws.

The Magistrate Judge ruled:

> Pursuant to the Federal Rules of Civil Procedure, discovery responses must be served 30 days following service of the requests. *See* Fed. R. Civ. P. 33(b)(2). The deadline is extended by an additional three days if the discovery was served by mail. *See* Fed. R. Civ. P. 6(d). Therefore, if the discovery was served on June 6, 2010, the deadline for serving a response was July 9, 2010.
>
> UBS asserts that, without the benefit of a proof of service, it had to ascertain when service was completed by Plaintiff. UBS contends that, based on FedEx tracking information, the date of service appeared to be Monday, June 7, 2010, the date FedEx's tracking records show that the package was shipped. Counting from June 7, 2010, the thirty-third day falls on Saturday, July 10, 2010. According to Fed. R. Civ. P. 6(a)(1)(C), UBS's responses were, therefore, due on Monday, July 12, 2010. UBS argues that, if it miscalculated the response deadline, it was due to Plaintiff's failure to include a proof of service.
>
> Plaintiff counters that pursuant to *Russell v. City of Milwaukee*, 338 F.3d 662, 665-67 (7th Cir.2003), 'the absence of a certificate [of service] does not require the invalidation of the paper' where actual service has been accomplished. (Joint Statement at 8.)
>
> *Russell* supports the proposition that Plaintiff's discovery requests are not necessarily invalidated due to a lack of proof of service. In other words, UBS would not have been entitled to ignore the

discovery requests based on this procedural error. Here, neither party disputes that the discovery requests were actually received by UBS - the question is *when* they were served for purposes of triggering the response deadline. Because the discovery requests were actually served and received - a fact not in dispute - the Court will consider Plaintiff's motion to compel on its merits. *Cf. Willis v. Mullins*, ..., 2006 WL 2792857, at *2-3 (E.D.Cal.2006)(proof of service is largely irrelevant when service was completed in accord with Rule 5(b)).

Without a proof of service as to the date of mailing, however, the Court will not entertain Plaintiff's argument that UBS's responses to these discovery requests were one day late. It appears that UBS attempted, in the absence of a proof of service, to determine the deadline for responses to the discovery in good faith and did, in fact, serve discovery responses on the date that fell 33 days from the date it ascertained service of the requests was accomplished.

The Court acknowledges Plaintiff's argument that, despite the absence of a proof of service, he can show by other means that service was actually accomplished on June 6, 2010. Plaintiff points to a receipt indicating that he dropped off a package with FedEx on June 6, 2010, addressed to UBS's counsel and that the discovery itself is dated June 6, 2010. There is no dispute that Plaintiff served the discovery requests, and the Court is entertaining Plaintiff's motion on its merits. Nevertheless, this does not obviate the need for a proof of service if Plaintiff wishes to enforce the 33-day response deadline under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 33(b)(2), 6(d). Plaintiff cannot use the Federal Rules of Civil Procedure as both a sword and a shield against UBS by demanding timely responses to discovery requests that are not accompanied by a proof of service necessary to calculate the response deadline. Under the circumstances, the Court cannot determine that UBS's responses were one day late.

Plaintiff argues that he completed service of the discovery requests to UBS when he delivered the package to the FedEx drop off location on June 6, 2010, equating this delivery to depositing a document in the U.S. Mail.  Therefore, Plaintiff contends, UBS incorrectly calculated the 33-day period as commencing on June 7, 2010, the date FedEx shipped the package.

Although not addressed by the parties, in the Ninth Circuit, service of documents by delivery to FedEx does not constitute service by mail within the meaning of Rule 5.  *See Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1430-1431 (9th Cir.1996). Consequently, Plaintiff's contention that service was complete when he delivered the package to the FedEx drop off location, thereby starting the 33-day period, is incorrect as a matter of law.  Here, Plaintiff's failure to serve his discovery requests by U.S. Mail as required by Rule 5 and his failure to include a proof of service lead to UBS's confusion about the time to respond to the discovery requests.  UBS AG in good faith attempted to ascertain the date FedEx shipped the package and in good faith provided discovery responses within the appropriate time period.  UBS was under no obligation to accept Plaintiff's statement that Plaintiff delivered the package to FedEx on June 6, 2010.  As a party, Plaintiff is not authorized to serve discovery and FedEx did not commence its service until June 7, 2010.

Further, even if UBS's discovery responses were one day late, the Court would not exercise its discretion to sanction UBS

by ruling that any objections to Plaintiff's discovery requests are waived and that Plaintiff's Request for Admission is deemed admitted.  The record establishes that UBS attempted in good faith to timely respond to the discovery requests.  Plaintiff has not demonstrated that the Magistrate Judge's ruling is clearly erroneous or contrary to law.

    B.   <u>Interrogatory No. 1, Set 1</u>.

    Plaintiff's Interrogatory No. 1, Set 1, requested:

> IDENTIFY yourself which includes if telephone no. 411234111, fax no. 4113553864, physical address Gessneralle 3, CH-8001, Zurich, Switzerland, belongs to UBS AG (Zurich, Switzerland Headquarters.

UBS responded as follows:

> Defendant objects that this Request is directed in part to UBS Financial Services, Inc. ... which is no longer a party to this case, and Defendant will not respond on UBS FS's behalf.  Subject to the foregoing objection, Defendant responds that Defendant is a global firm providing financial services to private, corporate and institutional clients, with an office at Gessneralle 3, CH-8001, Zurich, Switzerland.

    The Magistrate Judge ruled:

> Plaintiff states UBS's response is inadequate because it does not confirm whether the phone number and facsimile number listed in the interrogatory are correct.  UBS agreed to supplement its answer, and on September 2, 2010, did so by providing the address, phone number, and facsimile number associated with both UBS and UBS FS, despite its objection with regard to UBS FS.  As Defendant supplemented this response, Plaintiff's motion to compel further responses is DENIED.

    Plaintiff contends that the ruling is clear error: "There is

a specific question that call for specific answer.  there is no specific answer to the question either denial or admission."

Plaintiff's objection is without merit.  UBS provided the information to Plaintiff in its supplemental response.

C.  <u>Interrogatory No. 4, Set 1</u>.

Plaintiff's Interrogatory No. 4, Set 1 requested: "Where does the operating expenses and money paid as salaries to employees of UBS FS ultimately come from?"  UBS responded:

> Defendant objects that this interrogatory is vague and ambiguous in its entirety, and also overbroad, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving the foregoing objection, Defendant states that UBS FS's operating expenses, including salaries, are funded through UBS FS's business operations.

The Magistrate Judge ruled:

> Plaintiff claims that UBS must submit a copy of the budget allocation for salaries and a copy of financial statements submitted to the Internal Revenue Service for the 2009 tax year as to both UBS FS and UBS AG.  UBS objects to the request on grounds that the information is not relevant to Plaintiff's claims which only involve UBS AG and its prior CFO.  UBS argues that UBS FS has been dismissed from this action.  Further, UBS states that it is under no obligation to produce documents in response to an interrogatory.
>
> First, UBS cannot be compelled to produce documents in response to an interrogatory.  The proper procedure is to serve a Rule 34 request for production of documents concurrently with the interrogatories, asking for production of any documents identified in the interrogatory answers ... Second, UBS FS's financial and tax information is irrelevant since that party was dismissed

7

> from this lawsuit. Plaintiff's motion to
> compel document production in response to
> this interrogatory is DENIED.

Plaintiff argues that this ruling is clear error:

> The expected answer to the Interrogatory is
> the operating expenses and salaries coming
> from UBS AG and therefore plaintiff asked for
> budget allocation and financial statements
> submitted to the IRS for the tax year 2009
> for both UBS AG and UBS FS. The plaintiff
> will be unable to file a motion required by
> the Court if UBS FS is to be included as
> party-defendant.

Plaintiff's contention is baseless. UBS responded to the interrogatory. Plaintiff's expectations as to what UBS's answer should be does not negate the fact that UBS answered the interrogatory. UBS cannot be compelled to provide further information concerning UBS FS and cannot be compelled to produce documents in response to an interrogatory.

D. <u>Interrogatory No. 7, Set 1</u>.

Plaintiff's Interrogatory No. 7, Set 1, requested:

> On or about April 28, 2006[,] and continuing
> thereafter up to the present date, did you
> discuss or engage in communications by
> electronic means, telex advise, telephone, or
> email, including oral or written, with
> Standard Trust Bank PLC of Lagos, Nigeria
> concerning a fund transfer to the plaintiff,
> Carl L. Jimena of 19 million US dollars?

UBS responded, "No." The Magistrate Judge ruled:

> Plaintiff argues that this answer is false,
> and UBS should be sanctioned for failing to
> answer truthfully. Plaintiff points to the
> many emails that he purportedly received from
> UBS's former CFO, Clive Standish, showing
> that there were communications between UBS
> and Standard Trust Bank regarding the alleged
> $19 million transfer of funds to Plaintiff.

8

> However, none of these documents are conclusive to establish that Defendant has falsified its response.
>
> UBS has always maintained that the documents that Plaintiff received via email are fraudulent, and UBS never had communications with Standard Trust Bank regarding a $19 million transfer to Plaintiff.  There is simply no evidence that UBS is not being forthright.  Although Plaintiff may be convinced that the emails he received show evidence of communication between UBS and Standard Trust Bank regarding a $19 million dollar transfer of funds to him, this belief does not make it true or establish that UBS's response is false.  Plaintiff's motion for sanctions against UBS is DENIED.

Plaintiff argues that this ruling is clear error "because there is a complete misunderstanding on the use of documents produced at mandatory initial disclosure."   Plaintiff asserts that UBS made no "mandatory initial disclosure" when the parties exchanged such information between June 19 and July 3, 2007, and is now precluded from submitting evidence that was not disclosed. Plaintiff contends:

> Therefor, when plaintiff submits in evidence documents produced at mandatory initial disclosure to support a motion it will be unopposed.  Hence, the duty of the Magistrate Court [sic] is to grant the motion since it is unopposed and this is one of the after effect [sic] of failure to make mandatory initial disclosure which is a new provision of the Federal Rules of Civil Procedure.
>
> Documents produced at initial disclosure, such as Exhibits 1-75 here, are authorized as commented by the Advisory Committee on Rule 26, Fed. R. of Civ. P 'to support motions' and also used to comply with the requirement that motions be 'accompanied by evidentiary support' (2 Moor's [sic] Federal Practice 3d [2008 ed.] § 7.03[4][a][3] p. 7-15).   Hence,

9

> the function of the Magistrate Court [sic] is to determine if the motion is supported by evidence. If it is, then it is mandatory, and there is no discretion, to grant the motion since the supporting evidence is unopposed. It is not the function of the Magistrate Court [sic] to determine the credibility of the evidence presented as stated in the instant questioned Order because credibility of the evidence is a function reserved to the jury. So then when the Magistrate Court [sic] said 'None of these documents are conclusive to establish that Defendant has falsified its response.' [sic] it is determining the credibility of the evidence. It is elementary that the difference between the functions of the Court and Jury is the Court decides questions of law, and the Jury decides questions of fact. Here, the evidence submitted by plaintiff is support of the motion is to discover the evidence and the reaction of the Magistrate Court is determining the credibility of the evidence. Hence, it is clear error for the Magistrate Court to deny Interrogatories supported by documents produced at mandatory initial disclosure.

Plaintiff's objection is without merit. Rule 26(a)(1)(a), Federal Rules of Civil Procedure, requires the following initial disclosures, among others:

> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information - along with the subjects of that information - that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> (ii) a copy - or a description by category and location - of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

Although Plaintiff's documents produced as initial disclosures may be attached to a motion, such as his motion for sanctions against UBS for an allegedly false interrogatory response, the fact that UBS did not provide documents to Plaintiff in support of its defense that the communications upon which Plaintiff relies are fraudulent and did not originate from UBS does not, *ipso facto*, establish that Plaintiff's documents are dispositive. UBS AG cannot provide information about matters that it asserts did not happen.  Here, UBS AG responded that it had no communications with Standard Trust Bank PLC of Lagos, Nigeria concerning a fund transfer to the plaintiff, Carl L. Jimena of $19 million US dollars.  That Plaintiff believes his documents establish the contrary does not make UBS AG's response false. Secondly, *Plaintiff* asked the Magistrate Judge to impose sanctions for UBS's allegedly false response; Plaintiff raised the question of credibility to the Magistrate Judge solely for the purpose of resolving his request for discovery sanctions.

   Plaintiff objects that UBS cannot contend that the documents he produced in initial disclosure are fraudulent because UBS did not allege fraud with particularity as required by Rule 9(b), Federal Rules of Civil Procedure, in its Answer to the Third Amended Complaint.  Plaintiff cites no authority that Rule 9(b) has any application to a defense based on fraud or forgery. Independent research indicates that Plaintiff's position is baseless.  *See Eastover Corporation v. Rhodes*, 1992 WL 245568 at

*4-5 (E.D.La., Sept. 8, 1992).[1]

E.  <u>Item 7, Legal Issue</u>.

Plaintiff objects that "Item 7, Legal Issue" was not decided by the Magistrate Judge and requests a ruling on "this issue." Given Plaintiff's lack of specification as to what "Item 7, Legal Issue" is, Plaintiff's objections are overruled and his request is denied.

F.  <u>Demand for Production, Items No. 8, 8.1, 8.2 of Doc. 258</u>.

Referring to "Plaintiff's demand for production, Item No. 8, 81, 8.2 of Doc. 258," Plaintiff objects to the Magistrate Judge's ruling.

Plaintiff's objections are unclear because neither his motion to compel, (Doc. 258), or the Order refer to these specific items. However, the "Joint Statement on Doc. 258," filed on September 8, 2010, (Doc. 265), stated:

> 8.  <u>REQUEST FOR PRODUCTION NO. 5</u>.  The latter demands production of the following: (Plaintiff's Demand for Production is attached as Exhibit Three)
>
> '5.  All correspondence, memos, messages, corporate minutes (corporate board of director minutes), executive board of director minutes, auditor's findings and recommendations, Accounting Department entries and summaries on the escrow account and

---

[1] Rule 9(b) does apply to a defendant's counterclaim against a plaintiff. *See NCR Credit Corp. v. Reptron Electronics, Inc.,* 155 F.R.D. 690, 693 (M.D.Fla.1994). Here, however, UBS has not alleged any counterclaims against Plaintiff.

>fund transfer involved in this case or other written communications concerning funds transfer to the plaintiff.' (Note: 'corporate board of directors minutes' was inserted by Notice of Errata served on UBS AG on June 26, 2010 under certified receipt no. 7008 1830 0005 6872)

Defendants [sic] response was, quote:

>'RESPONSE TO REQUEST FOR PRODUCTION NO. 5
>
>Defendant responds that it has no documents in its possession responsive to this request.

### 8.1 Corporate minutes or Executive Board of Directors minutes

Defendants [sic] response to Plaintiff's Request for Production No. 5 is false since it is contrary to Plaintiff's Exhibits 6, 7 and 8 produced at mandatory initial disclosure which could be used as commented by the Advisory Committee to suppoRt [sic] motions. Exhibits 6, 7, 8, shows that the Board of Directors, corporate or executive board of directors are involved in making decisions regarding the fund transfer of the 19 million dollars from Standard Trust Bank to Washington Mutual Bank, now Chase. In Exhibit 6, same as Exhibit 53, in the 2nd paragraph, Clive Standish said:

>'At the end of several meetings held to resolve and conclude this transaction it was decided that you have to pay the requested Marginal Fluctuation Deficit of US$21,780.00 before the US$19 M will be credited to your account.'

In Exhibit 7, same as Exhibit 52, paragraph 1-2, Clive Standish said:

>Your messages are acknowledged and I wish to inform you that the UBS is looking into them with a view

13

> toward resolving the whole situation.'
>
> We shall get back to you as soon as the special meeting conveyed to look into your request/messages conclude their deliberations.'

In Exhibit 8, same as Exhibit 46, paragraph 1, Clive Standish said:

> 'Your messages are acknowledged and I wish to inform you that the Management and <u>Board of the UBS</u> is not happy with what is happening in this transaction because the delay in concluding this transaction is kind of tarnishing the image of the bank.' (underlining mine)

Hence, there is a record of the minutes of the Board of Directors, Corporate or Executive, that defendants have to produce.

**8.2 <u>Auditor's findings and recommendations</u>:**

In Exhibit 48.1, 17th line from the top, Clive Standish said:

> 'Several payments go through the UBS and the Auditors have commenced full-scale investigation on the movement/whereabouts of the payment.' [of the $51,000]

In Exhibit 49.1, paragraph 1: Clive Standish said:

> 'the Auditors used the information you provided to track the payment.'

(refers to Exhibit 18)(A copy of Defendant's Responses and Objections to Plaintiff's Demand for Production is attached as Exhibit Four)

In Exhibit 48.1, about 23rd line from the top, Clive Standish stated another participation of Auditors in this transaction both on the $76,000 and the 19 million dollars:

14

> 'It will be wise to inform you that the Auditors here monitors all transaction.'

All of the above quotations from the Exhibits show the Auditors have findings and recommendations that UBS AG must produce and UBS AG's response is false.

The Magistrate Judge ruled:

> UBS responded that 'it has no documents in its possession responsive to this request.' ... Plaintiff argues that this response is false because he has documents that were emailed to him that purport to show a fund transfer between Standard Trust Bank and UBS. As explained above, Plaintiff's possession of those documents does not prove that they are actually authentic bank documents of either UBS or Standard Trust Bank, or that UBS is perpetrating a fraud by asserting that it does not have documents responsive to this request. UBS cannot be sanctioned for a false response based on Plaintiff's assertion that it is false. Further, the documents Plaintiff received by email do not establish that UBS has responded falsely, especially since UBS contends the documents Plaintiff received via email are fraudulent. There is simply no evidence that UBS has failed to produce documents that it has in its possession that are responsive to Plaintiff's request. UBS cannot produce documents that it does not have. Plaintiff's motion to compel further documents responsive to this request is DENIED WITH PREJUDICE.

Plaintiff objects to this ruling, contending:

> Plaintiff had authenticated all of his email evidence consisting of Exhibits 25, to 58, 6, 7, 8, 12, 13, 19, 20 all emails of Clive Standish; Exhibits 59-64, Exh. 11, 11a with its attachment, Exhibits 15, 16, 59, 1C, 59, 1D, 15.1 and 16.1 (the latter two attached to plaintiff's opposition to summary judgment) all emails of Standard Trust Bank; Exhibits 65, 66, 74 emails of Atty. Smith Coker; Exhibits 9 and 10 emails of APGML; Exhibits 25.2, Exhibit 25.3 email of Atty. Ademola

15

> Adeshina, (1) the authentication appearing in plaintiff's Opposition to Defendants [sic] Motion for Summary Judgment, Doc. 195, pages 7 to 19 thereof; all the emails authenticated on the method demonstrated in U.S. v. Safavian, 435 F.Supp.2d 36, 40-41 (2) the authentication also appearing on the instant Doc. 212, page 2, line 27 to 28, page 3 line 1 to 2; (3) Presumed authentic under Sec. 1307, California New Civil Code [sic] in relation to Rule 902(9) FRE. (4) authentication appearing in Doc. 78; which include authentication of Exhibit 1 to 75 as data compilation; the foundation of which was laid down, in paragraph 1 of Doc. 78, pursuant to Rule 803(6) making them admissible even in trial; more so at summary judgment.

Whether or not the exhibits upon which Plaintiff relies are properly authenticated is not a relevant issue to resolution of Plaintiff's motion to compel and the Magistrate Judge did not err by failing to address the issue of authentication.  At issue is whether UBS can be compelled to produce documents it asserts under oath it does not have.  Plaintiff's exhibits do not conclusively establish that UBS's contention is false, especially given the responses by Yahoo! to Plaintiff's subpoena that it had no documents responsive to Plaintiff's subpoena and has no information that the accounts clive_standish@yahoo.com or customerservices@privateclientsubs.cjb.net ever existed.  Plaintiff has not demonstrated that the Magistrate Judge's ruling is clearly erroneous or contrary to law.

For the reasons stated:

1.  Plaintiff's request for reconsideration of the the Magistrate Judge's Order Denying Plaintiff's Motion to Compel

16

**(Doc. 267), is DENIED.**

  IT IS SO ORDERED.

**Dated: October 12, 2010**       **/s/ Oliver W. Wanger**
                 UNITED STATES DISTRICT JUDGE