# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| CARL L. JIMENA, | CASE NO. 1:07-cv-00367-OWW-SKO |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION TO COMPEL** |
| v. | |
| UBS AG BANK, et. al., | (Docket No. 212, 268) |
| Defendants. | |

## I. INTRODUCTION

Plaintiff Carl L. Jimena ("Plaintiff") filed this action on February 5, 2007. Plaintiff alleges that he was defrauded in a variant of the "Nigerian advance fee scheme" by Clive Standish, the Chief Financial Officer ("CFO") of UBS AG Bank, Inc. ("UBS"), who sent Plaintiff an email from an email address identified as "clive_standish@yahoo.com." Via this email, Clive Standish allegedly offered to transfer $19 million to Plaintiff's bank account by convincing Plaintiff to wire $51,000 via Washington Mutual Bank, Bank of New York, and UBS to an account at a fourth bank, HSBC, to satisfy a purported "Anti-Drug/Terrorist Clearance" fee required for transfers from Nigeria. Plaintiff also asserts that he received electronic correspondences regarding this transaction from an email bearing the address of "customerservices@privateclientsubs.cjb.net." Plaintiff alleges that he never received the $19 million.

On June 7, 2010, Plaintiff filed (1) a "Motion to Compel UBS AG to Give its Consent for Yahoo[!] Inc. to Disclose Clive Standish['s] Two email Address[es]" ("Motion to Compel Consent") (Doc. 211) and (2) a "Motion to Compel UBS AG for Production of Exhibit[s] 15 and 16" ("Motion to Compel Production") (Doc. 212). On August 27, 2010, this Court issued a decision with regard to both the Motion to Compel Consent and the Motion to Compel Production. (Doc. 262.) On September 23, 2010, the District Court ordered that the August 27, 2010, order be reconsidered only with respect to Plaintiff's Motion to Compel Production (Doc. 212). (Doc. 268.)

On September 27, 2010, the Court issued an order requesting that, to assist in reconsidering the matter, the parties were to file a "Joint Statement" regarding their discovery dispute limited to not more than 30 pages. (Doc. 269.) For accuracy and ease of reference, the parties were directed to attach as an exhibit to their Joint Statement a copy of the disputed discovery requests and responses that are at issue for purposes of this motion to compel. (Doc. 268.) On October 12, 2010, the parties filed a Joint Statement, but did not attach a copy of the disputed discovery requests and responses. (*See* Doc. 276.)

A hearing in this matter was held on October 21, 2010, and the parties appeared telephonically. At the hearing, the parties were again directed to submit a copy of the disputed discovery requests and responses at issue on or before Friday, October 22, 2010, at 12:00 p.m. UBS has filed and provided to the Court a copy of the discovery requests and the disputed responses. (Doc. 281, Ex. A, B.)

## II.   DISCUSSION

On May 3, 2010, Plaintiff propounded on UBS a "Demand for Production of Documents, Set 1" ("Demand for Production"). (Doc. 281, Ex. A.) On June 11, 2010, UBS served responses to Plaintiff's discovery request. (Doc. 281, Ex. B.) Plaintiff now seeks to compel UBS to produce documents responsive to his Demand for Production. The discovery requests and UBS's disputed responses are provided as follows:

**REQUEST FOR PRODUCTION NO. 1**:

> 1. The original copy or copy of the document received by UBS AG (Zurich, Switzerland Headquarters) of the payment order/slip for 19 million US dollars, dated April 28, 2006[,] issued in favor of the plaintiff as beneficiary and sent to UBS AG

(Zurich, Switzerland Headquarters) on the same date for acceptance, and deliver of the funds to the plaintiff. Plaintiff's copy is attached by incorporation as Exhibit 15 to the Third Amended Complaint but is not a well readable copy. Plaintiff request[s] that you admit the genuineness of a copy of this document obtained from you.

**RESPONSE:**

UBS AG has no documents in its possession responsive to this request, and further denies the genuineness of the 'copy' referenced above.

**REQUEST FOR PRODUCTION NO. 2**

2. The original copy or copy of the document from the UBS AG computer of the UBS AG's acceptance of the payment order specified in paragraph one above. UBS AG in its document of acceptance dated April 28, 2006[,] had obligated itself to deliver to plaintiff the 19 million US dollars after 96 sleep hours. A copy of the UBS AG acceptance as received by Standard Trust Bank PLC is attached by incorporation to the Third Amended Complaint as Exhibit 16 but is not a well readable copy. Plaintiff needs a readable copy to be read by the Court. Plaintiff request[s] that you admit the genuineness of a copy of this acceptance document obtained from you.

**RESPONSE:**

UBS AG has no documents in its possession responsive to this request, and further denies the genuineness of the 'copy' referenced above.

**A.     Plaintiff's Initial Disclosures as Evidence of UBS's Allegedly False Response**

Although somewhat difficult to follow, it appears that Plaintiff asserts that UBS falsely responded that it did not have documents responsive to Plaintiff's Demand for Production of Documents Nos. 1 and 2. Plaintiff contends that he has proof of UBS's actual possession of documents responsive to Plaintiff's requests. In support of his contention, Plaintiff cites Exhibit 25, 25.2, 26, 59, 60, 62.1, and 64 that were part of 75 exhibits that he apparently produced as part of his mandatory initial disclosures in the case. (Doc. 276, pp. 7-8.) The documents referenced and quoted by Plaintiff appear to be various copies of electronic correspondence that Plaintiff received via email, prior to the filing of this action, regarding a $19 million transfer of funds for the benefit of Plaintiff. Plaintiff asserts that he produced all these documents pursuant to the initial disclosure requirements of Federal Rule of Civil Procedure 26(a). Plaintiff avers that documents produced at the mandatory initial disclosure may be used to support motions for summary judgment and cites MOORE'S FEDERAL PRACTICE for this proposition. According to Plaintiff, if he may use his initial disclosures to support a motion for summary judgment, he argues he must certainly be able to offer these

1  exhibits as evidence for purposes of this discovery motion.[1]

2  Plaintiff's reference to and quotation from various emails that he received regarding a purported $19 million fund transfer does not show that UBS has possession of these documents. "The fact that a party may disbelieve or disagree with a response to a discovery request ... is not a recognized ground for compelling discovery, absent some indication beyond mere suspicion that the response is incomplete or incorrect." *See Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D. Ind. 1992). The documents Plaintiff received by email do not establish that UBS has responded falsely to Plaintiff's Demand for Production, especially since UBS contends that the documents Plaintiff received via email are fraudulent. There is simply no evidence that UBS has failed to produce documents that are responsive to Plaintiff's request. None of the email correspondence Plaintiff received is sufficient to show that UBS's responses to the discovery are incomplete or incorrect.

Plaintiff asserts that the purpose of citing and using the exhibits in support of his motion is that they "point where the original is and [do] not resolve the issue as to the truth of the contents of Exhibit[s] 15 and 16 and even the truth of the pointing documents because final resolution of the truth is reserved to the jury." (Doc. 276, 9:23-26.) Plaintiff's logic is quite circular in this regard.

---

[1] Plaintiff's argument in this regard is as follows:

Plaintiff will first cite evidence on record produced at [the] mandatory initial disclosure pointing to the fact that UBS AG has the original of Exhibit 15 and 16, then follows immediately, Plaintiff's objection to the declaration of Saumya Bhavsar, Patrick Mathieu, and Jacob S. Krielkamp.

This Magistrate Court will please bear in mind that Exhibit 16 is not the statement of a person but is a printout of UBS AG's computer as shown by [P]laintiff's Exhibits and hence, nonhearsay. The problem is, is the Magistrate Court troubled by the fact that the pointing exhibits to where the original is, could not be used because UBS AG denies them? This issue was already resolved by the comments of the Advisory Committee and by the commentaries of Moore.cited [sic] in the main motion.[1] [Fn 1: Documents produced at mandatory initial disclosure, such as Exhibits 1-75 here, Exhibit 15 and 16 are included, are authorized as commented by the Advisory Committee on Rule 26, Fed. R. of Civ. P. "to support motions" and as commented by Moore could be used "on motion practice at least motion bearing on the merits (e.g. summary judgment, injunction)" (6 Moore's Federal Practice 3d (2008 ed) § 26.22[4][b] p. 26-97).] The answer is "yes" despite the denial because as Moore commented, documents disclosed at mandatory initial disclosure could be used to support summary judgment. This is because bare denials are not effective in summary judgment under Rule 56. This is also true in discovery motions when exhibits produced at mandatory initial disclosure is used [sic]. If documents produced at mandatory initial disclosure could be used to support summary judgment, how much more if the same documents are used in discovery motions as expressly authorized by the rules according to the above quoted notes of the Advisory Committee?

4

Plaintiff is asking that the Court: (1) assume that Exhibits 15 and 16 actually are what they hold themselves out to be, i.e., official bank documents from Standard Trust Bank to UBS regarding a $19 million fund transfer, and (2) find that UBS *must* have original copies of these documents because they are authentic bank records transmitted between Standard Trust Bank and UBS. There is no evidence that these documents are what they purport to be.

UBS has expressly disavowed that Exhibits 15 and 16 are contained in UBS bank records. UBS points to various misspellings of common terminology contained in the documents from which one can infer they are not official bank documents from any bank. Finally, Plaintiff has proffered no evidence that the email addresses from which he received these documents are linked to UBS, Standard Trust Bank, or Clive Standish. There is simply no basis, other than Plaintiff's personal conviction, for the Court to conclude that UBS has falsely responded that it has no documents responsive to Plaintiff's requests or that UBS is otherwise perpetrating a fraud on Plaintiff and the Court by failing to produce documents it certifies it does not have.

Further, every discovery response must be signed by the attorney or the unrepresented party serving the paper. Fed. R. Civ. P. 26(g)(1). The certification requirement is used to deter discovery abuse by requiring persons who certify responses to consider carefully the legitimacy of the papers before signing them. *See* Fed. R. Civ. P. 26(g), Advisory Committee's Note 1983 amendment. The signature of the attorney or party is a certification that, based on the best of the signer's knowledge, formed after a reasonable inquiry, the response is: (1) consistent with the federal rules and warranted by law or a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (2) not interposed for any improper purpose such as to harass, cause needless delay or needlessly increase the costs of litigation; and (3) not unreasonable or unduly burdensome given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation. Fed. R. Civ. P. 26(g)(1)(B).

A review of UBS's discovery responses reveals that UBS's counsel signed the responses, certifying that the responses to Plaintiff's Demand for Production of Documents were based on the best of his knowledge and were formed after reasonable inquiry. (*See* Doc. 281, Ex. B.) "Should it later appear that requested information was not revealed or was deliberately concealed, a

responding party or attorney would be subject to appropriate sanctions." *Gray*, 148 F.R.D. at 223. UBS's certification as to its discovery responses, under penalty of sanction of both counsel and client, satisfies the Court that the responses are complete and accurate.

**B.     Declaration of Saumya Bhavsar and Patrick Mathieu**

In support of its opposition to Plaintiff's Motion to Compel, UBS filed a joint declaration of Saumya Bhavsar and Patrick Mathieu ("Joint Declaration"). (Doc. 242, Ex. A.) Saumya Bhavsar is an Executive Director at UBS AG, and Patrick Mathieu is a Director at UBS AG. (Doc. 242, Ex. A, ¶ 1.) In relevant part, the declarants state the following:

> 3.     We have reviewed Plaintiff's Motion and Memorandum to Compel UBS AG For Production of Exhibit[s] 15 and 16," as well as copies of the two documents labeled "Exhibit 15" and "Exhibit 16" that were attached to the Complaint of Carl L. Jimena and provided to us by UBS AG's United States attorneys.
>
> 4.     Exhibits 15 and 16 (which are barely legible) do not appear to be forms used by UBS AG in Zurich.
>
> 5.     We have also reviewed UBS AG's records in Zuirch, and confirmed that there was never a deposit or transfer in the amount of US $19 million made to an account relationship in the name of or to the benefit of Mr. Jimena maintained with UBS AG in Zurich, at any time in April 2006, from a bank called Standard Trust Bank PLC.
>
> 6.     To the best of our knowledge and after the reasonable investigation described above, UBS AG in Zurich does not possess any copies of Exhibits 15 and 16 associated with an account relationship in the name of or to the benefit of Mr. Jimena maintained with UBS AG in Zurich other than those it has received from Mr. Jimena as attachments to his pleadings in this lawsuit.

(Doc. 242, Ex. A, ¶¶ 3-6.)

As UBS correctly points out, the Court need not rely upon the Joint Declaration in deciding Plaintiff's motion. As explained above, Plaintiff has not provided the Court with an adequate basis to question whether UBS's certified discovery responses were incomplete or inaccurate other than Plaintiff's belief that the correspondence he received via email shows UBS actually possesses original copies of the documents he seeks. Therefore, the Joint Declaration is unnecessary to a decision on Plaintiff's motion, and the Court need not rely on it.

Plaintiff argues that the Joint Declaration is impermissibly filed because UBS did not disclose the identity of the declarants at the time of initial mandatory Rule 26(a)(1) disclosures. Plaintiff asserts that pursuant to Rule 37(c)(1), the proper sanction for failing to make required disclosures

6

is the disqualification of the witnesses or evidence offered.

Rule 26(a)(1)(A) requires parties to disclose the identity of those persons the party anticipates it will use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A). Here, UBS does not offer the Joint Declaration in support of a motion on the merits of the claims or defenses at issue in the case. Rather, UBS has merely provided a sworn statement of the efforts it undertook to search for documents responsive to Plaintiff's discovery requests. There is nothing in the text or underlying purpose of Rule 26(a)(1) that requires a party not only to divine that a discovery dispute might, at some point in the litigation, require a custodian of records to certify the efforts undertaken to respond to a discovery request, but also to intuit the nature of that possible future dispute for purposes of identifying the person in the best position to provide the information needed. Disclosure such as this would require the parties to be omniscient and create the type of litigation gamesmanship that initial disclosures were designed to eliminate. *See United States ex rel. Englund v. Los Angeles County*, 235 F.R.D. 675, 684, n.4 (E.D. Cal. 2006) ("Dissatisfaction with high costs and obstructionist tactics led to the passage of the 1993 amendments to the Federal rules" which includes the automatic disclosure requirements under Rule 26(a)(1)-(4)); *see also* Fed. R. Civ. P. 1 (The Federal Rules are intended "to secure the just, speedy, and inexpensive determination of every action.").

The outcome may be different if UBS were offering the Joint Declaration as evidence to support a motion related to the merits of the case, e.g., a motion for summary judgment. *See generally Medina v. Multaler, Inc.*, 547 F. Supp. 2d 1099, 1106, n.8 (C.D. Cal. 2007) (striking declaration of undisclosed witness offered in support of opposition to summary judgment motion); *see also* MOORE'S FEDERAL PRACTICE 26.22[4][a] (3d ed. 2009) (pointing out that prudent counsel should provide initial disclosures of individuals anticipated to be used "[o]n motion practice, at least motions bearing on the merits"). However, for purposes of this non-merits based discovery motion, the Joint Declaration, offered only for the purpose of clarifying the efforts taken to respond to Plaintiff's discovery requests, is not subject to exclusion under Fed. R. Civ. P. 37(c)(1) on the ground that the declarants were not disclosed as part of Defendants' mandatory Rule 26(a)(1)(A) initial disclosures. In any event, as discussed above, the Joint Declaration is not necessary to the Court's decision regarding Plaintiff's Motion to Compel.

1  Plaintiff also makes multiple objections to the Joint Declaration on grounds that it violates
2  the best evidence rule, it is not relevant, neither of the declarants is competent to provide a statement,
3  it contains inadmissible hearsay, it is not reliable or trustworthy, it lacks authentication from the U.S.
4  Consulate in Switzerland, and the Joint Declaration is a sham or false. To be clear, the Court does
5  not rely on the Joint Declaration in deciding Plaintiff's motion. Notwithstanding this, the Court finds
6  Plaintiff's objections on these grounds to be without merit. Plaintiff's arguments regarding estoppel
7  and "falsus en uno falsus en omnibus" are likewise meritless.

### III.  CONCLUSION

Based upon the foregoing, the Court DENIES Plaintiff's "Motion to Compel UBS for Production of Exhibit[s] 15 and 16."

IT IS SO ORDERED.

**Dated:    October 22, 2010**               /s/ Sheila K. Oberto
                                          UNITED STATES MAGISTRATE JUDGE