UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL L. JIMENA,<br><br>             Plaintiff,<br><br>      v.<br><br>UBS AG BANK, INC., SWITZERLAND HEADQUARTERS, *et al.*,<br><br>             Defendant. | 1:07-CV-00367-OWW-SKO<br><br>MEMORANDUM DECISION RE: DEFENDANT'S MOTION TO BE RELIEVED FROM DEEMED ADMISSIONS (Doc. 291) |

### I. INTRODUCTION.

Before the Court for decision is Defendant UBS AG's motion to withdraw admissions pursuant to Rule 36(b) of the Federal Rules of Civil Procedure.

Plaintiff has filed an opposition, to which Defendant has replied.

### II. FACTUAL AND PROCEDURAL BACKGROUND.

Although the parties dispute many of the relevant facts concerning this motion, this is a general summary:[1]

Plaintiff allegedly delivered the relevant discovery requests

---

[1] The facts underlying this motion are summarized in the Court's November 3, 2010 Memorandum Decision and Order.

1

- Request for Admissions, Set One[2] - addressed to UBS AG's counsel, at an OfficeMax FedEx drop-off location on Sunday, June 6, 2010. It is undisputed that Plaintiff, in violation of law, did not complete a proof of service for these discovery requests, but retained a receipt showing that he dropped the package off on June 6, 2010. The package was shipped to UBS AG's counsel by FedEx, delivered on Monday, June 7, 2010, and received by counsel on June 8, 2010.

It is undisputed that UBS AG's responses to these requests were served on Plaintiff on Monday, July 12, 2010. Plaintiff asserts that "personal service" to UBS was complete when he delivered the package to the FedEx location on June 6, 2010. Using June 6th as a guidepost and strictly applying the relevant black letter service standards, Plaintiff argues that the responses were due from UBS AG on Tuesday July 6, 2010 or, at the latest, Friday July 9, 2010 - assuming Rule 6(d) applies. Plaintiff claims that under either scenario, UBS AG's July 12, 2010 responses were untimely and are deemed admitted under Rule 36(a)(3).

As discussed in the related November 3, 2010 Memorandum Decision and Order, Federal Rule 36(a)(3) provides, in relevant part: "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the

---

[2] UBS summarizes the content of the Requests for Admissions as: "requests [for] UBS to admit [] that numerous emails Plaintiff received from a yahoo.com email address purporting to be from the Chief Financial Officer of UBS AG (and which detailed the imaginery transfer) came from the real CFO of UBS AG; that a purported Nigerian bank [] transferred $ 19 million to UBS in Plaintiff's name; and numerous other 'facts' related to the purported transfer." All of these requests were subsequently denied by UBS.

**2**

requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Under Rule 6(d), however, a party is given three additional days to respond if the requests were "served by mail." See Fed. R. Civ. P. 5(b)(2)(C). Plaintiff argues that the requests were "personally served," which is not one of the circumstances delineated in Rule 6(d), i.e., UBS had thirty days to respond, not thirty-three. Assuming, *arguendo*, that Rule 6(d) applies, Plaintiff contends that UBS AG had thirty-three days from June 6, 2010, not June 7, 2010.

UBS AG disagrees, arguing that the responses were timely because the requests were "served by mail" on June 7, 2010. Counting from that date and applying Rule 6(d), the thirty-third day falls on Saturday, July 10, 2010. According to Fed. R. Civ. P. 6(a)(1)(C), UBS AG's responses were, therefore, due on Monday, July 12, 2010, the date the responses were actually received. UBS AG further asserts that, if it miscalculated the response deadline, it was due to Plaintiff's failure to include a proof of service to enable it to ascertain the date and mode of service.

These arguments, and many others, were addressed in detail in the November 3, 2010 Memorandum Decision and Order, and are discussed here to provide relevant background and frame the dispute, not to add further analysis. The November 3, 2010 Memorandum Decision and Order determined that a Rule 36(b) motion was necessary to resolve the disagreements over timeliness and personal/mail service:

> For the reasons previously stated, the Court would entertain a motion by UBS AG to be relieved from the deemed admissions. UBS AG attempted in good faith to timely respond to Plaintiff's discovery requests; the confusion in this matter was caused in large part by

3

> Plaintiff's failure to serve the discovery requests by U.S. Mail accompanied by a proof of service. The deemed admissions would essentially preclude UBS AG from defending this action in which Plaintiff seeks millions of dollars in damages based on alleged fraud.
>
> However, in order to be relieved from the deemed admissions, UBS AG is required to file a motion.

(Doc. 289 at 11:20-12:4.)

On November 15, 2010, UBS AG moved to "be excused from being deemed to have admitted the Requests for Admission set forth in Plaintiff's First Set of Requests for Admission." (Doc. 291.) Defendant cites Rule 36(b) of the Federal Rules of Civil Procedure.

Plaintiff opposed the motion on November 29, 2010. (Doc. 293.) Plaintiff filed an amended opposition on December 1, 2010. (Doc. 296.)

### III.   LEGAL STANDARDS.

When a party fails to timely respond to requests for admission, the matters requested are automatically deemed admitted. See Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."). "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).

Withdrawal or amendment of the admissions may be permitted if withdrawal: (1) will promote the presentation of the action on the merits; and (2) will not result in prejudice to the party who obtained the admission in maintaining the action or defense on the

4

merits. Fed. R. Civ. P. 36(b). "[A] district court must specifically consider both factors under the rule before deciding a motion to withdraw or amend admissions." *Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007). The party who obtained the admission bears the burden of demonstrating to the court that withdrawal of the admissions will prejudice him in maintaining the action on the merits. *Id*.

The first requirement of Rule 36(b) is satisfied if refusing to withdraw the admissions will have the practical effect of preventing the moving party from any presentation of the merits of the case. *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995). "The prejudice contemplated by Rule 36(b) is 'not simply that the party who obtained the admission will now have to convince the factfinder of its truth. Rather, it relates to the difficulty a person may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence' with respect to the questions previously deemed admitted." *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995). "Reliance on a deemed admission in preparing a summary judgment motion does not constitute prejudice." *Conlon*, 474 F.3d at 624. However, even if the moving party satisfies the two-pronged test, the Court retains discretion to deny the motion. *Id*. at 624-625. "[I]n deciding whether to exercise its discretion when the moving party has met the two-pronged test of Rule 36(b), the district court may consider other factors, including whether the moving party can show good cause for the delay and whether the moving party appears to have a strong case on the merits." *Id*. at 625.

5

**IV.  DISCUSSION.**

UBS AG's Rule 36(b) motion is governed by the two-prong test of *Hadley v. United States*, 45 F.3d 1345 and *Conlon v. United States*, 474 F.3d 616. Plaintiff's assertion that the motion is barred under the doctrines of laches, estoppel and/or waiver, has little, if any, bearing on the analysis. Except where specifically noted, those arguments are irrelevant, legally incorrect and not discussed.[3]

Plaintiff also incorrectly focuses his opposition on the alleged withdrawal of "express admissions." As UBS AG's motion pellucidly establishes, it does not seek to withdraw any express admissions. UBS AG's motion is limited to those responses *deemed admitted* by operation of law under Rule 36(a)(3) without regard to the merits of the subject matter.

---

[3] Plaintiff argues that UBS AG "changed their position" by first arguing that the responses were timely, but now moving to withdraw the admissions. According to Plaintiff, those positions conflict, therefore UBS AG's Rule 36(b) motion is barred by the doctrines of laches, estoppel and/or waiver. Plaintiff misunderstands UBS AG's arguments and the Court's Orders in this case. First, the November 3, 2010 Memorandum Decision and Order sufficiently resolved the "timeliness" dispute and set forth a clear procedure to advance the case. UBS AG filed its Rule 36(b) motion based on that Memorandum Decision and Order. Second, UBS AG asserts that its responses were timely, at a minimum, based on Plaintiff's failure to include a proof of service on June 6, 2010. If the responses were untimely, it was based on Plaintiff's original error or, alternatively, the untimeliness was minimal and justified. Third, Plaintiff provides boilerplate reproductions of the laches, estoppel and waiver elements. He does not cite any legal authority analyzing these doctrines in the context of Rule 36. This record reflects the equities do not lie with Plaintiff, who created the problem by not preparing and serving a proof of service. If the document had been one that required filing with the Court, it would not have been accepted by the clerk for filing without a proof of service.

A.  *The Merits - First Factor*

UBS AG argues that withdrawal of the admissions promotes the resolution of the case on its merits because the admissions relate to the foundational elements of the claims asserted by Plaintiff. Assuming, *arguendo*, that the responses were two or three days tardy, UBS AG states that it "denied all of the requests that purported to establish the authenticity of this purported transfer or any of the documents, email or otherwise, the related to it." UBS AG correctly states that upholding the deemed admissions would preclude any resolution of the case on its merits by default; its ability to defend against Plaintiff's allegations is grossly compromised in the event the motion is denied. It would support the implementation of "gotcha justice."

Plaintiff rejoins that upholding the admissions would not eliminate presentation of the merits because:

> The exclusion of UBS AG's evidence undisclosed at the mandatory initial disclosure overcomes the denial of UBS AG's answer to Plaintiff's Third Amended Complaint resulting in admitting the allegations of the Third Amended Complaint since UBS AG has no evidence to support its denial as disclosed during discovery proceedings.

(Doc. 983 at pg. 14.)

This is nonsensical, it assumes only the Plaintiff's side of the case, and does not control the Rule 36(b) inquiry. Plaintiff *alleges* that UBS AG failed to produce relevant evidence during initial disclosures; he has not supported these allegations with any proof. The initial disclosures do not encompass all evidence a party possesses or will ultimately submit. The present lack of support for Plaintiff's allegations is confirmed by several

7

**Magistrate Judge Orders denying his requests to compel the production of such information. Absent clear evidence or proof that the evidence exists - or was covered up or destroyed - it is premature and speculative to opine on its impact in this litigation.**

**Rule 36 provides that "the court may permit withdrawal [...] when the presentation of the merits will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal [...] will prejudice that party in maintaining the action or defense on the merits." Fed. R. Civ. P. 36(b). Although the motion is directed to the sound discretion of the district court, see *999 v. C.I.T. Corp.*, 776 F.2d 866, 869 (9th Cir. 1985), the discretion should not be exercised in terms of the defaulting party's excuses, but in terms of the effect upon the litigation and prejudice to the resisting party. These admissions materially impair, if not emasculate, Defendant's ability to defend and present the merits of its defense.**

**Plaintiff's RFAs deal with the authenticity of purported email addresses connected to key UBS AG personnel, identities of individuals known to UBS AG, accounts used to transfer and/or receive funds, and the alleged damages/harm caused by Defendant's alleged fraudulent acts. These admissions directly relate to the merits of Plaintiff's claims for fraud, conversion and "intentional tort," as well as his claim to recover more than $51,000 under the California Commercial Code:[4]**

---

[4] This is a non-exhaustive and non-verbatim reproduction of the relevant RFAs.

**8**

**RFA 1.1:**    Admit that Clive Standish, Chief Financial Officer of UBS AG, used either of these two email addresses: (1) customerservices@privateclientsubs.cjb.net; or (2) clive-standish@yahoo.com.

**RFA 1.6**    Admit that Clive Standish, Chief Financial Officer of UBS AG, sends a copy of almost all of his email to the Financial Action Task Force and Standard Trust Bank PLC.

**RFA 1.9**    Admit that the payment order, Exhibit 15 to the amended complaints, was accepted by UBS AG of Zurich, Switzerland obligating itself on May 15, 2006 to issue payment order to Washington Mutual Bank, now Chase, for $ 19 million dollars after 96 hours sleep to Plaintiff's account at Washington Mutual Bank.

**RFA 1.11**    Admit that he bar code stamp signature on Exhibit 15 to the amended complaints is a genuine stamped signature of UBS AG, which is proof of authenticity

**RFA 1.14**    Admit that on April 28, 2006, UBS AG, after acceptance of the payment order, set up an account coded escrow for delivery to Plaintiff effective only for 96 hours.

**RFA 1.16**    Admit that instead of transferring the funds after 96 sleep hours stated in UBS AG's acceptance, UBS AG, acting through Clive Standish, Chief Financial Officer of UBS AG, demanded payment of $76,000 for an Anti Drug/Terrorist Clearance fee, and asserts this is a genuine demand.

**RFA 1.18**    Admit that on May 12, 2006, UBS AG threatened to cancel its acceptance if the $76,000 was not paid in full.

**RFA 1.19**    Admit that UBS AG canceled its acceptance for fund transfer then reinstated it on June 5, 2006.

**RFA 1.20**    Admit that on May 16, 2006, UBS AG, acting through Clive Standish, Chief Financial Officer of UBS AG, made a commitment that there will be no further charges after plaintiff's payment of $ 51,000, the balance remaining of the total $76,000 fee for Anti Drug/Terrorist Clearance Certificate.

**RFA 1.26**    Admit that UBS AG, acting through Clive Standish, Chief Financial Officer of UBS AG, demanded payment of $51,000 from Plaintiff to be paid to Frontier Const. Eng. Ltd. misrepresented to be a Financial Action Task Force to complete the fee of $76,000 for Anti Drug/Terrorist Clearance Certificate.

**RFA 1.28**    Admit that the fact that Plaintiff in raising $51,000

9

     to pay his share of $76,000 non-0existing fee for Anti Drug/Terrorist Clearance Certificate, sold a piece of land for $20,000 which he could have sold for $30,000 were it not for the fact that he was in a hurry to sell in order to payoff the amount he owed to Bank of America.

**RFA 1.30** Admit that the fraudulent acts of Clive Standish, Chief Financial Officer of UBS AG, acting on behalf of UBS AG, has caused the blood pressure of Plaintiff to go up every now and then when thinking of the fraud in this case.

These RFAs, and others discussed in UBS AG's briefing, underlie Plaintiff's claims for fraud, conversion and "intentional tort" because they speak directly to Mr. Standish and UBS AG's involvement in the fundraising and bank transfers vis-a-vis the Anti Drug/Terrorist Clearance Certificate; and if Plaintiff was damaged as a result. If the requests are deemed admitted, Defendants will be precluded from defending against these allegations, which it has vehemently denied throughout this case. Deeming the RFAs admitted would effectively deprive Defendant of the opportunity to introduce evidence to defend against most, if not all, the claims asserted against it.

Applying the first factor of Rule 36(b), here, as in *Conlon*, "upholding the [deemed] admissions would practically eliminate any presentation of the merits of the case." *See Conlon*, 474 F.3d at 622. The deemed admissions preclude UBS AG from presenting a defense to Plaintiff's allegations. The first factor is conclusively satisfied.


  **B.** *<u>Prejudice - Second Factor</u>*

The second factor of Rule 36(b) is satisfied because Plaintiff has not met his burden of establishing that he will be prejudiced

if the admissions are withdrawn. *See Conlon*, 474 F.3d at 622 ("The party relying on the deemed admission has the burden of proving prejudice."). Plaintiff argues that he will be prejudiced by withdrawal of the admissions because he will "face difficulties" proving these allegations due to cost, location, and identifying witnesses. Plaintiff also states that he will face difficulties proving his case due to Defendant's alleged pattern of preventing him from obtaining legitimate discovery; that he justifiably relied on UBS AG's admissions being deemed admitted and has ceased preparing additional discovery; and that it requires him to "explain in writing how the [events] occurred which would be a waste of time for the Court and cause time delay."

In this context, prejudice is in no way established by holding the nonmoving party to his burden of proof the law otherwise imposes, or if the party faces a more difficult case absent the admissions. Particularly when it exists for a short period of time before Defendant learned Plaintiff was trying to enforce the admissions. Nor does reliance on a deemed admission to discontinue drafting discovery requests establish prejudice. Instead, "[w]hen undertaking a prejudice inquiry under Rule 36(b), district courts should focus on the prejudice that the nonmoving party would suffer at trial." *Conlon*, 474 F.3d at 622 (citing *Sonoda v. Cabrera*, 255 F.3d 1035, 1039-40 (9th Cir. 2001)). The "'prejudice contemplated by Rule 36(b) is 'not simply that the party who obtained the admission will now have to convince the factfinder of its truth.'" *Hadley*, 45 F.3d at 1348 (quoting *Brook Village North Associates v. Gen. Elec. Co.*, 686 F.2d 66, 70 (1st Cir. 1982)). Although Plaintiff recited *Conlon*'s magic words - i.e., prejudice based on

11

the unavailability of key witnesses - he has not demonstrated *who*, *how or why* those witnesses would be unavailable <u>at trial</u>. While satisfying the elements of a claim with deemed admissions is a litigant's preferred and less costly option, it is the legally unsound method of proof in this case. *See Crafton v. Blaine Larsen Farms, Inc*., No. CV-04-383-E-BLW, 2005 WL 3244451, at 1 (D. Idaho Nov. 18, 2005). ("The Rule 36(b) test is an equitable one, balancing the right to a full trial on the merits with the parties' justified reliance on pre-trial procedures and the finality of issues deemed no longer in dispute.").

Here, this is not a motion for withdrawal in the middle of a trial or a critical stage of the proceedings, when courts are more likely to find prejudice. *See Sonoda*, 255 F.3d at 1040 (affirming the district court's decision to permit withdrawal where the motion to withdraw was made before trial and plaintiff would not be hindered in presenting evidence to the factfinder); *see also 999 v. CIT Corp*., 776 F.2d at 869 (denying motion made during trial to withdraw admission because of prejudice to other party, which had nearly rested its case and had relied heavily upon the admission). Rather, this case has been pending almost four years and has been adversely encumbered by Plaintiff's lack of knowledge of the law and the rules of civil procedure. Although the case was filed in 2007, no scheduling conference has been held and the parties are still conducting and fighting over discovery. No trial date has been set. Plaintiff is disputatious and unwilling to accept rulings of the Court, which has multiplied and delayed the proceeding. There is no evidence to support a finding of

12

**prejudice.[5]**

**Plaintiff argues prejudice exists because "of the difficulty of proving his case" and the "unavailability of witnesses." Mindful of these concerns, Plaintiff still has ample opportunity to conduct discovery on Defendant's admissions and confirm/contest the responses in deposition testimony. Plaintiff has no "sudden need" to conduct further discovery on the admissions, nor will he be prejudiced by his inability to do so. If Plaintiff needs more time for discovery as a result of the withdrawal he can conduct it, as no schedule is yet in place by virtue of Plaintiff's failure to schedule one as authorized by Fed. R. Civ. P. 16.**

**In order to carry his burden concerning prejudice, Plaintiff must identify difficulties he faces in proving his case at trial were the admissions withdrawn. *See Sonoda*, 255 F.3d at 1039-40; *Conlon*, 474 F.3d at 622. Plaintiff does not meet this burden. He must obtain information from other witnesses and document that UBS AG does not possess. Plaintiff fails to show how withdrawal would hinder his ability to prove his case at trial any more than before the RFAs were transmitted. The second factor of Rule 36(b) is satisfied.**

**C.    *Other Factors***

**Consideration of the two Rule 36(b) factors, however, does not end the inquiry. The Ninth Circuit has made clear that in deciding**

---

[5] As a pretrial conference has not yet been held, nor a pretrial order entered, in this case, the decision whether to allow the withdrawal of UBS AG's admissions is not subject to the manifest injustice standard for modifying a pretrial order under Rule 16(e).

**13**

whether to allow the withdrawal of admissions, "the district court may consider other factors, including whether the moving party can show good cause for the delay and whether the moving party appears to have a strong case on the merits." *Conlon*, 474 F.3d at 625.

The record indicates that UBS AG made a good faith attempt to timely respond to Plaintiff's discovery requests. As noted in the November 3, 2010 Memorandum Decision and Order, Plaintiff's failure to serve a proof of service and the fact that UBS AG did not consent in writing to FedEx service caused considerable confusion and, ultimately, contributed to the untimeliness of the responses. *Compare Seminiano v. Xyris Enterprise, Inc.*, No. CV 10-1673-JST-JEM, 2011 WL 165377, at 3 (C.D. Cal. Jan. 18, 2011)(in the context of Rule 36(a)(3) and motion for summary judgment, stating that "Plaintiff submitted proofs of service that he sent requests for admission to Defendants' counsel's office."). It is also important to clearly state that the responses were tardy by a maximum of three days, if the verified service rules do not apply, not weeks or months. There was no delay in filing this motion.

Defendant's brief characterizes its case as "exceptionally strong" and notes that "Plaintiff has not, in more than three years, produced any evidence whatsoever in support of his fantastical claims beyond the inauthentic papers he submitted at the outset of this case." (Doc. 291 at 5:17-5:20.) Defendant has actively and diligently defended this litigation since its inception. Its defenses are not meritless.

D.  *<u>Conclusion on the Merits</u>*

Here, upholding the admissions effectively eliminates full

**14**

**consideration of the merits of this case in which Plaintiff suffered loss of his investment in an African high return investment scheme. Discovery remains open. No discovery cut off or trial date has been set. There is no prejudice as defined by the Ninth Circuit. The two factor test of Rule 36(b) is completely satisfied.**

**There is no prejudice to Plaintiff's ability to prosecute the action on the merits. The motion to withdraw deemed admissions, RFAs Set One, received by Plaintiff on July 12, 2010 is GRANTED. Plaintiff's opposition to Defendant's motion to withdraw indicates Plaintiff does not understand "which" admissions Defendant seeks to withdraw. The Court understands that Defendant seeks to withdraw all admissions previously deemed admitted, the form of Order on this Memorandum Decision shall so reflect.**

### V.   CONCLUSION

For the reasons stated:

(1) **Defendant UBS AG's Motion to Withdraw Admissions is GRANTED.**

**Defendant shall submit a form of order consistent with, and within five (5) days following electronic service of, this Memorandum Decision.**

IT IS SO ORDERED.

Dated:   February 8, 2011              /s/ Oliver W. Wanger
                                   UNITED STATES DISTRICT JUDGE

15